☒ FILED ☐ LODGED

**MAR 29 2021**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Tony Deng #304373
Name and Prisoner/Booking Number
ASPC - Eyman Cook unit
Place of Confinement
P.O. BOX 3200
Mailing Address
Florence, Arizona 85132
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Tony Deng,
(Full Name of Petitioner)

Petitioner,

v.

David Shinn,
(Name of the Director of the Department of Corrections, Jailor or authorized person having custody of Petitioner),

Respondent,
and
The Attorney General of the State of Arizona,

Additional Respondent.

CASE NO. CV-21-546-PHX-SPL (JFM)
(To be supplied by the Clerk)

**PETITION UNDER 28 U.S.C. § 2254
FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
(NON-DEATH PENALTY)**

## PETITION

1. (a)  Name and location of court that entered the judgment of conviction you are challenging: _____

   Superior Court of Arizona, Maricopa County

   (b)  Criminal docket or case number: CR-2011-153034-001 DT

2. Date of judgment of conviction: September 18, 2015

3. In this case, were you convicted on more than one count or crime?  Yes ☒     No ☐

**530**

4. Identify all counts and crimes for which you were convicted and sentenced in this case: _Petitioner was convicted of ten counts of sexual conduct with a minor under the age of 15 and one count of sexual abuse. The ten counts of sexual conduct with a minor are class 2 felonies, and the one count of sexual abuse, is a class 3 felony._

5. Length of sentence for each count or crime for which you were convicted in this case: _For the first two of the ten counts, sexual conduct with a minor, petitioner was sentenced to 35 years per count, with the possibility of parole after 35 years. The rest of 8 counts he was sentenced to 20 years per count. For the sexual abuse count, he was sentenced to 5 years. All counts are to be served consecutively._

6. (a) What was your plea?
   Not guilty                       ☒
   Guilty                           ☐
   Nolo contendere (no contest)     ☐

   (b) If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _____
   _____
   _____
   _____

   (c) If you went to trial, what kind of trial did you have?   (Check one) Jury ☒ Judge only ☐

7. Did you testify at the trial?        Yes ☐        No ☒

8. Did you file a direct appeal to the Arizona Court of Appeals from the judgment of conviction?
   Yes ☒   No ☐

   If yes, answer the following:

   (a) Date you filed: _May 31, 2016_

   (b) Docket or case number: _1 CA-CR-15-0638_

   (c) Result: _Convictions and sentence were affirmed_

   (d) Date of result: _February 9, 2017_

   (e) Grounds raised: _I. The trial court abused its discretion in denying appellant's motion to suppress. A. Appellant's case is distinguishable from state v. Allgood. B. The victim who called acted as a state agent. C. The government participated to a significant degree in the search and seizure. D. The victim assisted law enforcement. E. The confrontation call violated appellant's Fourth Amendment rights. F. Appellant stood in Loco parentis; therefore the false friend doctrine of stanley does not apply. G. Appellant had an expectation of_
   Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.   _Continue on pg. 2-A_

8. Continue

(e) Grounds raised Continue:

Privacy during the call and took steps to protect his privacy. H. The confrontation Call Violated Artical 2 Section 8 of the Arizona Constitution. I. All of Appellant's statements were involuntary and in Violation of A.R.S. section 13-3988. J. The Call violated Appellant's 6th Amendment rights. K. The Call violated Appellant's 5th Amendment rights. L. The Call should be suppressed for deterrence.

II. The trial court committed fundamental error by summarily striking three hispanic jurors because the jurors allegedly could not understand the English language sufficiently enough to sit as trial jurors. A. the trial court misapplied A.R.S. section 21-202 B 3. B. The summary striking of hispanic jurors by the court violated artical 2, section 13 of the Arizona Constitution.

2 — A

9. Did you appeal to the Arizona Supreme Court?   Yes ☒        No ☐

   If yes, answer the following:

   (a) Date you filed: *I don't recall. It was some time in 2017 after the denial of motion for reconsideration.*

   (b) Docket or case number: *CR-17-0115-PR   (petition for review)*

   (c) Result: *denied*

   (d) Date of result: *I don't recall exactly. I think it's November 30, 2017*

   (e) Grounds raised: *(1) whether or not the caller in this case was functioning as state's agent for the purpose of searching for incriminating evidence through electronic interception. (2) whether or not the Estrada two-part test was satisfied for the 4th Amendment purpose in this case. (3) whether or not the interception in this case, conducted by the state, using a private person - the consenting party - as an instrument of interception, for the purpose of discovering testimonial evidence, falls within the meaning of search and seizure under the 4th Amendment. (4) whether or not the interception*

   Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court. *Continue on page 3-A*

10. Did you file a petition for certiorari in the United States Supreme Court?      Yes ☐      No ☒

    If yes, answer the following:

    (a) Date you filed: _____

    (b) Docket or case number: _____

    (c) Result: _____

    (d) Date of result: _____

    (e) Grounds raised: _____
    _____
    _____
    _____
    _____
    _____

    Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

11. Other than the direct appeals listed above, have you filed any other petitions, applications or motions concerning this judgment of conviction in any state court? Yes ☒      No ☐

    If yes, answer the following:

3

9. <u>Continue</u>

(e) Grounds raised continue:

   in this case was a government action based on the fact that state was involved in a significant degree by providing the facility and equipment for the interception including the actual installation and activation of the tapping device. (5) Whether or not appellant had a reasonable expectation of privacy based on the fact that he was conducting a private communication on a cellphone line that he subscribed to and paid for, and whether or not his taking steps to ensure his privacy during the call invoked constitutional protection. (6) whether or not appellant's constitutional right to privacy can be vicariously waived by the caller — state's agent. (7) Whether or not the pre-arranged call in this case was a police interrogation or a functional equivalent based on the fact that the caller was acting at the behest of the state for the purpose of eliciting a confession for prosecution. (8) Whether or not the intercepted call, pre-arranged by the state, for the purpose of eliciting a confession, was an adversarial proceeding or a functional equivalent. (9) whether or not the right to counsel attaches when an adversarial proceeding was deliberately arranged before an indictment. (10) whether or not the state violated the 6th Amendment by "deliberately elicit" inculpatory statements from Appellant and deliberately concealing the fact that Appellant was facing an adversarial proceeding during which he had the right to the assistance of counsel. (11) whether or not state violated the Ariz. const. art II § 8 by disturbing Appellant's private affair without a warrant. (12) whether or not the very act of the state, recording appellant's end of the conversation and using it as confession without his consent and against his expectation of privacy, was an act of compelling the appellant to give evidence against himself. (13) whether or not the interception in this case violated 18 U.S.C. § 2510 (5)(a)(i) based on the fact that it went outside of the limits of this statute. (14) whether or not appellant's expectation of privacy was protected by federal law — Title III — based on the fact that he exhibited an expectation for privacy and he took steps to protect his privacy during the call. (15) whether or not A.R.S. § 13-3012(9)

3 — A

continue on page 3-B

9. continue

(e) Grounds raised =

is constitutional based on the facts pointed out in appellant's supplemental brief.

(a)  First Petition.

    (1)  Date you filed: _May 1, 2017_

    (2)  Name of court: _Arizona Court of Appeals_

    (3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _Motion to reconsider and Supplemental brief. pro per._

    (4)  Docket or case number: _1 CA-CR 15-0638_

    (5)  Result: _denied_

    (6)  Date of result: _June 22, 2017_

    (7)  Grounds raised: _A. The interception in this case created a 4th Amendment violation because the caller was functioning as state's agent performing the search for evidence. B. This case meets all requirements of the 4th Amendment claim. (1) Government's conduct in this case violated the 4th Amendment. (2) unreasonable intrusion into appellant's private cellphone line by the state. (3) Appellant had a reasonable expectation of privacy and took steps to protect it. (4) Appellant's constitutional right to privacy cannot be waived by anyone. C. The "confrontation call" in this case_

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court. Continue on page 4-A

(b)  Second Petition.

    (1)  Date you filed: _July 23, 2018_

    (2)  Name of court: _Maricopa County superior court, state of Arizona_

    (3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _Rule 32 Petition._

    (4)  Docket or case number: _CR 2011-153034-001_

    (5)  Result: _Denied_

    (6)  Date of result: _November 14, 2018_

    (7)  Grounds raised: _I. Deng's trial counsel was ineffective for failing to disclose the photo which resulted in its preclusion. II. Deng's appellate counsel was ineffective for failing to raise the issue of the suppression of the photo. III. Deng's trial counsel was ineffective in failing to request an evidentiary hearing to establish that MM was a state agent in the confrontation call whereby the court would have had to suppress evidence of the call._

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

II (a) Continue

( 7) Grounds raised :

Created a 6th Amendment Violation because the caller was acting as state's agent for the purpose of eliciting a confession. (1) The phone Call was a police interrogation. (2) police interrogation is an adversarial proceeding which enacts the right to counsel and it could begin even before an indictment. (3) The state "deliberately elicit" inculpatory statements from appellant and concealing the adversarial proceeding also created a 6th Amendment Violation. D. state Violated the Ariz. Const. art II § 8 by disturbing appellant's private affair without authority of law — a warrant. E. Recording appellant's speech and using it as confession without his consent is an act of compulsion prohibited by the 5th Amendment and Ariz. Const. art II § 10. F. The interception in this case Violated 18 U.S.C. § 2510 (5)(a)(i). G. Appellant's expectation of privacy was protected by federal law — Title III. H. A.R.S. § 13-3012(9) is unconstitutional.

4 — A

(c)  Third Petition.

(1)  Date you filed: _December 20, 2018_

(2)  Name of court: _Arizona Court of appeals, Division one_

(3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _Petition for review, motion for reconsideration._

(4)  Docket or case number: _1 CA-CR 18-0893_

(5)  Result: _Denied_

(6)  Date of result: _on 8/6/2019_

(7)  Grounds raised: _(1) Trial court abused its discretion by ruling that trial counsel was not ineffective for failing to disclose the photo timely because there is no reasonable probability that the results would have been different even if the photographs had been admitted. (2) Trial court abused its discretion by ruling that photographs for demonstrative purpose of other young girls were unnecessary because the defense medical expert was allowed to testify regarding to what the photos showed. (3) Trial court abused its discretion by ruling_

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court. Continue on page 5-A

(d)  Did you appeal the action taken on your petition, application, or motion to the:

|  | Arizona Court of Appeals: | | Arizona Supreme Court: | |
|---|---|---|---|---|
| (1) First petition: | Yes ☒ | No ☐ | Yes ☒ | No ☐ |
| (2) Second petition: | Yes ☒ | No ☐ | Yes ☒ | No ☐ |
| (3) Third petition | Yes ☒ | No ☐ | Yes ☒ | No ☐ |

(e)  If you did not appeal to the Arizona Court of Appeals, explain why you did not: _____

_____

_____

_____

_____

_____

12. For this petition, **state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.**  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

> **CAUTION:**  To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

11 (C) Continue

(7) Grounds raised:

that appellate counsel was not ineffective for not raising the photo issue on appeal because it would not have changed the outcome by any stretch of any imagination. (4) Trial court abused its discretion by ruling that trial counsel was not ineffective for not requesting an evidentiary hearing because there is no legitimate basis to preclude defendant's statements made in the telephone call and recording of that call. a) Trial court failed to recognize there is an issue involving the government eliciting a confession from the suspect through impermissible trickery and false promise of privacy in this case. b) Trial court also failed to recognize there is a 4th Amendment Violation issue in this case because the police knowingly used a private person as an agent and instrument to conduct search (electronic interception using a device) for the purpose of seizing incriminating testimonial evidence. (5) This court erred in concluding that petitioner has not established an abuse of discretion. (6) Petitioner's due process right to be informed was violated because the court has not conducted a meaningful review as to informing petitioner how or why he failed to establish his claims in its opinion.

(7) Appellant court's not providing factual findings to support its conclusion violates federal Civil procedure rule 52(a); and Local rule 3.7.

5 - A

**GROUND ONE:** Petitioner Tony Deng is being held in violation of his 5th Amendment right. His confession or statements made over the telephone, on which his conviction heavily relied, was involuntary because his decision to speak was induced by a state agent through impermissible trickery, deception and false promise of privacy.

(a) Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

On 10/12/2011, the victim (caller of confrontation call) met with the police at the child help center in phoenix to conduct a confrontation call. Per detective Contreras' request, the caller agreed to assist the police in obtaining incriminating evidence used to prosecute petitioner. According detective's trial testimony, the purpose of confrontation call is to trick and deceive the suspect into making incriminating statements. (see trial transcript, pg. 86, line 3-21) Under the direction of the police detective, who was sitting next to the caller in the same room, the caller initiated a phone call to petitioner, who was at the time still at work, with an intent to induce petitioner to confess. (see trial transcript, 6/30/2015, pg. 49, line 2-5) The caller deliberately misled petitioner as to the nature of the phone conversation. She pretended that she was having problem with her boyfriend, that she had been having emotional breakdowns to the point that she can't even eat and she needed to confide in petitioner for help at that instant. (see call transcript, pg. 3 at 5-23); (pg. 5, at 21 and pg. 6) This is one of the reason petitioner decided to talk because he was misled to believe that the caller was in serious trouble and he was concerned about the caller's well being. Also, the caller tricked and misled petitioner into believing that he had privacy during the phone call and no one was around to hear his conversation. (see call transcript pg. 6, at 18-19) Petitioner was not willing to talk unless he had privacy, that's why he repeatedly asked the caller to make sure no one was around before he started to talk. (see pg. 10, at 4-9, 17-21, and pg. 5 at 1) This is another reason petitioner decided to talk because he was misled to believe that his conversation was between him and the caller only, that no one was around to hear it, much less recording it and that he could speak freely. On petitioner's first motion to suppress confrontation call, the trial court concluded that the victim "engaged in trickery at behest of the state apparently, but that does not amount to coercion." On appeal, the court stated that "because there was no evidentiary hearing requested or held on the motion to suppress, the source for the observation that any "trickery" in the call was "at the behest of the state" is unclear on appeal. (see state V. Deng NO 1 CA-CR 15-0638.

continue on page 6-A

(b) Did you present the issue raised in Ground One to the Arizona Court of Appeals?   Yes ☐   No ☒

(c) If yes, did you present the issue in a:
  Direct appeal        ☐
  First petition        ☐
  Second petition      ☐
  Third petition        ☐

(d)  If you did not present the issue in Ground One to the Arizona Court of Appeals, explain why: Petitioner's appellate counsel did not present this issue exactly on direct appeal because he failed to recognize the issue. However, he did raise that the trial court abused its discretion by denying petitioner's motions to suppress confrontation call. Petitioner's pre-trial motions encompassed this issue and trial court made a ruling on it. That's why the court of appeals addressed this issue and gave a reason why it couldn't decide on it. (see state V. Deng) Thus, in this way it was presented.

(e) Did you present the issue raised in Ground One to the Arizona Supreme Court?   Yes ☒   No ☐

## Ground One

## (a) Supporting Facts Continue :

Ariz. Ct. App. Feb. 9, 2017) Since the Arizona Court of Appeals addressed the issue but did not actually rule on this issue due to lack of evidentiary evidence and hearing, Petitioner requests this court to either rule on the merits of this issue base on evidence in the call transcript pointed out above or direct the state court to hold an evidentiary or Voluntariness hearing on this issue because this issue involved a substantial constitutional right being violated.

6 - A

**GROUND TWO:** Petitioner Tony Deng is being held in Violation of his 4th Amendment right because his conviction was based on evidence obtained by the government via a warrantless electronic interception. (1) petitioner's case is distinguishable from state v. Allgood and state v. Stanley. (2) The victim became a state agent when she agreed to assist law enforcement. (3) The state violated the 4th Amendment when it used a private person as an agent to conduct search and seizure. (4) petitioner had an expectation of privacy during the call and took steps to protect his privacy which cannot be waived by the consenting party. (5) The ruling of this case conflicts with the principle of state v. Estrada.

(a) Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):

On 10/12/2011, the victim met with the police at child help center in Phoenix to arrange a confrontation call. Police detective Contreras coached the victim, the one making the call, on how to induce a confession from petitioner. The detective said "...be yourself, we don't want them to think that anything is going on and carry on a conversation that you would as if everything is normal." (see trial transcript, 6/30/2015, pg. 49, line 2-5) "to get the other person on the line to admit what had happened ... just to get the conversation rolling..." (pg. 58, line 6-7) The state admitted that when someone makes a confrontation call that person acts as an agent of the police. (see trial transcript, 6/30/2015, pg. 85, line 14-18) Subsequently, the caller allowed the police to install an electronic recording device in her cellphone (see 6/30/2015, pg. 28, line 14-20) for the purpose of discover and record incriminating testimonial evidence for the police, she became an agent of the state. The cellphone and service the state agent used at the time were paid for and subscribed to by petitioner. During the phone call, petitioner expected privacy. Throughout the conversation, he repeatedly asked the agent to make sure no one was around to hear the conversation before he started to talk. (see call transcript, pg. 4, 5, 6, 7 and 10) petitioner never given his right to privacy. The Arizona Court of appeals has held that even a wrongful search and seizure by a private citizen does not violate the 4th Amendment unless the citizen is acting as an agent of the state. But in this case, the same court, relying on Allgood and Stanley, ignoring the fact that interception using an electronic device is covered by the 4th Amendment and the fact that the caller was state's agent, ruled that obtaining statements through a confrontation call does not violate the 4th Amendment.

(b) Did you present the issue raised in Ground Two to the Arizona Court of Appeals?   Yes ☒      No ☐

(c) If yes, did you present the issue in a:
      Direct appeal          ☒
      First petition          ☒
      Second petition       ☒ NO
      Third petition          ☒

(d) If you did not present the issue in Ground Two to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Two to the Arizona Supreme Court?   Yes ☒      No ☐

7

**GROUND THREE:** Petitioner Tony Deng is being held in violation of his 6th Amendment right. Petitioner's right to counsel should have attached during the confrontation call because the confrontation call was a police interrogation, an adversarial proceeding pre-arranged and initiated by state's agent for the sole purpose of procuring a confession from petitioner for the prosecution of petitioner, and the responses he made to the state agent's questioning determine his fate and his life and liberty were at risk.

(a)  Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

On 10/12/2011, under the detective's coaching and direction, the victim made a confrontation call to petitioner. (See supporting facts in Ground two) During the confrontation call, petitioner was still at work trying to finish up his work for the day. He was completely unaware of the fact that he was about to face interrogatory questioning by the caller who had been coached by the police on how to get a suspect to make admissions. The caller was in controled of the whole conversation and leading it to the topics that she knew she could get petitioner to incriminate himself. (See call transcript, pg. 3. at 19-23, pg. 5, at 13-14, pg. 7. at 12-14, pg.8, at 11, pg. 9, at 21, pg. 11, at 21, pg. 13, at 7-9, pg.14, at 16 and pg.15, at 7-10) Petitioner was at a confrontation with the police and his freedom was hinged on his responses to the callers (state's agent) questioning. The fact is the police had stopped investigating at that point, their only mission was to obtain a confession to prosecute petitioner and they were using the caller as an agent to do it through a phone call so that petitioner could not invoke his counsel right.

(b) Did you present the issue raised in Ground Three to the Arizona Court of Appeals?  Yes ☒        No ☐

(c) If yes, did you present the issue in a:
   Direct appeal           ☒
   First petition          ☒
   Second petition         ☐
   Third petition          ☐

(d)  If you did not present the issue in Ground Three to the Arizona Court of Appeals, explain why: _____

(e)  Did you present the issue raised in Ground Three to the Arizona Supreme Court?  Yes ☒        No ☐

**GROUND FOUR:** Petitioner Tony Deng is being held in violation of his 5th Amendment right and Ariz. Const. art. II § 10 because the state made a recording of his private free speech without his consent and disclosed the contents of this recording in trial as proof of guilt over petitioner's objection. Petitioner was being compelled to give evidence and he was being so compelled to incriminate himself.

(a) Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):

Petitioner never wanted his private conversation to be heard by any third party. (see call transcript, pg. 4, 5, 6 and 10) And much less so for it to be recorded by a third party — the police. The making of a recording of petitioner's end of the conversation was done without his consent. Petitioner had continuously objected to the introduction of this recording during trial. (see trial transcript, 6/30/2015, pg. 33, line 7-12) The recorded statements of petitioner were used as proof of guilt throughout the trial. (see trial transcript, 7/7/2015, pg. 40-66, pg. 105-6) Petitioner did not testify in trial he remained silent. Petitioner did not knowingly, intelligently and voluntarily offer his statements or his end of the conversation to be recorded nor did he offer his end of the conversation to be used as a confession by the state in trial.

(b) Did you present the issue raised in Ground Four to the Arizona Court of Appeals? Yes ☒   No ☐

(c) If yes, did you present the issue in a:
- Direct appeal ☒
- First petition ☒
- Second petition ☐
- Third petition ☐

(d) If you did not present the issue in Ground Four to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Four to the Arizona Supreme Court? Yes ☒   No ☐

9

Ground Five =

Petitioner Tony Deng is being held in violation of federal law because the interception of the confrontation in this case violated the scope of 18 U.S.C. § 2510 (5)(a)(i) thus the introduction into evidence of this illegally intercepted communication was in violation of 18 U.S.C. § 2515.

(a) supporting Facts

The interception of the confrontation call was not conducted by the subscriber or user of the phone line, rather it was conducted by the police detective. The tapping equipment was not provided by the service provider of the phone line. The intercepted phone line was not a landline, it was a cellphone line. The interception was not furnished to the subscriber or user by a common carrier in the ordinary course of business and the interception was not conducted by the subscriber or user in the ordinary course of its business as required by 18 U.S.C. § 2510 (5)(a)(i).

(b) Did you present the issue raised in Ground Five to the Arizona Court of Appeals? Yes ☒

(c) If yes, did you present the issue in a :

    Direct appeal    ☐
    First petition    ☒
    Second petition    ☐
    Third petition    ☐

(d)  not apply

(e) Did you present the issue raised in Ground Five to the Arizona Supreme Court? Yes ☒

9 - A

Ground Six:

Petitioner Tony Deng is being held in violation of his federal constitutional right to privacy because the interception of his private communication was authorized by A.R.S. § 13-3012(9) which is unconstitutional on its face, and as applied, where its consent feature completely eliminated the non-consenting party's (petitioner) right to privacy.

(a) Supporting facts:

The interception of the confrontation Call in this case was authorized by A.R.S. § 13-3012 (9). The recording of the intercepted communication was introduced into evidence in trial and convicted petitioner. The consent feature of this statute allows the government to conduct an electronic interception of petitioner's private communication without a warrant. Petitioner's constitutional right to privacy was completely eliminated by the consent feature of this statute.

(b) Did you present the issue raised in Ground Six to the Arizona Court of appeals? Yes ☒

(c) If yes, did you present the issue in a:

      Direct appeal     ☐

      First petition     ☒

      Second petition   ☐

      Third Petition    ☐

(d) not apply

(e) Did you present the issue raised in Ground Six to the Arizona Supreme Court? Yes ☒

Ground Seven:

Petitioner Tony Deng is being held in violation of Ariz. const. art II § 8 because state disturbed petitioner's private affair — intercepted his private phone communication — without a warrant.

(a) Supporting facts:

On 10/12/2011, Petitioner received a phone call from the victim, who was using a cellphone and cellphone ~~service~~ service that were paid for by petitioner. Petitioner expected privacy when he was using the cellphone service he paid for the entire time. (see call transcript, pg. 4, 5, 6, 7 and 10) This phone call was intercepted by the police with the caller's permission. The fact is this phone call was a private communication — private affair — because it was conducted on a phone line that was paid for by petitioner and the consenting party's permission for the police to intercept does not change that fact and her consent cannot constitute a waiver of petitioner's right to private affair or privacy.

(b) Did you present the issue raised in Ground Seven to the Arizona Court of appeals? Yes ☒

(c) If yes, did you present the issue in a:

    Direct appeal    ☒

    First petition    ☒

    Second petition    ☐

    Third petition    ☐

(d) not apply

(e) Did you present the issue raised in Ground Seven to the Arizona Supreme Court? Yes ☒

Ground Eight:

Petitioner Tony Deng was deprived of his federal constitutional right to the effective assistance of pre-trial and trial counsel. U.S. const. amends. VI and XIV.

(1) pre-trial counsel Vicki Lopez rendered ineffective assistance because she did not request an evidentiary hearing on the motion to suppress to develop evidence to prove that the caller was a state agent and performing trickery at the behest of the state during the confrontation call. (2) Lopez should have requested a voluntariness hearing to have a clear-cut determination that petitioner's confession was in fact voluntarily rendered. (3) Lopez should have developed evidence via an evidentiary hearing to prove that petitioner was entitled to privacy during his private phone conversation because he exhibited an expectation that he did not want his conversation to be heard by any third party during the call. (4) Trial counsel Kamille Dean rendered ineffective assistance because she failed to timely disclose the photos medical expert used to corroborate his testimony which resulted in its preclusion. (5) pre-trial and trial counsel rendered ineffective assistance because they both failed to raise the issue that petitioner was deprived of procedural and constitutional right to initial appearance. (6) Both pre-trial and trial counsel should have argued that the method state used for eliciting a confession from petitioner in this case constitute an entrapment in violation of due process. (7) Both counsels did not challenge the constitutionality of the construction of the grand jury indictment in this case where it failed to provide notice of specific dates as to when each alleged offense had occurred.

(a) Supporting Facts:

Vicki Lopez was petitioner's counsel in 2013. She was terminated by petitioner because she refused to consider petitioner's suggestion and failed to raise the claims above. (1) She did not request an evidentiary or a voluntariness hearing on the motion to suppress which was the reason court of appeals couldn't decide on the trickery issue. (see state v. Deng, NO 1 CA-CR 15-0638, Feb. 9, 2017) (2) Lopez did not investigate all the facts that could have supported the trickery claim and she did not develop evidence to show the caller was state's agent, and (3) to show that petitioner had a legitimate expectation of privacy because he had exhibited that expectation. (4) Trial counsel Kamille Dean

Ground Eight Continue:

(A) supporting Facts Continue:

did not timely disclose the photos used by medical expert because she was told by other more experienced attorneys that she didn't need to disclose the photos medical expert use early. (see transcript, 7/6/2015, pg.54) Her listening to other attorney's advice without doing the fact checking herself resulted in the photos being precluded. (5) Petitioner was arrested on 10/12/2011. He was indicted on 10/21/2011. A hearing was vacated on 10/24/2011. Not guilty arraignment was held on 10/31/2011. According to the records, there was no Intitial appearance held within 24 hours of petitioner's arrest as required by rule 4.1 and 4.2. (6) During the confrontation call, petitioner did not want to talk. But the state agent relentlessly begged, badgered and misled petitioner into believe that she was in trouble and she needed help and that the conversation was private between petitioner and her only. (see supporting facts in Ground one) It was this undue persuasion by the state agent caused petitioner to incriminate himself. (7) The grand jury indictment in this case did not provide notice regarding the exact dates as to when each alleged crime had occurred.

(b) Did you present the issue raised in Ground Eight to the Arizona Court of appeals. NO ☒ except issue (1,2,3)

(C) Issue 1, 2 and 3 have been presented to Arizona Court of appeals.

(d) If you did not present the issue in Ground Eight to the Arizona Court of appeals, explain why. Issue 4, 5 and 6 were not raise in court of appeals because they were not presented in trial court due to the ineffectiveness of pre-trial and trial counsel, who failed to recognize and raise these issues. Issue 1 was mentioned on appeal but the court could not decide on this issue because there was no evidentiary hearing held on the motion to suppress. (see NO. 1 CA-CR 15-0638, Ariz. Ct. App. Feb. 9, 2017)

(e) Did you present the issue raised in Ground Eight to the Arizona Supreme Court? Yes ☒ only issue (1), (2) and (3) were presented in a petition for review filed 1/3/2019. NO. CR-19-0313-PR.

## Ground Nine:

Petitioner Tony Deng was deprived of his federal constitutional right to the effective assistance of appellate counsel. U.S. Const. amends. VI and XIV.

(1) Petitioner's appellate counsel Robert Campos was ineffective in failing to raise the issue of suppression of the photo on direct appeal. (2) Campos did not make an argument on how the state violate petitioner's due process right when interrogating him for the sole purpose of inducing him to confess while deliberately not notify him that his conversation — free speech — was being monitored, recorded and used as a confession later. (3) Campos did not argue that the state violated petitioner's First Amendment right by monitoring and recording his speech — his private phone conversation — without his consent and without a warrant. (4) Appellate counsel should have argued that the rule 20 motion for acquittal should have been granted because there were no sufficient evidence to prove each substantial element of each charged crime beyond a reasonable doubt. (5) Appellate counsel should have challenged the constitutionality of A.R.S. § 13-3961 and argued that holding petitioner as non-bondable violated his constitutional right to due process. (6) Appellate counsel should have raised the issue in Ground one — that petitioner's confession or statements made over the telephone, on which his conviction heavily relied, was involuntary because his decision to speak was induced by a state agent through impermissible trickery, deception and false promise of privacy.

(a) Supporting Facts:

Robert Campos was the appellate counsel for petitioner. The essential point of each issue in Ground Nine have been fairly prensented to trial court and they were preserved for appeal. (see petitioner's first motion to suppress, filed on 9/3/2013 and his second motion entitled "motion to suppress to suppress confrontation call based on new identified violation of law and motion to reconsider previously argued reasons.") Every one of these issues involved a substantial constitutional right being violated. Appellate counsel failed to recognize and raise these

Ground Nine continue:

(A) Supporting Facts Continue:

issues on appeal. (1) Defense medical expert was planning to use some photos to demonstrate the physical differences between a sexually active vagina from a non-sexually active one. The trial court precluded the photos because trial counsel did not notify the state about these photos in a timely manner. This issue was preserved for appeal. Appellate counsel did not raise this issue.

(2) During the confrontation call, Petitioner was facing a confrontation with the state. His life and liberty were at risk. The police were focusing on obtaining a confession from petitioner and the state agents deliberately not notify petitioner that everything he said was being monitored and recorded and used as a confession against him later. (see trial transcript, pg. 86, at 3-21) (3) On 10/12/2011, petitioner answered his cellphone as he normally did and he was speaking freely after he made sure that he had privacy. (see call transcript, pg. 4, 5, 6, 7 and 10) His private phone conversation was a free speech. He expected and assumed that no one could monitor and record his private conversation without his consent or a warrant. (4) state did not provide any physical evidence to prove that petitioner had actually penetrated the victim's vulva or anus by any part of his body or by any object or he had masturbated the victim's vulva. state has not produced any eye witness, or specific dates as to when these alleged acts had occurred. This issue was preserved for appeal. (5) petitioner had been held without bail in Maricopa county jail for 4 years prior to trial. petitioner was not a flight risk, he had no prior convictions. He had a stable job and a stable residence. He was presumed innocent. This issue was preserved for appeal. (6) This issue was preserved for appeal and it was obvious because the trial court had made a ruling on it. The trial court stated that the victim "engaged in trickery at the behest of the state apparently, but that does not amount to coersion." (see state v. Deng, NO 1 CA-CR 15-0638, Feb. 9, 2017) The trial court had already acknowledged that the victim was engaging in trickery at the behest of the state and the evidence of petitioner being misled and tricked was also obvious in the Call transcript. (see supporting facts in Ground one) Petitioner's appellate counsel could and should have raised this issue.

9 - G

Ground Nine continue :

(b) Did you present the issue raised in Ground Nine to Arizona Court of appeals ?  Yes ☒ for issue 1 and 6 which were presented in petition for review filed 12/20/2018, NO 1 CA - CR 18 - 0893.  NO ☒ for issue 2, 3, 4 and 5.

(C) If yes, did you present the issue in a:

       Direct appeal ☐

       First petition ☐

       Second petition ☐

       Third petition ☒  issue 1 and 6

(d) If you did not present the issue in Ground Nine to the Arizona Court of Appeals, explain why:  Issues 2, 3, 4 and 5 in Ground Nine were not presented in Court of appeals because petitioner's appellate counsel failed to recognize the basis for these claims. Petitioner did not knowingly, voluntarily and personally waive these claims.

(e) Did you present the issue raised in Ground Nine to the Arizona Supreme Court ? Yes ☒ only issue 1 and 6 were presented in Arizona Supreme Court in a petition for review filed on 1/3/2019, NO CR - 19 - 0313 - PR.  NO ☒ for issues 2, 3, 4 and 5.

Ground Ten:

Petitioner was deprived of due process where the Arizona Court of appeals granted review but did not conduct a meaningful review and gave no finding of facts on which its ruling based in violation of federal civil procedural rule 52(a) and local rule 3.7(c).

(A) Supporting Facts:

Petitioner's post conviction relief was denied on 11/13/2018. Petitioner timely submitted a pro per petition for review of trial court's decision in the Arizona Court of appeals. The Court of appeals entered a decision on 8/6/2019, granted review but denied relief. In its decision, the court did not address any of petitioner's issue and contentions. The court did not make any factual findings to support its decision, which making it extremely difficult for petitioner to challenge its decision in a higher Court.

(b) Did you present the issue raised in Ground Ten to the Arizona Court of appeals? Yes ☒

(C) If yes, did you present the issue in a:

Petitioner presented this issue in a Motion for reconsideration

(d) does not apply

(e) Did you present the issue raised in Ground Ten to the Arizona Supreme Court? Yes ☒

in a petition for review filed on 1/3/2019.

9 — I

**Please answer these additional questions about this petition:**

13. Have you previously filed any type of petition, application or motion in a federal court regarding the conviction that you challenge in this petition?        Yes ☒        No ☐

If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.   Attach a copy of any court opinion or order, if available:   A motion was filed on 10/13/2020 in the United States district court for the district of Arizona. Case number is CV-20-01990-PHX-SPL (JFM). The Motion is entitled "Motion to stop the running limitation period for submitting a petition for writ of habeas corpus." Petitioner, in the motion, requested this court to stop the running of the one year limitation period because he was still trying to exhaust state remedy. This motion was denied without prejudice on 11/4/2020. See attachment for a copy of this court's ruling. (Exhibit two)

14. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?        Yes ☒        No ☐

If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: A motion was filed by petitioner on 3/1/2021 in the Arizona Supreme Court Case No. M-21-0025. This motion was still pending - at the time this petition was being prepared. The issue raised in the motion: After the trial court dismissed petitioner's third notice requesting post conviction relief, petitioner filed 2 separate motion for extension of time to file a petition for review trial court's decision in the court of appeals, but the trial court had not and still have not ruled on these motions. The trial court's not ruling on the 2 motions for extension of time caused petitioner's petition for review filed in the court of appeals to be denied as untimely filing. Petitioner, in the motion, requested the supreme court to issue a writ of mandamus.

15. Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging?   Yes ☐        No ☒

If yes, answer the following:

(a) Name and location of the court that imposed the sentence to be served in the future:

_____

_____

_____

_____

(b)   Date that the other sentence was imposed: _____

(c)   Length of the other sentence: _____

(d)   Have you filed, or do you plan to file, any petition challenging the judgment or sentence to be served in the future?        Yes ☐        No ☐

16. TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition.*

*Petitioner was convicted and sentenced on 9/18/2015. Petitioner timely appealed, his appellate brief was filed on 5/31/2016, which was denied on 2/9/2017. Petitioner timely filed motion for extension of time to file a pro per motion to reconsider and he submitted a pro per Motion to reconsider and supplemental brief on May 1, 2017. This motion was denied on Jun 22, 2017. Then petitioner timely filed motion for extension of time in the Arizona Supreme court for petition for review. He timely filed his pro per petition for review in the supreme court of Arizona and his petition was denied on November 30, 2017. The court of appeals issued an order mandate for direct appeal proceeding on January 3, 2018. Petitioner then timely submitted motion for extension of time for PCR, the motion was granted, there after, petitioner, represented by state appointed counsel, filed a timely petition for post conviction relief on July 23, 2018. The trial court denied the PCR petition on 11/13/2018. Petitioner timely asked for extension of time to submit pro per petition for review. He filed a pro per petition for review PCR in court of appeals on 12/24/2018, which was denied*

*Section 2244(d) provides in part that:                                     continue on page 11-A

   (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of-

      (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

      (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

17. Petitioner asks that the Court grant the following relief: *Wherefore, petitioner prays that he be discharged from custody and restraint and he prays that the court grant any relief to which he may be entitled in this proceeding.*

or any other relief to which Petitioner may be entitled.   (Money damages are not available in habeas corpus cases.)

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___3/29/2021___ (month, day, year).

**Signature of Petitioner**

_____          _____
Signature of attorney, if any                                      Date

16. Timeliness of petition Continue:

on 8/6/2019, and petitioner timely filed a Motion for reconsideration on 8/28/2019, which was also denied on 9/23/2019. Thereafter, Petitioner timely requested 3 motions for extension of time to file a petition for review. (Motions were granted) On 1/6/2020, petitioner filed his petition for review in the supreme court of Arizona and the petition was denied on 6/3/2020. The court of appeals entered an order mandate for PCR proceeding on 6/29/2020. This date concluded one full round of direct appeal and post conviction relief. Petitioner had been diligently exhausting the state remedies available to him during direct appeal and post conviction relief proceedings. Under 28 U.S.C. § 2244 (d)(2), the time from 9/18/2015 to 6/29/2020 shall not be counted toward any period of the limitation for federal habeas corpus petition in this case, the one year limitation started on 6/29/2020, which makes this petition well within the time limitation under § 2244(d)(2).

## Attachment

- Appellant's opening brief   ( Exhibit one )

- Judgement in a civil case   ( Exhibit two )

- State v. Deng NO. 1 CA-CR 15-0638   ( Exhibit three )

- Motion to suppress confrontation call   ( Exhibit Four )

- Petition for post conviction relief   ( Exhibit Five )

- Petition For Review       ( Exhibit Six )

- Arizona Court of appeals' decision   ( Exhibit Seven )

- Motion for Reconsideration and supplementa brief   ( Exhibit Eight )

Exhibit One

# ARIZONA COURT OF APPEALS
## DIVISION ONE

| | |
|---|---|
| STATE OF ARIZONA, | ) Case Number: 1 CA-CR-15-0638 |
| APPELLEE, | ) |
| | ) |
| vs. | ) MARICOPA COUNTY |
| TONY DENG, | ) SUPERIOR COURT |
| | ) CASE NO.: CR 2011-153034-001 DT |
| APPELLANT. | ) |

**APPELLANT'S OPENING BRIEF**

ROBERT J. CAMPOS #011817
ROBERT J. CAMPOS
& ASSOCIATES, P.L.C.
51 EAST LEXINGTON AVENUE
PHOENIX, ARIZONA 85012
TELEPHONE (602) 222-3440
FACSIMILE (602) 595-9683
EMAIL info@robertjcampos.com

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................3

STATEMENT OF THE CASE AND FACTS............................................7

STATEMENT OF THE ISSUES.........................................................10

STANDARD OF REVIEW ...............................................................10

ARGUMENT ...............................................................................11

CONCLUSION ............................................................................40

CERTIFICATE OF RULE 31.13(b) COMPLIANCE..................................41

CERTIFICATE OF SERVICE............................................................42

# TABLE OF AUTHORITIES

**CASES**                                                      PAGES

*State v. Estrada*, 209 Ariz. 287, 291, 100 P.3d 452, 456

    (Ct. App. 2004) ........................................................ 9, 10, 11, 12

*State v. Allgood*, 171 Ariz. 522, 524, 831 P.2d 1290, 1292 (Ct. App. 1992) ........ 10

*State v. Weekley*, 200 Ariz. 421, 27 P.3d 325 (App. 2001) ..........................10

*State v. Weinstein*, 190 Ariz. 306, 947 P.2d 880 (App. 1997) .............................. 10

*United States v. Walther,* 652 F.2d 788, 791-92 (9th Cir. 1981)............................ 11

*United States v. Gumerlock*, 590 F.2d 794, 800 (9th Cir.) (en banc), 792 cert.

    denied, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979) ...............11

*Rhode Island v. Innis*, 466 U.S. 291, 301 (1980) .................................................. 11

*Kyllo v. United States*, 533 U.S. 27, 21, 121 S.Ct 2038, 2041, 150 L.Ed.2d 94

    (2001). ........................................................................................ 13

*Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ...13

*State v. Stanley*, 123 Ariz. 95, 102, 597 P.2d 998, 1005 (App. 1979)

    ..........................................................12, 13, 14, 15, 16, 17, 18

*Hoffa v. United States*, 385 U.S. 293, 87 S. Ct. 408, 17 L.Ed.2d 374

    (1966) ...................................................................... 13, 14, 16

*State v. Holmes,* 13 Ariz. App. 357, 476 P.2d 878 (1970) ........................... 13

*United States v. White,* 401 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374

    (1971) .................................................................... 13, 14, 16, 17

*Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347

    (1996)................................................................................ 14, 17

*Riepe v. Riepe*, 208 Ariz. 90, 93, 91 P.3d 312, 315 (Ct. App. 2004) ..................... 15

Matter of Appeal in Maricopa County Juvenile Action No. JS-5209 & JS-4963,

    143 Ariz. 178, 185, 692 P.2d 1027, 1034 (Ct. App. 1984) ......................... 16

*Malmin v. State*, 30 Ariz. 258, 261, 246 P. 548, 549 (1926) ................................ 19

*State v. Smith*, 193 Ariz. 452, 457, 974 P.2d 431, 436 (1999) .............................. 19

*State v. Wright*, 161 Ariz. 394, 398, 778 P.2d 1290, 1294 (Ct. App. 1926) .... 19, 20

*Messiah v. United States*, 377 U.S. 201, 206 (1964). ............................................. 21

*Escobedo v. State of Illinois*, 378 U.S. 478, 485, 84 S. Ct. 1758, 1762, 12 L.Ed.2d
      977 (1964) ................................................................................................. 21, 22

*Main v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487 88 L.Ed.2d 481
      (1985) ..................................................................................................... 22

*Miranda v. United States*, 384 U.S. 436, 444,  86 S.Ct. 1602, 1612, 16 L.Ed.2d 694
      (1966) ................................................................................................. 23, 24

*Bram v. United States*, 168 U.S. 532, 542, 18 S.Ct. 183, 187, 42 L.Ed. 568
      (1897) ..................................................................................................... 23

*Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56
      (2006) ..................................................................................................... 24

State v. Totress, 107 Ariz. 18, 20,, 480 P.2d 668, 670 (1971) ....................... 27

*Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct.
2014, 141 L.Ed.2d 344 (1998) ......................................................................24

*State v. Totress*, 107 Ariz. 18, 20,, 480 P.2d 668, 670 (1971)........................27

*State v. Bible*, 175 Ariz. 549, 588, 858 P.2d, 1152, 1191 (1993) ....................27

*State v. Dalton*, 366 P.3d 133 (2016) ...............................................................28

*State v. Dalton*, 366 P.3d 133 (2016) ..............................................................28

*Batson v Kentucky*, 476 U.S. 79 (1986) ......................................................29, 30

*State v. Cota*, 229 Ariz. 136, 272 P.3d 1027 (2012)......................................29

*Diomampo v. State of Nevada*, 124 Nev. 414, 185 P.3d 1031 (2008) ......30, 32, 33

*Taylor v. Louisiana*, 419 U.S. 522 (1975) ........................................36, 37

*Hernandez v. New York*, 500 U.S. 352 (1991) ......................................37

# ARIZONA REVISED STATUTES

§ 12-120.21(A)(1) ........................................................................9

§ 13-4031 ................................................................................ 9

§ 13-4033(A) ............................................................................ 9

§ 13-3988 ............................................................................ 10, 21

§ 25-41(C) .............................................................................15

§ 25-501 ...............................................................................16

§ 13-3988(A) ..........................................................................19

§ 13-3988(B) ..........................................................................19

§ 21-202B3 ..............................................................27, 29, 30, 34

§ 21-202B ................................................................... 28, 29

§ 21-202B4 ...............................................................................29

# ARIZONA RULES OF CRIMINAL PROCEDURE

Rule 18.5 ................................................................................ 28

# UNITED STATES CONSTITUTION

Fourth Amendment ..........................................10, 13, 14, 17, 18, 19

Fifth Amendment ..............................................................10, 23, 24

Sixth Amendment .................................................10, 21, 22, 23, 27

Fourteenth Amendment .................................................................27

# ARIZONA CONSTITUTION

art. 6, § 9 ................................................................................9

art. 2, § 8 ............................................................................ 10, 19

art. 2, § 13 ..............................................................................33

# NEW MEXICO CONSTITUTION

art. VII, Section 3 ................................................................................................. 34

## STATEMENT OF THE CASE AND FACTS

The victim was Appellant's step-daughter. Appellant had been the victim's stepfather since she was one-year-old. After Appellant and the victim's mother separated, the victim lived exclusively with Appellant for a period of more than one year. The victim made allegations of sexual abuse against Appellant to the Phoenix Police Department. Detective Jennifer Contreras of the Phoenix Police Department investigated the allegations.

On October 12, 2011, the victim's mother brought the victim to Child Help Children's Center, located at 2346 North Central Avenue, under the direction of the Phoenix Police Department, to conduct a confrontation phone call. (Trial transcript, dated June 30, 2015, page 28, lines 21-25). The purpose of the call was to interrogate Appellant and to apply pressure to get Appellant to confess. Detective Contreras directed the victim to use her cell phone to make the call to Appellant. Detective Contreras monitored the call and was sitting right next to the victim. The call was recorded by the police department. (See Appendix #1, transcript of the call).

Throughout their conversation, the victim made repeated emotional pleas for Appellant to speak with her about the allegations that he sexually abused her. The victim used lies and emotional manipulation to convince Appellant to make admissions. Despite the fact that Appellant did not wish to speak to the victim and,

despite the fact that Appellant was at work and stated he could not talk, the victim was relentless with her untruths, finally overcoming Appellant's will.  Appellant made damaging admissions, which the police recorded. Appellant was arrested after the confrontational phone call.

Appellant was indicted on October 21, 2011.  On September 3, 2013, Appellant filed his "Motion to Suppress Confrontation Call" ("Motion 1") (See Appendix #2).   On September 17, 2013, the State filed its Response.  (See Appendix #3). On October 18, 2013, the trial court heard oral arguments on Motion 1.  The trial court denied Appellant's Motion 1. (See Appendix #4, Minute Entry dated October 18, 2013).  On December 12, 2014, Appellant filed a second motion to suppress entitled, "Motion to Suppress Confrontation Call Based on New Identified Violations of Law and Motion to Reconsider Previously Argued Reasons". ("Motion 2"). (See Appendix #5). On January 20, 2015 the State Responded (See Appendix #6).  On March 12, 2015, Appellant Replied. (See Appendix #7). On March 16, 2015, the trial court denied Motion 2 (See Appendix #8, Minute Entry dated March 16, 2015).  Lastly, Appellant filed a Special Action Petition, challenging the admissibility of the call.   The court of appeals denied jurisdiction.

On July 9, 2015 Appellant was convicted after a jury trial on the following criminal offenses: Count 1, Sexual Conduct with a Minor, a class two felony and a

dangerous crime against children and was sentenced to life in the Arizona Department of Corrections; Count 2, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to life in the Arizona Department of Corrections; Count 3, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 4, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 5, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 6, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 7, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 8, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 9, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections; Count 10, Sexual Abuse, a class three felony and a dangerous crime against children and was

sentenced to five years in the Arizona Department of Corrections; and Count 11, Sexual Conduct with a Minor, a class two felony and a dangerous crime against children and was sentenced to twenty years in the Arizona Department of Corrections.

Appellant now appeals the denial of his motions to suppress and the wrongful dismissal of three potential trial jurors who were excused by the court because they were Hispanics who allegedly could not understand the English language sufficiently enough to serve as jurors.

On September 25, 2015, Appellant filed a timely notice of appeal. This court has jurisdiction pursuant to Ariz. Const. Art. 6, § 9 as well as A.R.S. § 12-120.21(A)(1), 13-4031, and 13-4033(A).

## STATEMENT OF ISSUES

1. Did the trial court abuse its discretion in denying Appellant's motions to suppress the confrontational phone call?

2. Did the trial court commit fundamental error by summarily striking two Hispanic jurors because the jurors allegedly could not understand the English language sufficiently enough to sit as jurors?

## STANDARD OF REVIEW

Appellate courts will review a trial court's ruling on the suppression of evidence for an abuse of discretion, considering only the evidence presented at the suppression hearing. *State v. Estrada*, 209 Ariz. 287, 288, 100 P.3d 452, 453 (2004). Appellate courts "defer to the trial court's factual findings that are

supported by the record and are not clearly erroneous." *Id.* However, the trial court's legal conclusions are reviewed *de novo.* Id.

## ARGUMENT

## I.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTIONS TO SUPPRESS.

### A. Appellant's case is distinguishable from State v. Allgood.

In *State v. Allgood*, this court found that the "confrontation call," under the circumstances of that case, "comported with [Arizona's] statute and did not violate the [Arizona's] constitution." *State v. Allgood*, 171 Ariz. 522, 524, 831 P.2d 1290, 1292 (Ct. App. 1992). Many issues present in Appellant's case, however, were not addressed in *Allgood*. In Appellant's case, (1) the consenting party, the victim, was a state agent, (2) the unique relationship between the consenting party and Appellant implicates the Fourth Amendment, (3) since the Fourth Amendment was violated, Section 8, article 2, of the Arizona Constitution was violated, (4) Appellant's statements were involuntary and are protected by A.R.S. § 13-3988, (5) the call violated the Sixth Amendment to the United States Constitution, and (6) the call violated the Fifth Amendment to the United States Constitution.

## B. The victim who called acted as a state agent.

"[A] wrongful search or seizure by a private citizen does not violate the Fourth Amendment unless the citizen is acting as an agent of the state." *State v. Estrada,* 209 Ariz. 287, 291, 100 P.3d 452, 456 (Ct. App. 2004) (*citing State v. Weekley,* 200 Ariz. 421, 27 P.3d 325 (App. 2001); *State v. Weinstein,* 190 Ariz. 306, 947 P.2d 880 (App. 1997). In *Estrada,* the court used a two part test to determine when a private person becomes a state agent, and therefore, subject to the mandates of the Fourth Amendment. *Id.* This test inquires as to (1) the degree of government participation in the seizure, and (2) whether the private party performing the seizure intended to assist law enforcement as opposed to furthering his or her own ends. *Id.*

## C. The Government participated to a significant degree in the search and seizure.

To satisfy the first part of the *Estrada* test, a defendant must show "[t]he government [was] involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state." *United States v. Walther,* 652 F.2d 788, 791-92 (9th Cir. 1981) (*citing United States v. Gumerlock,* 590 F.2d 794, 800 (9th Cir.) (en banc), 792 cert. denied, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). Therefore, "[t]he requisite degree of governmental participation involves some degree of

knowledge and acquiescence in the search." *Id.* Here, subsequent to an interview between Detective Jennifer Contreras and the alleged victim, Detective Contreras encouraged the victim to conduct a telephonic interrogation of Appellant. The purpose of this interrogation was to elicit incriminating responses that could be recorded by the State and used against Appellant as evidence. In addition to encouraging the victim to conduct this interrogation, Detective Contreras also performed the audio recording of this interrogation. For these reasons, this court should find that the first prong of the *Estrada* test has been satisfied.

## D. The victim assisted law enforcement.

To satisfy the second part of the *Estrada* test, a defendant must show that the private party performing the seizure intended to assist law enforcement as opposed to furthering his or her own ends. *See Estrada* 209 Ariz. at 291. In *Rhode Island v. Innis*, the Supreme Court held that any statements or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect" constitute an interrogation. Id. at 446 U.S. 291, 301 (1980). Here, the victim could have confronted Appellant with her allegations at any time, however, she chose to confront Appellant, with the intent to elicit incriminating statements that could be used for evidence, at a time when the interrogation could be recorded by Detective Contreras. For this reason, this court should find that the second part of the *Estrada* test is satisfied.

Since the State participated to a significant degree in this search and seizure, and the victim's intent was to assist Detective Contreras in gathering evidence of her accusations through a well-planned interrogation, the *Estrada* test has been satisfied and this court should find that the victim was acting as a state agent at the time of the interrogation and while the audio evidence was recorded and seized; therefore, this action is subject to constitutional limitations.

## E. The confrontation call violated Appellant's Fourth Amendment Rights.

"The Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Kyllo v. United States*, 533 U.S. 27, 21, 121 S.Ct. 2038, 2041, 150 L.Ed.2d 94 (2001). The Supreme Court has determined that, "a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Id.* (citing *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). In Arizona, courts often look to the *Stanley* holding to determine the Constitutionality of "confrontation calls." In *Stanley*, this court held that "[u]nder the Fourth Amendment, there is no invasion of privacy in monitoring, recording and introducing into evidence a telephone conversation where one party has given prior consent to the interception." *State v. Stanley*, 123 Ariz. 95, 102, 597 P.2d 998, 1005 (App. 1979) (citing *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28

L.Ed.2d 453 (1971); *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *State v. Holmes*, 13 Ariz. App. 357, 476 P.2d 878 (1970)).

Unfortunately, the holding in *Stanley* has created a *per se* rule that Arizona courts apply when determining the admissibility of "confrontation calls." Recognizing the "endless variations in the facts and circumstances implicating the Fourth Amendment," however, the United States Supreme Court has repeatedly rejected these *per se* rules and reiterated that a "proper [Fourth Amendment] inquiry necessitates a consideration of 'all the circumstances surrounding the encounter.'" *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). Here, the facts presented are distinguishable from *Stanley*, and the line of cases that support its holding, because: (1) Appellant was standing in *loco parentis* to the victim, rendering the "false friends" doctrine inapplicable, and (2) Appellant took several substantial steps to ensure that a heightened degree of privacy was observed during his conversation.

## F. Appellant stood in Loco Parentis; therefore the false friend doctrine of *Stanley* does not apply.

In *Stanley, White,* and *Hoffa*, the government agents consenting to the intercepted communications were mere colleagues, false-friends, or co-conspirators of the defendants. This fact is of critical importance because *White* notes that "however strongly a defendant may trust an apparent colleague, his

expectations [to privacy] in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities." *United States v. White,* supra, 401 U.S. at 749, 91 S.Ct. at 1124, 28 L.Ed.2d 453. Expanding on this logic from *Hoffa,* the court in *White* notes that "one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his." *Id.* at 752. This theory is commonly referred to as the "false friends" doctrine.

Here, the circumstances surrounding this case are distinguishable from the aforementioned cases because Appellant was more than a "false friend" to the alleged consenting agent, he was standing in *loco parentis* to the victim. In *Riepe,* the court put forth a test to determine when a person stands in *loco parentis* with a child. This test states that a court should consider (1) whether the child views that stepparent as a parent, and (2) whether they have formed a meaningful parental relationship, which has endured for a substantial period of time. *See Riepe v. Riepe,* 208 Ariz. 90, 93, 91 P.3d 312, 315 (Ct. App. 2004), as amended (June 29, 2004).

If a person is found to be in *loco parentis,* certain rights and responsibilities attach. For example, in *Riepe,* the court held that A.R.S. § 25-415(C) "authorizes

16

the trial court to award reasonable visitation . . . if the factors set forth in that provision are otherwise satisfied." *Id.* at 91. Equally, it can be implied that a person standing in *loco parentis* is subject to the parental duties as described in A.R.S. § 25-501. Our appellate courts have found that some of these duties "include providing the child with food, shelter, and medical attention." *Matter of Appeal in Maricopa County Juvenile Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 185, 692 P.2d 1027, 1034 (Ct. App. 1984). Further, our appellate courts have held that "a child's right to proper parental care include[s] the right to good physical care and *emotional security*." *Id.* (Emphasis added). Here, under the first part of the *Riepe* test, the victim's recognition of Appellant as a parent is evidenced by the fact that the victim repeatedly referred to Appellant as "dad" during the interrogation. (Appendix 1, pages 3, 4, 5, 6, 7, 8, 9, and 12). Further, when Appellant and the victim's biological mother separated, the victim chose to stay exclusively with Appellant for more than a year. For these reasons, this court should find that the first part of the *Riepe* test has been satisfied.

As to the second part of the *Riepe* test, Appellant has been the victim's step-parent since she was one-year-old. For this reason, this court should recognize that Appellant satisfied the second part of the *Riepe* test; therefore, Appellant was standing in *loco parentis* to the victim.

Standing in *loco parentis*, Appellant had a legitimate expectation of privacy in his conversation with the victim that was absent in *Stanley*, *White*, and *Hoffa*, because the victim was more than a "false friend," she was a *de facto* family member.   Contrary to the reasoning in *White*, the victim in this case made the following statements: "I need to talk to you right now . . . Dad, please . . . please . . Dad, I need you now . . . I can't wait . . . it's just bothering me real bad . . . this is important . . . just talk to me right now". (See Appendix 1, transcript of call, pages 3-6).   Appellant could not simply terminate this relationship because he distrusted his stepdaughter – a remedy discussed in *White*.   Instead, he was obligated by his parental duty to provide *emotional security* to his step-daughter; and it was this parental duty that led him to respond to the interrogation, not his lack of doubt or allayment of risk.   For these reasons, this court should find Appellant had a much stronger and legitimate expectation of privacy than the defendant in *Stanley*; therefore, his statements were obtained in violation of the Fourth Amendment of the United States Constitution.

## G. Appellant had an expectation of privacy during the call and took steps to protect his privacy.

As previously mentioned, a "proper [Fourth Amendment] inquiry necessitates a consideration of 'all the circumstances surrounding the encounter.'" *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996).

Here, the circumstances surrounding Appellant's conversation are distinguishable from *Stanley* and its line of supporting cases. To ensure his privacy, Appellant took steps to ensure that the victim was in a place where her conversation could not be overheard by others. Throughout the conversation, Appellant repeatedly asked her whether anyone was around, and whether or not she was alone. (See Appendix 1, pages 4, 6, and 10). In response, Appellant was told, "[n]o, I'm in my room alone," "no one's around me," and "no one's around . . . I'm too freaking paranoid . . . [t]hat's why I'm in my room with the door locked." (See Appendix 1, pages 5, 6, and 10).

In contrast, the defendants in *Stanley*, and its line of supporting cases, did not take similar precautions. Additionally, Appellant received this call from the alleged victim while he was at work. Recognizing that this circumstance may lead to his conversation being overheard, Appellant sought solitude. This is evidenced by statements such as "I can't talk about it right now" and "there [was somebody] around me, that's why I couldn't [ ] talk." (See Appendix 1, pages, 5 and 7). Again, this action is dissimilar to the actions of the defendant's in *Stanley*, and its line of supporting cases. Lastly, Appellant received this call from a *de facto* family member on a phone line that he subscribed to and paid for. The phone call in *Stanley* was made from a police station on a line that the defendant did not pay for. Since Appellant took several objective steps to ensure privacy in his

communication with the alleged victim, this court should find that *Stanley* does not apply and Appellant's communications were protected by the Fourth Amendment of the United States Constitution.

### H.  The confrontation call violated Article 2 Section 8 of the Arizona Constitution.

Section 8, article 2, of the Arizona Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."  This provision, "although different in its language, is of the same general effect and purpose as the Fourth Amendment, and, for that reason, decisions on the right of search under the latter are well in point on section 8, supra." *Malmin v. State*, 30 Ariz. 258, 261, 246 P. 548, 549 (1926).  Here, because the State violated Appellant's Fourth Amendment rights, it also violated his rights under Section 8, article 2, of the Arizona Constitution.

### I.    All of Appellant's statements were involuntary and in violation of A.R.S. Section 13-3988.

Pursuant to A.R.S. § 13-3988(A), ". . . a confession shall be admissible in evidence if it is voluntarily given."  Section 13-3988(B) further provides that "[t]he trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession."  "Confessions are presumed [to be] involuntary, [and] the state must show by a preponderance of the

evidence that a confession was voluntary." *State v. Smith*, 193 Ariz. 452, 457, 974 P.2d 431, 436 (1999).

In *Wright*, the court found a father-son relationship as "*moving in considering whether [the defendant's] statement [to his police officer father] was voluntary.*" *State v. Wright*, 161 Ariz. 394, 398, 778 P.2d 1290, 1294 (Ct. App. 1989) (emphasis added). Although the court ultimately held the statement in *Wright* to be voluntary, this was attributed to other factors such as the fact that the defendant "knew that he was in serious trouble . . . [and] had been informed of his constitutional rights by police officers on at least two previous occasions. *Id.*

Here, as previously stated, Appellant was standing in *loco parentis* to the victim. This father-stepdaughter relationship is similar to the one found in *Wright*; therefore, this court should consider this an important factor in determining the voluntariness of Appellant's statements. Furthermore, contrary to *Wright*, Appellant did not know that he was in serious trouble nor had he been informed of his constitutional rights previous to making his statements.

Additionally, Appellant's statements were made under a duty of care owed to his step-daughter – a duty that included a child's right to emotional security. Appellant made repeated attempts to end the conversation as evidenced by the following statements: "I'll call you when I get off . . . I'm at work right now . . . I can't talk about it right now . . . let me call you back . . . let me just [ ] call you

back in [ ] five minutes." (See Appendix 1, pages 3, 4, 5, and 6).  These attempts were thwarted, however, by a manifestation of his duty of care to his stepdaughter as evidenced by the following statements: "what's wrong . . . what do you want me to do . . . what should I do . . . [so] what's your problem now . . . what can I do . . . I'm [here for] your support . . . I'm here for you, whatever you need." (See Appendix 1, pages 3, 4, 7 and 9).

Although Appellant did disconnect from the conversation at one point, this momentary pause in the conversation did not amount to a severance of the communication nor did it show that Appellant's continued participation in the conversation was voluntary because he knew he could hang up the phone.  Instead, this act is similar to a face-to-face conversation in which the parties agree to move from one room to another to achieve greater privacy in their communication. At no time was Appellant able to sever his duty of care to his step-daughter by ending the interrogation.

For these reasons, the statements made by Appellant throughout the course of the interrogation were involuntary; therefore, they are inadmissible under A.R.S. § 13-3988.

## J.  The call violated Appellant's 6th Amendment Rights.

In *Messiah v. United States*, the Supreme Court held that a defendant is entitled to counsel after he has been indicted.  *See Messiah v. United States*, 377

U.S. 201, 206 (1964).   In *Escobedo v. State of Illinois*, the Supreme Court discussed the holding in *Messiah* and built upon its protection by attaching Sixth Amendment rights to a defendant before he was formally indicted.  *See Escobedo v. State of Illinois*, 378 U.S. 478, 485, 84 S. Ct. 1758, 1762, 12 L.Ed.2d 977 (1964).   The reason a right to counsel attached at this early stage is because the "investigation had ceased to be a general investigation of an 'unsolved crime' . . . [instead, the defendant] had become the accused, and the purpose of the interrogation was to 'get him' to confess his guilt despite his constitutional right not to do so."  Id.

In *Maine v. Moulton*, the Supreme Court stated that the "Sixth Amendment guarantees the accused, *at least* after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the state."  *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985) (emphasis added).  In *Moulton*, therefore, the Court held that "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent."  *Id.*

Here, at the time when Detective Contreras used the victim, a state agent, to initiate the interrogation of Appellant, the investigation of the victim's accusations had ceased to be a general investigation of an unsolved crime.  Instead, similar to

*Escobedo*, Appellant had become the accused, and the purpose of the interrogation was to get him to confess his guilt despite his constitutional right not to. During the interrogation, the State obtained statements from Appellant when the State knew Appellant had a right to have counsel act as a buffer between Appellant and the State. For this reason, the confrontation call violated the Sixth Amendment of the United States Constitution.

## K. The call violated Appellant's 5th Amendment Rights.

In *Miranda v. Arizona*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Under normal circumstances, the required safeguards of *Miranda* typically trigger when a defendant is subjected to a custodial interrogation. When looking to the history of the Fifth Amendment, however, an inquiry into whether a defendant is in custody does not dispose of the issue of voluntariness.

For example, in *Bram v. United States*, the Court stated that the Fifth Amendment is triggered when "an accused person [is] asked to explain his apparent connection with a crime under investigation, the ease with which the questions put to him may assume an inquisitorial character, the temptation to press

the witness unduly, to browbeat him if he be timid or reluctant, to push him into a corner, and to entrap him into fatal contradictions, which is so painfully evident in many of the earlier state trials, made the system so odious as to give rise to a demand for its total abolition." *Bram v. United States*, 168 U.S. 532, 542, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).   Therefore, incriminating statements must be voluntarily given to be admissible. *See Miranda* 384 U.S. 436.

Here, Appellant's statements were not voluntary.   Instead, Appellant's statements were made to a State agent who asked him to explain his apparent connection with a crime under investigation.   Further, Appellant stood in *loco parentis* to the victim who acted as a state agent, and the victim used this relationship to coerce a confession.   Appellant's statements were the result of this compulsion to speak, and the Fifth Amendment abolished such coercive police tactics long ago.   For these reasons, the confrontation call violates Appellant's Fifth Amendment rights.

## L.  The call should be suppress for deterrence.

"Suppression of evidence . . . has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006). The exclusionary rule, therefore, is only applied "where its deterrence benefits outweigh its 'substantial social costs.'" Id. (*quoting Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct.

2014, 141 L.Ed.2d 344 (1998)). In applying this rule, "the value of deterrence depends upon the strength of the incentive to commit the forbidden act." *Id.* at 596.

Here, the strength of the incentive for police to conduct a confrontation call with only one party's consent is considerable. Using this investigatory tool, police can bypass the probable cause requirements for obtaining a search warrant and avoid the giving of Miranda warnings to a defendant, and proceed with an unreasonable search and seizure through a carefully planned interrogation outside the presence of defense counsel. This circumvents the court's role in safeguarding fundamental Constitutional protections. The social cost of suppressing this evidence is low because police can obtain this same evidence, with probable cause, by obtaining a search warrant. This court should find, therefore, that the deterrence far outweigh the social costs, and suppression of the evidence is appropriate.

## II. THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR BY SUMMARILY STRIKING THREE HISPANIC JURORS BECAUSE THE JURORS ALLEGEDLY COULD NOT UNDERSTAND THE ENGLISH LANGUAGE SUFFICIENTLY ENOUGH TO SIT AS TRIAL JURORS.

### A. The trial court misapplied A.R.S. Section 21-202B3.

A.R.S Section 202B3 states in pertinent part:

> A. It is the policy of this state that all qualified citizens have an obligation to serve on juries when summoned by the courts of this state, unless excused.

B. On timely application to the court, the following persons shall be excused temporarily from service as a juror if the judge or jury commissioner finds that any of the following applies:

\*\*\*

3. The prospective juror is not currently capable of understanding the English language.

Despite the language of the statute, the trial court made no effort to ascertain if the two jurors indeed did not understand the English language to such a degree that they could not participate in the process.  The court took no action to bring the jurors before the court and to question the prospective jurors individually.  During jury selection, the following conversation took place:

**THE COURT**: The record should show the presence of counsel, the defendant, Appellant. That's you. Good afternoon, Appellant, and this is the time set for trial in the matter of State of Arizona versus Tony Deng, CR 2011-153034. The Court's asked its bailiffs to bring up a jury panel. My bailiff told me that there's about three or four jurors that need to be considered for being excused before even being brought in the courtroom. One has a – she referred to it as a gigantic scooter that's going to have trouble fitting through the door, another lady who is breast feeding and obviously not a situation where she's going to be able to – this came from her, right?

**THE BAILIFF**: Yes.

**THE COURT**: Has asked she be excused and two others are jurors who don't speak English and we don't have interpreter services for jurors.

So if you would give me the juror numbers and tell me who they are.

**THE BAILIFF**: So 40 and 42 are the interpreter jurors. They do not speak English. They only speak Spanish. Juror 48 is the one with the medical scooter and Juror 32 is the breast feeding mom.

**THE COURT**: Have they all asked to be excused?

**THE BAILIFF**: Yes.

**THE COURT**: Any objection?

**MR. POWELL**: No objection. Your Honor.

**MS. DEAN**: No objection.

**THE COURT**: Jurors 40, 42, and 48 and 32 may be excused, and you can go ahead and bring the jury in. Let me know when they are seated and bring me in.

(Trial transcript, dated June 24, 2015, page 3, lines 17-25; page 4, lines 1-8).

(See Appendix #9, transcript of proceedings, dated June 24, 2015)

***

Although both parties did not object to the summary removal of both jurors, the error nevertheless violated Appellant's 14th Amendment Equal Protection Rights and his Sixth Amendment Right to a jury of his peers. Reviewing courts consider alleged trial error under the harmless error standard when a defendant

objects at trial and thereby preserves an issue for appeal. *See State v. Totress*, 107 Ariz. 18, 20,, 480 P.2d 668, 670 (1971).

Fundamental error review, in contrast, applies when a defendant fails to object to alleged trial error.  See State v. Bible, 175 Ariz. 549, 588, 858 P.2d, 1152, 1191 (1993).  Although an initial reaction may be to point out that Appellant's trial counsel did not object at trial and therefore an appellate court must find fundamental error, this is not the case in Appellant's situation.

In *State v. Dalton*, 366 P.3d 133 (2016), the court of appeals found that the trial court committed fundamental error when the trial court did not instruct the jury that it needed to begin its deliberation anew when the court replaced a deliberating juror with an alternate, pursuant to Rule 18.5(h), Arizona Rules of Criminal Procedure.  The court in *Dalton* found that the trial court failed to comply with its obligation under the Rule and reversed the defendant's conviction.  In the instant case, the same holds true for Appellant.  The fact that neither party objected does not relieve the trial court of its duty, pursuant to A.R.S. Section 21-202B, to determine if a juror "currently is not capable of understanding the English language".  The failure of the court amounted to fundamental error.

In *Batson v Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that the use of peremptory challenges to remove potential jurors on the basis of race is unconstitutional under the Equal Protection Clause of the United States

Constitution. The Court outlined a three-pronged test for determining whether illegal discrimination has occurred: (1) the defendant must make a prima facie showing that discrimination based on race has occurred based upon the totality of the circumstances, (2) the prosecution then must provide a race-neutral explanation for its peremptory challenge or challenges, and (3) the district court must determine whether the defendant in fact demonstrated purposeful discrimination.

Appellant is cognizant that in *State v. Cota*, 229 Ariz. 136, 272 P.3d 1027 (2012), the Arizona Supreme Court denied a challenge to A.R.S. Section 21-202B3. However, the circumstances of *Cota* were quite different. In *Cota*, the defendant moved to preclude the jury commissioner from excluding non-English speakers from the master jury list. In *Cota*, the defendant filed a pre-emptive motion and no evidence was presented that any non-English speakers were ever precluded from service. In the instant case, Appellant had two prospective jurors summarily rejected with no inquiry as to whether they were "not currently capable of understanding" the English language sufficiently enough to serve as jurors. A.R.S. Section 21-202B3 contemplates that a court conduct an inquiry before dismissing a juror.

Courts in Arizona routinely take a considerable amount of time to ascertain if a juror needs to be excused due to hardship. *See* A.R.S. Section 21-202B4. Jurors are not let go merely because they tell the bailiff or the court that they

cannot miss work.  The Arizona court system would not function if judges did not question the prospective juror on the issue of hardship.  Therefore, why is a judge so quick to dismiss two members of a minority group merely because the bailiff reports the two state they allegedly cannot speak English?

In *Diomampo v. State of Nevada*, 124 Nev. 414, 185 P.3d 1031 (2008), the Nevada Supreme Court was asked to decide a similar issue.  In *Diomampo*, the defendant challenged the peremptory strike of the prosecutor of a Hispanic.  The prosecutor offered the excuse that he thought the juror, Mr. Ramirez, had a language barrier.  In *Diomampo*, the trial court did quiz Mr. Ramirez to some length.  The court found that Mr. Ramirez seemed to understand English sufficiently and that the prosecutor's strike violated *Batson*.  The court stated:

> In addition, neither the prosecution nor the defense asked Ramirez about his ability, or inability, to speak or comprehend English. Accordingly, the peremptory strike against Ramirez could not have been justified because the State could not have plausibly concluded, based on the exchange at the jury venire, that his understanding of English was not sufficient for him to sit as a juror in the case. *124 Nev. at 1038.*

The Nevada supreme court correctly found that Mr. Ramirez spoke enough English and should not have been struck.  In Appellant's case, no inquiry was made by the court.  Therefore, how could the court ascertain that jurors #40 and #42 should have been struck?  The answer is that the trial court erred in summarily

striking the jurors without any information or corroboration that the jurors were not

qualified. The fact that neither party objected is irrelevant to the court's duty,

pursuant to the language of A.R.S. Section 21-202B, which requires that the judge

first ascertain if a prospective juror is not currently capable of understanding the

English language. Not only did the court commit error with respect to jurors #40

and #42, but the court also committed error in striking juror #81. Despite the fact

that juror #81 was answering the court's question in a normal manner, the court did

not quiz juror #81 for any length before summarily dismissing juror #81. The

following limited questioning took place:

> **THE COURT**: I want to start off by asking are
> there any of you who have any hearing problems that
> would interfere with your ability to hear witness
> testimony or the lawyers' questions? I can tell you it
> would probably be at the volume that this courtroom is at
> right now. So is there anybody that has any difficulty
> hearing me? I don't see any response. I assume that you
> don't. Also is there anybody that has any difficulty in
> understanding the English language? Juror number 89, do
> you have trouble speaking English?
>
> **THE PROSPECTIVE JUROR**: Yes.
>
> **THE COURT**: Do you have trouble understanding
> English?
>
> **THE PROSPECTIVE JUROR**: Yes.
>
> **THE COURT**:  Juror 18. 81.
>
> **THE PROSPECTIVE JUROR**: I don't understand very
> well English. I can speak and I understand a little bit.

> **THE COURT**: I understand. Any objection by counsel to excuse these jurors?
>
> **MR. POWELL**: No, Judge.
>
> **MS. DEAN**: No, Your Honor.

(Trial transcript dated July 25, 2015, page 10, lines 12-25;  page 11, lines 1-2). (Appendix #10).

***

Juror #81 understood the questions put to him by the court.  There was no basis to strike the juror.  This questioning is very similar to the questioning that took place in *Diomampo*:

> **THE COURT**: … What kind of work do you do for them?
>
> **POTENTIAL JUROR RAMIREZ**: Excuse me?
>
> **THE COURT**: What kind of work do you do for them?
>
> **POTENTIAL JUROR RAMIREZ**: Oh-
>
> **THE COURT**: Construction?
>
> **POTENTIAL JUROR RAMIREZ**: -I am a finisher [unintelligible].
>
> **THE COURT**: I'm sorry?
>
> **POTENTIAL JUROR RAMIREZ**: I'm a finisher [unintelligible].

**THE COURT**: Okay.

**COURT REPORTER**: You need to speak up.

**THE COURT**: And do you have a wife or significant other who works?

**POTENTIAL JUROR RAMIREZ**: Yeah. My wife lives in Mexico.

**THE COURT**: Okay.

**POTENTIAL JUROR RAMIREZ**: She's coming pretty soon.

**THE COURT**: Okay. Any kids that work?

**POTENTIAL JUROR RAMIREZ**: No. Don't work.

**THE COURT**: All right. If you would hand [the microphone] to Ms. Ainsworth.

The court in *Diomampo* found that Mr. Ramirez should not have been removed. Like *Diomampo*, juror #81 should not have been removed. The court committed fundamental error.

**B. The summary striking of Hispanic jurors by the court violated Article 2, section 13 of the Arizona Constitution.**

Article 2, Section 13, of the Arizona Constitution provides, *"No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."*

Although the trial court relied on A.R.S. Section 21-202B3 to support its summary rejection of two Hispanic jurors, Arizona's Constitution affords greater rights and precludes the wholesale application of A.R.S. 21-202B3 to prevent a class, such as non-English speaking Hispanics, from participating in the jury process as citizens of the United States.

The great State of New Mexico has recognized a true fact of life, that is, a great proportion of its population is Hispanic and cannot adequately speak English to serve as trial jurors without the aide of an interpreter. New Mexico has specifically amended its Constitution which prevents preclusion of any juror based on the inability to speak English. The New Mexico Constitution, provides in pertinent part, that "the right of any citizen of the state to vote, hold office or sit upon juries, shall never be constricted, abridged or impaired on account of religion, race, language, color, or inability to speak, read or write the English or Spanish languages". N.M. Const. art. VII, Section 3.

According to 2014 Census Bureau statistics for New Mexico, Hispanics or Latinos comprise 47.7% of the population. White alone, not Hispanic or Latino, comprise 38.9% of the population. According to 2011 Pew Research Center Language information for New Mexico, the percentage of home language, for persons 5 and above, who only Speak English, is 39%, or 348,000 persons in 2011.

However, 61%, or 538,000 people in New Mexico in 2011 speak another language, other than English only.

Arizona also has a high percentage of Spanish Speakers. According to 2014 Census Bureau statistics for **Arizona**, Hispanics or Latinos comprise 30.5% of the population. White alone, not Hispanic or Latino, comprise 56.2% of the population. According to 2011 Pew Research Center Language information for **Arizona**, the percentage of home language, for persons 5 and above, who only Speak English, is 33%, or 577,000 persons in 2011. However, 67%, or 1,171,000 people in **Arizona** in 2011 speak another language, other than English only. According to 2014 Census Bureau statistics for **Maricopa County**, Hispanics or Latinos comprise 30.3% of the population. White alone, not Hispanic or Latino, comprise 57% of the population.

Having recognized the real world realities, the New Mexico Supreme Court stated:

> This Court has recognized more than once that Article VII, Section 3 unambiguously protects the rights of non-English speakers to serve on our state juries. See State v. Rico, 2002-NMSC-022, ¶ 5, 132 N.M. 570, 52 P.3d 942; see also Pacheco, 2007-NMSC-009, ¶ 13 (interpreting Article VII, Section 3 as applying to jury deliberations as well as to trials). This unique right has been a part of our judicial history since our territorial days. See Territory v. Romine, 1881-NMSC-010, ¶¶ 11, 14, 2 N.M. 114 (addressing an 1859 statute that lacked any language requirement for jury service and noting that "[a]part

from the impracticability of obtaining English-speaking juries, it would have been manifestly unjust to the great majority of the people of the territory, had such a requirement as to language been made"). Today, the right is enshrined in our state Constitution as one of the few provisions that can be amended only by a supermajority of both legislators and voters. (Citations omitted). *New Mexico v. Michael Anthony Zamora*, Docket no. 32,597, Decided August 12,2013.

New Mexico's Constitution takes to heart the decision in *Taylor v. Louisiana*, 419 U.S. 522 (1975). Our United State Supreme Court struck down an antiquated Louisiana State law that precluded women from serving as jurors. In *Taylor*, the Court held that the Appellant did have standing to object to make his constitutional claim and that there was no rule that such a claim may be asserted only by defendants who are members of the group excluded from jury service. *Id.*

The Court further noted:

Accepting as we do, however, the view that the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community, we think it is no longer tenable to hold that women as a class may be excluded or given automatic exemptions based solely on sex if the consequence is that criminal jury venires are almost totally male. To this extent we cannot follow the contrary implications of the prior cases, including *Hoyt* v. *Florida.* If it was ever the case that women were unqualified to sit on juries or were so situated that none of them should be required to perform jury service, that time has long since passed. If at one

time it could be held that Sixth Amendment juries must be drawn from a fair cross section of the community but that this requirement permitted the almost total exclusion of women, this is not the case today. **Communities differ at different times and places. What is a fair cross section at one time or place is not necessarily a fair cross section at another time or a different place. Nothing persuasive has been presented to us in this case suggesting that all-male venires in the parishes involved here are fairly representative of the local population otherwise eligible for jury service.** (Emphasis supplied). *Id.* at 532.

The concept of how race should be defined was not addressed in *Taylor*. However, in *Hernandez v. New York*, 500 U.S. 352 (1991), our United States Supreme Court held that the prosecutor offered race-neutral explanations for striking two Spanish speaking, bi-lingual jurors, by stating he doubted their ability to defer to the official translation of anticipated Spanish language testimony. The Court in Hernandez did discuss the situation where in certain communities, and certain ethnic groups, that proficiency in a particular language may be treated as a surrogate for race under an Equal Protection analysis. The Court said:

> In holding that a race-neutral reason for a peremptory challenge means a reason other than race, we do not resolve the more difficult question of the breadth with which the concept of race should be defined for equal protection purposes. We would face a quite different case if the prosecutor had justified his peremptory challenges with the explanation that he did not want Spanish-speaking jurors. It may well be, for certain ethnic groups and in some communities, that proficiency in a particular

language, like skin color, should be treated as a surrogate for race under an equal protection analysis. *Cf. Yu Cong Eng v. Trinidad,* 271 U. S. 500 (1926) (law prohibiting keeping business records in other than specified languages violated equal protection rights of Chinese businessmen); *Meyer v. Nebraska, supra,* (striking down law prohibiting grade schools from teaching language other than English). **And, as we make clear, a policy of striking all who speak a given language, without regard to the particular circumstances of the trial or the individual responses of the jurors, may be found by the trial judge to be a pretext for racial discrimination. But that case is not before us.** (Emphasis supplied). *Id.* at 371.

Arizona, like New Mexico, has a very large population of non-English, but Spanish speaking citizens. Although Arizona's Constitution does not provide for protections as specific as New Mexico's Constitution; nevertheless, Arizona's Constitution does provide protection against the discrimination of a "class of citizens". Spanish speaking citizens should be protected and not summarily dismissed unless the court can demonstrate, through questioning, that a particular juror is not fit to serve or does not understand the English language sufficiently to participate in the jury process. Otherwise, Spanish speaking citizens Arizona, will be relegated to a status of second class citizens. At one time in our history, women were excluded from service. Now women are correctly included. It is now time to also include a huge section of Arizona's population and allow Spanish speaking

jurors the right to participate in the jury process.  Not doing so violates, not only

Arizona's Constitution, but the Constitution of the Untied States.

## III. CONCLUSION

Based on the foregoing, Appellant, Tony Deng, respectfully requests that this court:

I.     Vacate Appellant's conviction.

II.    Remand the case back to the trial with instructions to enter an Order

       granting Appellant's motion to suppress evidence.

III.   Remand the case back to the trial court with instructions to not strike a

       juror based solely on the fact that the juror is Hispanic and cannot

       speak English.


RESPECTFULLY SUBMITTED this 31st day of May, 2016.

                          Robert J. Campos
                          Robert J. Campos & Associates, P.L.C.

                          By: /s/ Robert J. Campos
                          Robert J. Campos
                          Attorney for Defendant

40

# CERTIFICATE OF RULE 31.13(b) COMPLIANCE

The brief is double-spaced, uses a 14-point Times New Roman proportionately-spaced typeface, and contains 7,874 words, according to the processing system used to prepare the brief.

RESPECTFULLY SUBMITTED this 31st day of May, 2016.

Robert J. Campos
Robert J. Campos & Associates, P.L.C.

By: /s/ Robert J. Campos
Robert J. Campos
Attorney for Defendant

## CERTIFICATE OF SERVICE

**TWO COPIES** of Appellant's Opening Brief mailed this 31st day of May, 2016, to Mr. Joseph T. Maziarz, Office of the Attorney General of Arizona, 1275 West Washington, Phoenix, Arizona 85007.

**ONE COPY** of Appellant's Opening Brief mailed this 31st day of May, 2016, to Mr. Tony Deng – ADC #304373, Arizona State Prison Complex – Eyman, P.O. Box 4000, Florence, Arizona 85132.

RESPECTFULLY SUBMITTED this 31st day of May, 2016.

Robert J. Campos
Robert J. Campos & Associates, P.L.C.

By: /s/ Robert J. Campos
Robert J. Campos
Attorney for Defendant

42

Exhibit   Two

1

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9  Tony Deng,                                    **NO. CV-20-01990-PHX-SPL (JFM)**

10             Petitioner,

11  v.                                           **JUDGMENT IN A CIVIL CASE**

12  State of Arizona, et al.,

13             Respondent.

14

15     **Decision by Court.**  This action came for consideration before the Court.  The

16  issues have been considered and a decision has been rendered.

17     IT IS ORDERED AND ADJUDGED that pursuant to the Court's Order filed

18  November 4, 2020, Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U. S.

19  C. § 2254 (Titled: Motion to Stop the Running Limitation Period for Submitting a

20  Petition for Writ of Habeas Corpus) is denied.  Petitioner to take nothing and this action

21  is hereby dismissed without prejudice.

22                                    Debra D. Lucas
                                      District Court Executive/Clerk of Court
23

24  November 4, 2020

25                                        s/ Rebecca Kobza
                                  By    Deputy Clerk
26

27

28

KM

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tony Deng, | No.  CV 20-01990-PHX-SPL (JFM) |
| Petitioner, | |
| v. | **ORDER** |
| State of Arizona, | |
| Respondent. | |

Petitioner Tony Deng, who is confined in the Arizona State Prison Complex-Eyman, has filed a "Motion to Stop the Running Limitation Period for Submitting a Petition for Writ of Habeas Corpus" (Doc. 1).  The Court will dismiss without prejudice the Motion and this case.

In his Motion, Petitioner asks the Court to toll the statute of limitations for filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is essentially seeking an advisory opinion from this Court regarding the application of the time limits imposed by 28 U.S.C. § 2244(d)(1), which provides in part that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  However, a federal court may not issue advisory opinions. *See United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (district court erred in tolling statute of limitations as to future claims by persons not party to the case before the court).  The Court will therefore deny Petitioner's Motion and dismiss this case.

. . . .

1   Petitioner may file a § 2254 petition in a *new* case.  Any future petition filed by
2   Petitioner should: (1) name Petitioner's current custodian as a respondent, (2) show how
3   Petitioner is being held in custody in violation of the Constitution, laws, or treaties of the
4   United States, (3) specify all the exhausted grounds for relief available to Petitioner, (4) set
5   forth in summary form the facts supporting each of his grounds, and (5) provide
6   information as to how Petitioner has first exhausted his state court remedies as to each
7   ground on which he requests action by this Court.

8   Petitioner must use the court-approved form for each ground in the petition.  *See*
9   Local Rule of Civil Procedure 3.5(a) (habeas petitioners must use the court-approved form
10  when filing a *pro se* petition pursuant to 28 U.S.C. § 2254).  Petitioner must also pay the
11  $5.00 filing fee or file an Application to Proceed In Forma Pauperis.  *See* Local Rule of
12  Civil Procedure 3.5(b).

13  In the event that the respondent in any future habeas action filed by Petitioner raises
14  the one-year period of limitation in 28 U.S.C. § 2244(d) as an affirmative defense,
15  Petitioner will be free to argue that his petition is subject to tolling under § 2244(d)(2),[1] or
16  equitable tolling.  *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (Section
17  2244(d) is subject to equitable tolling based on a showing of "exceptional circumstances"
18  beyond the prisoner's control).

19  **IT IS ORDERED:**

20  (1)   Petitioner's "Motion to Stop the Running Limitation Period for Submitting a
21  Petition for Writ of Habeas Corpus" (Doc. 1) is **denied** and this action is **dismissed**
22  **without prejudice**; the Clerk of Court must enter judgment accordingly.

23  . . . .

24  . . . .

25  . . . .

26  ———————————

27  [1] Section 2244(d)(2), 28 U.S.C. provides "[t]he time during which a properly filed
    application for State post-conviction or other collateral review with respect to the pertinent
28  judgment or claim is pending shall not be counted toward any period of limitation under
    this subsection."

1       (2)    The Clerk of Court must provide Petitioner with the current court-approved

2   forms for filing a "Petition for Writ of Habeas Corpus by a Person in State Custody

3   Pursuant to 28 U.S.C. § 2254 (Non-Death Penalty)" and an "Application to Proceed In

4   Forma Pauperis by a Prisoner (Habeas)."

5       Dated this 4th day of November, 2020.

Honorable Steven P. Logan
United States District Judge

Exhibit Three

No. 1 CA-CR 15-0638
ARIZONA COURT OF APPEALS DIVISION ONE

# State v. Deng

Decided Feb 9, 2017

No. 1 CA-CR 15-0638

02-09-2017

STATE OF ARIZONA, Appellee, v. TONY DENG, Appellant.

COUNSEL Arizona Attorney General's Office, Phoenix By Linley Wilson Counsel for Appellee Robert J. Campos & Associates, PLC, Phoenix By Robert J. Campos Counsel for Appellant

---

BROWN, Chief Judge

NOTICE: NOT FOR OFFICIAL PUBLICATION. UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE. Appeal from the Superior Court in Maricopa County
No. CR2011-153034-001
The Honorable Hugh Hegyi, Judge
The Honorable Stephen A. Gerst, Judge, *Retired*

## AFFIRMED

COUNSEL Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee* Robert J. Campos & Associates, PLC, Phoenix
By Robert J. Campos
2  *Counsel for Appellant* \*2

## MEMORANDUM DECISION

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.[1] **BROWN, Chief Judge:**

> [1] The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶1 Tony Deng appeals from his convictions and sentences for ten counts of sexual conduct with a minor under the age of fifteen and one count of sexual abuse against a minor under the age of fifteen. He argues the trial court erred in denying his motion to suppress and excusing potential jurors who did not understand English. Finding no reversible error, we affirm.

## BACKGROUND [2]



2   Because no evidentiary hearing was held on Deng's motion to suppress, the factual recitation pertaining to that motion
    is based on the factual assertions made in the motion and the State's response that appear to be incontrovertible, as well
    as the transcript of the confrontation call. Although the parties refer to trial testimony in arguing the point on appeal, we
    do not consider that evidence because it was not before the court when it ruled on the suppression motion. *See State v.
    Spears*, 184 Ariz. 277, 284 (1996) ("In reviewing the denial of a motion to suppress, this court looks only at the
    evidence presented to the trial court during the suppression hearing.").

¶2 Deng's step-daughter ("the victim"), then 16 years old, initiated several recorded confrontation telephone calls with Deng. He answered the calls while at work. The victim asked to speak to him about "some things" and he indicated that was "alright," but then asked her to call him back in twenty minutes. The victim promptly called Deng again and Deng answered the phone. The victim indicated she needed to talk and proceeded to ask Deng questions about their past sexual encounters. Deng asked if he could call her back. She insisted, however, on speaking right away and Deng told her to "call back in about five minutes," and he hung *3 up the phone. The third time the victim initiated a call, Deng asked, "Nobody around you, right . . . cuz I had, there's somebody else around me, that's why I [couldn't] talk." The victim indicated she was alone and then continued to question Deng about their past sexual encounters. Deng admitted to penetrating her vagina with his penis, performing and receiving acts of oral sexual contact, and using a sex toy with her. Deng was subsequently arrested and charged with ten counts of sexual conduct with a minor and one count of sexual abuse.

¶3 Deng moved to suppress the confrontation call, asserting it was involuntary and unconstitutional. At the conclusion of oral argument, the trial court denied the motion, noting it had listened to the recording of the call and did not find the "victim's statements to the defendant or requests of the defendant overbore [Deng's] will." The court noted that Deng "could [have,] and in fact did on one occasion[,] hang the phone up." The court further found that Deng spoke with the victim willingly and her "trickery at the behest of the State" did not amount to coercion. Deng filed a motion to reconsider, alleging "new identified violations of law." The court denied the motion.

¶4 At the subsequent jury trial, before bringing the jury venire into the courtroom, the bailiff informed the court that some potential jurors asked to be excused, including two "who don't speak English and we don't have interpreter services for jurors." The court confirmed that each of the jurors had asked to be excused and then asked counsel if there were any objections to excusing the potential jurors. Counsel for both parties answered "no objection" and the court excused the jurors. During the second day of jury selection, two more jurors indicated they had difficulty speaking and understanding English. The court asked if there was any objection by counsel to excusing the potential jurors. Counsel for both parties answered "no" and both jurors were excused.

¶5 The jury found Deng guilty as charged and the court sentenced him to consecutive prison terms of life with the possibility of release for thirty-five years on the first two counts of sexual conduct with a minor, twenty years on each of the remaining eight counts of sexual conduct with a minor, and five years on the sexual abuse count. This timely appeal followed. *4

## DISCUSSION

### A. Confrontation Call

¶6 Deng argues the trial court abused its discretion in denying his motion to suppress the confrontation call because: (1) the victim was acting as a state agent when she made the call; (2) Deng had a heightened expectation of privacy in the phone call based on his "unique relationship" with the victim, thus implicating a

violation of the Fourth Amendment; (3) Deng's statements were not voluntary and are protected by Arizona Revised Statutes ("A.R.S.") section 13-3988; and (4) the call violated the Fifth Amendment and Sixth Amendment.

¶7 We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, but review the court's legal conclusions de novo, including whether there were constitutional violations. *State v. Peterson*, 228 Ariz. 405, 407-08, ¶ 6 (App. 2011) (citations omitted). If the court's ruling was legally correct for any reason, we are obliged to affirm the ruling. *State v. Perez*, 141 Ariz. 459, 464 (1984).

## 1. Voluntariness

¶8 Deng argues the confrontation call was not voluntary because the victim used psychological pressure at the behest of the police to overcome his will and illicit incriminating statements relevant to her allegations of sexual assault. He further maintains that because a police officer suggested and arranged the confrontation call in an attempt to illicit an incriminating response, the victim was acting as a state agent.

¶9 "Monitoring and recording of a telephone conversation with the consent of one party . . . is authorized by statute in Arizona." *State v. Allgood*, 171 Ariz. 522, 523-24 (App. 1992); *see* A.R.S. § 13-3012(9). Nevertheless, "[t]o be admissible, [Deng's] statement must be voluntary, not obtained by coercion or improper inducement." *State v. Ellison*, 213 Ariz. 116, 127, ¶ 30 (2006); A.R.S. § 13-3988. The State has the burden of proving, by a preponderance of the evidence, that a statement was voluntary. *State v. Amaya-Ruiz*, 166 Ariz. 152, 164 (1990). A statement was involuntarily made if there was (1) "coercive police behavior" and (2) "a causal relation between the coercive behavior and defendant's overborne will." *State v. Boggs*, 218 Ariz. 325, 335-36, ¶ 44 (2008). In evaluating voluntariness, "the trial court must look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant [was] overborne." *State v. Lopez*, 174 Ariz. 131, 137 (1992). 5

¶10 The trial court did not err in determining that Deng's admissions to the victim were voluntary. The court listened to the recorded phone call and was able to evaluate the tone and nuances of the conversation. The court properly considered the totality of the circumstances and found Deng's statements to the victim during the recorded phone call were voluntary, pointing to the instances during the call when he could have, and twice did, end the conversation. The court also concluded that the victim "engaged in trickery at the behest of the State apparently, but that does not amount to coercion."[3] Likewise, the court properly could conclude the demands of the victim, including her expressed urgency to speak to Deng about past sexual abuse, did not exert upon him such pressure as to render his statements to her involuntary. *See State v. Keller*, 114 Ariz. 572, 573 (1977) (finding that the victim's demands for the return of her property, including a threat to call police, did not exert such pressure to render defendant's statements involuntary). Nor are we persuaded by Deng's argument that his "unique relationship" to the victim, standing *in loco parentis* to the victim, rendered his statements involuntary. *See State v. Wright*, 161 Ariz. 394, 398 (App. 1989) (holding that the mere fact that the police officer who questioned the defendant was his father was not enough to render the confession involuntary).

[3] Because there was no evidentiary hearing requested or held on the motion to suppress, the source for the observation that any "trickery" in the call was "at the behest of the State" is unclear on appeal.

## 2. Constitutional and Statutory Violations

¶11 Deng asserts that the confrontation call violated the Fourth Amendment, asserting he had a "strong[] and legitimate expectation of privacy" in the confrontation phone call with the victim because he stood *in loco parentis* and because he took steps to protect his privacy. It is well established that obtaining statements

through a confrontation call does not violate the Fourth Amendment. *See Allgood*, 171 Ariz. at 524 (holding that a confrontation call arranged by police between minor victim and stepfather designed to elicit admissions corroborating accusations of sexual assault comported with state statute and state constitution); *see also State v. Stanley*, 123 Ariz. 95, 102 (App. 1979) ("Under the Fourth Amendment, there is no invasion of privacy in monitoring, recording and introducing into evidence a telephone conversation where one party has given prior consent to the interception.").

¶12 Nor do Deng's Fifth Amendment claims that his statements "were the result of [a] compulsion to speak," at the behest of victim—a state *6 agent—alter the result. Assuming, *arguendo*, that the victim was a state agent, Deng was not entitled to *Miranda* warnings because during the phone call he was not in custody or otherwise deprived of his freedom of action. *See Keller*, 114 Ariz. at 573 ("The United States Supreme Court has made it clear that [*Miranda*] applies only to questioning initiated by law enforcement officers [a]fter a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.") (internal quotation and citation omitted). Here, the incriminating statements were given during a phone call while Deng was at work. Likewise, because Deng was not under arrest or detained at the time of the phone call, his reliance on A.R.S. § 13-3988 is misplaced.[4]

> [4] Before a confession is received in evidence, "the trial judge shall . . . determine any issue as to voluntariness." A.R.S § 13-3988. Subsection (C) clarifies that
>
> > [n]othing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

¶13 Deng also contends his Sixth Amendment rights were violated because as soon as he became "the accused," he "had a right to have counsel act as a buffer between [himself] and the State." However, and again assuming *arguendo* the victim was a state agent, Deng was not arrested or charged with a crime until after the phone call, meaning his Sixth Amendment right to counsel had not yet attached. *See State v. Fulminante*, 161 Ariz. 237, 246 (1988) ("The sixth amendment does not attach during pre-indictment questioning.").[5] *7

> [5] Based on the narrow record before us, we find that the confrontation call was intercepted and recorded pursuant to the victim's prior consent, comported with A.R.S. § 13-3012(9), and did not violate the state or federal constitution. *See Allgood*, 171 Ariz. at 524; *see also Stanley*, 123 Ariz. at 102. Thus, we reject Deng's assertion that the confrontation call was inadmissible for "deterrence" reasons. --------

## B. Excusing Jurors

¶14 Deng argues the trial court erred when it excluded non-English speaking jurors before determining whether the jurors could actually understand English. Because Deng failed to raise this argument in the trial court, we review only for fundamental error resulting in prejudice. *State v. Henderson*, 210 Ariz. 561, 568, ¶¶ 23-24 (2005).

¶15 By statute, "on timely application" a judge or commissioner shall "temporarily excuse from service as a juror" persons who are "not currently capable of understanding the English language." A.R.S. § 21-202(B)(3); *see also State v. Cota*, 229 Ariz. 136, 142, ¶ 15 (2012) (rejecting constitutional challenge to A.R.S. § 21-202(B)(3)). Here, the trial court was informed that four non-English speaking potential jurors had asked to be excused because they did not understand English. Neither party objected to excusing the potential jurors; in fact,

State v. Deng    No. 1 CA-CR 15-0638 (Ariz. Ct. App. Feb. 9, 2017)

counsel for both parties acquiesced in the court's suggestion that they be excused. And Deng does not challenge the factual basis for excusing the potential jurors. Accordingly, given A.R.S. § 21-202(B)(3), Deng has shown no error in excusing the four non-English speaking potential jurors.

## CONCLUSION

¶16 For the foregoing reasons, we affirm Deng's convictions and sentences.

*Id.*

casetext

Exhibit Four

Kamille Dean #024288
LAW OFFICES OF KAMILLE DEAN, P.L.C.
323 W. Roosevelt St., Ste. 100
Phoenix, AZ 85003
Office No. (602) 252-5601
Cell No. (602)516-5909
Fax No. (602) 916-1982
kamille@kamilledean.com
*Attorney for Defendant*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, | ) Case No. CR2011-153034-001DT |
| Plaintiff, | ) |
| vs. | ) **MOTION TO SUPPRESS** |
| | ) **CONFRONTATION CALL (BASED ON** |
| | ) **NEW IDENTIFIED VIOLATIONS OF LAW** |
| | ) **AND MOTION TO RECONSIDER** |
| TONY DENG, | ) **PREVIOUSLY ARGUED REASONS)** |
| Defendant. | ) *(Honorable Heygi)* |
| | ) *(Oral Argument Requested)* |
| | ) |

COMES NOW Defendant, TONY DENG ("Mr. Deng"), by and through

counsel, respectfully requests this Court suppress the confrontation call in this case based

on newly identified violations of law, and reconsider Mr. Deng's Motion to Suppress

based on newly identified factors and circumstances.  The accompanying Memorandum

of Points and Authorities support this Motion and is herein incorporated by and through

for reference.

RESPECTFULLY SUBMITTED this 12th day of December, 2014.

/s/ Kamille Dean
Attorney for Defendant

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

Mr. Deng is charged with 10 counts of Sexual Conduct with a Minor, class 2 felonies and one count of Sexual Abuse, a class 3 felony. The alleged victim of all alleged charges is Marissa Mandigo, Mr. Deng's former stepdaughter.  On October 12, 2011, Jennifer Deng brought her daughter Marissa Mandigo, who was a minor at that time, to the Child Help Children's Center located at 2346 North Central Avenue, under the direction of the Phoenix Police Department, to conduct a confrontation call to Mr. Deng. The police recorded and monitored the call at the same time.  It is unknown who provided the Phoenix Police Department and the Child Help Center with consent to conduct the recording on Marissa's behalf, because it was not documented on any written record. Detective Jennifer Contreras assisted Marissa in conducting the call on Marissa's cellphone, which Mr. Deng personally paid for.  Marissa initiated the call and told Mr. Deng that she wanted to talk about her boyfriend because she was having a problem with him. Mr. Deng said he could not talk because he was busy working and to call him back in 15-20 minutes. She called again 5 minutes later and pleaded with Mr. Deng to talk to her immediately.

The officers intended to arrest Mr. Deng based on Marissa's allegations, but waited until after the confrontation call was conducted in to circumvent Mr. Deng's fundamental rights. Immediately upon conclusion of the call, Detective Contreras told Officer Norman to arrest Mr. Deng.  Officers instructed Marissa call Mr. Deng one more

time to ask that he pick her up because she had a fight with her mother.  When Mr. Deng left his residence, he was stopped by officers a short distance from his home and arrested.

The State has absolutely no physical evidence to corroborate the victim's statements and Mr. Deng adamantly denied any of the allegations were true post-Miranda at the police station.  **At most**, the State is relying on Mr. Deng's statements made during the confrontation call, a deceptive police tactic that should be unlawful because it violates numerous fundamental rights and should be declared unconstitutional.

## II. LAW AND ARGUMENT

### A. THE INTERCEPTION AND RECORDING OF THE TELEPHONE CONVERSATION VIOLATED MR. DENG'S FUNDAMENTAL RIGHTS.

The surreptitiously recorded telephone conversations between Mr. Deng and Marissa Mandigo violated Mr. Deng's fundamental rights to due process, privacy, to be free of unreasonable searches; to be free from self-incrimination; and to counsel.  In order to protect these Constitutional rights, many jurisdictions in this Country prohibit the surreptitious recording of telephone conversations. *See Cal. Penal Code* §§ 631, 632; *Conn. Gen. Stat.* § 52-570d; *Fla. Stat. Ann.* § 934.03; *Ill. Rev. Stat.* ch.720, para. 5/14-1 to 5/14-6; *Md. Code Ann.*, Cts. & Jud. Proc. § 10-402; *Mass. Ann. Laws* ch. 272, § 99; *Mich. Comp. Laws* § 750.539c; *Mont. Code Ann.* § 45-8-213; *Nev. Rev. Stat. Ann.* § 200.620, as interpreted in *Lane v. Allstate Ins. Co.,* 969 P.2d 938 (Nev. 1998) (holding that Nevada wiretap statute requires all-party consent); *N.H. Rev. Stat. Ann.* § 570-A:2; 18 *Pa. Cons. Stat. Ann.* §§ 5703, 5704; *Wash. Rev. Code* § 9.73.030.

As outlined below, Mr. Deng's protected rights were abridged by the

unconstitutional conduct of the Phoenix Police Department and their agent, Marissa Mandigo.

### 1. The Confrontation Call in this Case is a Warrantless State Action in Violation of the Due Process Clause of the Fourteenth Amendment.

The Fourteenth Amendment prohibits states from denying federal constitutional rights and guarantees due process. The Due Process Clause prohibits state and local government officials from depriving persons of life, liberty, or property without legislative authorization. This clause has also been used by the federal judiciary to make most of the Bill of Rights applicable to the states, as well as to recognize substantive and procedural requirements that state laws must satisfy. The Fourteenth Amendment applies to acts of the state, not to acts of a private person or entities.

In *United States v. Davis*, the court held that the "government may not encourage conduct by private person that the government itself may not do." 482 F.2d 893, 904 (9th Cir. 1973). A state may not deliberately delegate a task to a private entity in order to avoid its constitutional obligations. *Terry v. Adams*, 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953). A state's decision to delegate a duty to a private entity must be carefully examined when it has acted, not necessarily always in bad faith, but for reasons of convenience because the doctrinal basis for the state action requirement is that exercises of state authority pose a special threat to constitutional values. A private entity vested with state authority poses that threat just as clearly as a state agency. *Rendell-Baker v. Kohn*, 457 U.S 830 (1982).

The United States Supreme Court has articulated four tests for determining

whether a private individual's action amounts to state action. *See Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997); *Franklin v. Fox*, 3212 F.3d 423, 444-5 (9th Cir. 2002). These tests include the 1) public function test; 2) joint action test; 3) state compulsion test; and 4) governmental nexus test. The public function test states that if the private actor is functioning as the government, the private actor becomes the state for purposes of state action. *See Terry v. Adams*, 345 U.S. 461, 469-70, 73 S.Ct. 809, 813-14 (1953). The joint action test focuses on whether the State has so far insinuated into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity and therefore subject to the scope of the Fourteenth Amendment. *See Burton v. Willmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862 (1961). The conduct in this case falls within both of the aforementioned tests which amount to state action, because Marissa was an agent when she made the confrontation call to Mr. Deng.

"Because of the fact that he was not in State custody, his right . . . he doesn't have a right no to talk to a state agent at that point." This is a verbatim statement made by the State during a previous oral argument, acknowledging that the caller was a State agent. (See Transcript, page 60, line 15). In addition, the judge also confirmed that the victim/caller was engaging in trickery at the behest of the State, which makes her the State's agent. (See Transcript, page 66, line 17).

In this case, the officers conducted systematic questioning through an agent of the state and Marissa, with the intent and expectation of eliciting certain statements from Mr. Deng. This recording was done using the effort of a minor who cannot give consent and

without either a warrant or an exemption listed in A.R.S. § 13-3012. This process caused the State to be so far insinuated into a position of interdependence with Marissa that it must be recognized as a joint participant.   Furthermore, the questions posed by and through the agent, during the confrontational call, were functionally equivalent to a police interrogation. Marissa did not act on her own prerogative in conducting the phone call. Instead, she was functioning as the State and under the State's direction, which made her a state agent.   If this state action rests solely on the vicarious consent provided by Jennifer on behalf of Marissa, Jennifer's consent was provided *after* she agreed to become an agent of the State, causing the State to improperly circumvent Mr. Deng's right to due process of law.   The joint action test asks, "Whether State officials and private parties have acted in concert in effecting a particular deprivation of Constitutional rights." *Franklin,* 312 F. 3d at 455 (9th Cir. 2002).   This requirement can be satisfied either "by proving the existence of a conspiracy, or by showing that the private party was a willful participant in joint action with the State or its agent." *Id.* at 444-45.  In this case, Jennifer's consent proves that she and Marissa were willful participants in this joint action with the State.

At all times when Marissa was speaking to Mr. Deng and the conversation was being recorded, Marissa was acting as an agent of the State. The statements Marissa made and questions Marissa asked were at the direction of the police officers. Because Marissa was an agent, the absence of a warrant or subpoena made the conduct of the officers unlawful. It is obvious that Marissa was functioning as the State and under the State's direction during the confrontation call, and these activities must be recognized as state

action.

Further, the very nature of the "confrontation call" is unconstitutional. A confrontational call is a deceptive interrogation tactic that is designed to elicit self-incriminating statements prior to an anticipated arrest in order to avoid Miranda warnings and rob the Defendant of his right to due process and many other constitutional rights without his knowledge.

Assuming arguendo, if the State claims the caller was not a state agent that alone is not sufficient to disprove state action. The essential issue in this case is that the police intercepted and recorded a phone conversation from a private cellphone line without a warrant. Whether the caller was a state agent does not change the fact that the police, acting under the color of law, were the actual interceptors of this electronic communication and this recording is being used as admissible evidence against Mr. Deng. The police not only coached Marissa on what to say and how to say it; they also provided the facility for this operation, set up and operated the digital recording device. This conduct, effort, and involvement by the police constitute state action, regardless of whether the caller was a state agent.

This warrantless state action violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. In addition, this recording was made or produced by the Phoenix Police with their own equipment and material. Thus, this recording is State property and should not be introduced as evidence.

### 2. The Surreptitious Recordings of Mr. Deng's Conversations Violated His Fourth Amendment Rights.

The interception of the phone calls between Mr. Deng and Marissa Mandigo violated Mr. Deng's Fourth Amendment Rights. The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The essential purpose of the Fourth Amendment is to protect the citizen from unwarranted governmental intrusion into his privacy. Intrusion, without a warrant, upon a private cellphone line, where an expected private conversation takes place is equivalent to trespassing into a person's privacy. No one has the right to give consent for the government to violate another citizen's constitutional rights.

The Fourth Amendment does not insist upon bright line rules. Rather, "it recognizes that no single set of legal rules can capture the ever changing complexity of human life...And [the Supreme] Court has continuously emphasized that "[r]easonableness . . . is measured . . . by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); see also *Illinois v. Wardlow*, 528 U.S. 119, 136 (2000); *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *Michigan v. Chesternut*, 486 U.S. 567, 572-573 (1988); *Florida v. Royer*, 460 U.S. 491, 506 (1983). Additionally, under *Katz*, "the field of conversational privacy, the 4th Amendment protects persons, not

places.  A man can only be in one place at one time.  If the privacy of his conversation is respected at that place, he may engage in all those activities for which that privacy is an essential prerequisite." *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed.2d 576 (1967).  This Amendment protects a person's private conversation as well as his private premises.  "[E]ven a wrongful search or seizure by a private citizen does not violate the Fourth Amendment unless the citizen is acting as an agent of the State." *State v. Estrada*, 209 Ariz. 287, 291, 100 P.3d 452, 456 (App. 2004).  "Whether a private citizen acted as a state agent is determined on a case-by-case basis, and the inquiry focuses on a two-part test assessing the degree of government knowledge and acquiescence in the search or seizure and the intent of the party performing the search." *Id.*  The warrantless interception of Mr. Deng's private cell phone is an invasion and constitutes a "search."  In addition, the caller's conduct falls within the two part test outlined in *Estrada* which makes her an extension of law enforcement and a warrant is required for such an interception.

Mr. Deng had a reasonable expectation that his phone calls with Marissa Mandigo would remain private.  Marissa was acting as an agent of the State when she made the phone calls to Mr. Deng.  Mr. Deng's reasonable expectation of conversational privacy was violate due to unconstitutional police conduct.  He was a victim of an invasion of privacy by the police and Marissa.

### 3. The Surreptitious Recordings of Mr. Deng Conversations Violated His Rights to Privacy.

The surreptitious recording of Mr. Deng's conversation amounts to a violation of

9

Mr. Deng's right to privacy. The Arizona Constitution, Article 2, Section 8, states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

This Constitutional provision protects a person's private affairs as well as his home against unwarranted governmental intrusion. Mr. Deng's phone conversation with Marissa Mandigo was a private affair. The phone call took place while Mr. Deng was on his cell phone at work. Mr. Deng's private affairs should not be aired in a public forum when he reasonably had a Constitutional expectation of privacy. Furthermore, in the endorsement of digital privacy rights, the Supreme Court recently made a ruling on cellphone privacy. A warrant is required for the police to search people's cellphones they arrest. The police need to obtain a warrant first before they are allowed to flip through a person's cellphone then it is a logical extension that the police also need a warrant to intercept and conduct recordings on a private cellphone line. The privacy of a private cellphone line is as important as the privacy of a cellphone's contents. A private cellphone line is a place where privacy is expected and protected by the United States Constitution.

**4. The Surreptitious Recordings of Mr. Deng's Conversations Violated Mr. Deng's Fifth Amendment Rights of the United States Constitution and Article 2, § 10 of the Arizona Constitution.**

The Fifth Amendment of the U.S. Constitution and Arizona Constitution, Article 2 § 10, both protect citizens from self-incrimination. The officers violated Mr. Deng's Fifth Amendment privilege against self-incrimination when the officers failed to advise Mr. Deng of his *Miranda* rights prior to allowing Marissa to interrogate him.

Neither the officers, nor Marissa, read Mr. Deng's *Miranda* rights, nor did they advise him he was under investigation for sexual conduct with a minor and sexual abuse.

*Miranda v. Arizona, supra*, recognizes that "custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." *Id.* at 455. The purpose behind the warning mandate is to strike a "fair state-individual balance." *Id.* at 460 (citing 8 Wigmore, Evidence (*McNaughton* rev., 1961), 317). "In sum, the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" *Id.* at 460 (citing *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).

> These policies are served when the privilege is asserted to spare the accused from having to reveal, directly or indirectly, his knowledge of the facts relating him to the offense or from having to share his thoughts and beliefs with the Government.

*Doe v. United States*, 487 U.S. 201, 213 (1988). In order for *Miranda* to apply, the defendant must be subjected to custodial interrogation. *Miranda, supra* at 444. ***Any*** incriminating testimonial information obtained in the absence of *Miranda* warnings is by definition coerced, **no matter how friendly** the questioning may be. *State v. Lavaris,* 664 P.2d 1234, 1237 (Wash. 1983). (Emphasis added).

Custody is defined as actual physical restraint *or* whether the person has otherwise been deprived of his or her freedom of action in *any significant way*. *Id.* (Emphasis added). To determine whether a person has been taken into custody for *Miranda* purposes, courts consider numerous factors, such as: 1) the language used by the officer to summon the individual; 2) the extent to which the person is confronted with evidence

of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to the person.  Using these factors, the court must determine whether a reasonable person in similar circumstances would conclude that after brief questioning he or she would not be free to stop the questioning.  *Booth*, 669 F.2d at 1235; *State v. Wright*, 161 Ariz. 394 (App. 1989) (citing *State v. Perea*, 142 Ariz. 353, 354 (1984)); *State v. Cruz-Mata*, 138 Ariz. 370, 373 (1983). Each case is individually determined on a case-by-case basis. *Cruz-Mata*, 138 Ariz. at 373.

In Mr. Deng's situation, the police intentionally and knowingly circumvented his Fifth Amendment privilege against self-incrimination without his knowledge by not placing him under arrest and advising him of his *Miranda* rights on the charges at the time the allegations were made. The officers intended to arrest Mr. Deng on the charges at the time allegations were made.  However, **in order** to **intentionally** and **unlawfully** circumvent the protections of the Fifth Amendment, the officers used a deceptive tactic, namely the confrontation call, to get Mr. Deng to make incriminating statements out of context and without *Miranda* warnings.

Whether or not someone is in custody is an objective inquiry.  The subjective intent of the interrogator to arrest the suspect is not, in itself, a sufficient basis to conclude that custody exists. *State v. Kennedy*, 116 Ariz. 566, 569, 570 P.2d 508, 511 (App. 1977) (citing *People v. Kelley*, 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947 (1967)). "Custody . . . is the point in time when this privilege against self-incrimination attaches." *State v. Mumbaugh*, 107 Ariz. 589, 594, 491 P.2d 443, 448 (1971).

Mr. Deng was "in custody" during the confrontation call because the State used

Marissa as a state agent to confront him with alleged evidence of guilt over the course of three coercive phone calls.   Mr. Deng's stepdaughter, acting on behalf of the State and under the State's direction, was pressuring Mr. Deng to answer coercive questions at a time and location when the State knew Mr. Deng was susceptible to their coercive tactics. Moreover, Mr. Deng's stepdaughter acted in such a distraught and emotional manner that Mr. Deng did not feel as though he could end the conversation and stop the interrogation. Instead, Mr. Deng was being pressured to stay on the phone while trying to finish his tasks at work.   Mr. Deng's fatherly instincts were taken advantage of by the State and Mr. Deng was interrogated while being "in custody."   He was mentally, psychologically and emotionally in custody.

The conversation was clearly an interrogation because the officers drafted questions and coached Marissa on what to say with the purpose of eliciting incriminating responses from Mr. Deng.   All of Mr. Deng's statements made during the confrontation call must be suppressed because these statements were made by Mr. Deng while he was in custody, being interrogated, and without receiving *Miranda* warnings in violation of his Fifth Amendment rights.

In *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68L Ed. 2d 359 (1981), the trial court had appointed a psychiatrist to examine the defendant's competency to stand trial, and for ninety minutes the psychiatrist specifically questioned the defendant concerning the commission of the crime.   The Supreme Court held that the examiner's failure to advise the defendant of his Miranda rights precluded the use of his testimony for purposes other than to establish competency to stand trial.   *See Estelle*, 451 U.S. at 457, 101 S. Ct. at

1870.

In Mr. Deng's case, all his statements during the confrontation call were not spontaneously made. They were specifically solicited by questions and acts designed by the police for the sole purpose of eliciting incriminating statements from him. If the defendant's statements were precluded in Estelle because the psychiatrist failed to advise the defendant of his *Miranda* rights then the same principle should be applied to Mr. Deng's statements. Marissa, the State's appointed agent, should have advised Mr. Deng of his Miranda rights before she specifically questioned Mr. Deng and trying to solicit the responses the police were directing her to receive. All of Mr. Deng's statements were solicited by questions and act that the police knew or should of knew would reasonably likely to elicit statements, thus, a *Miranda* warning was a prerequisite at the beginning of the confrontation call.

### 5. Confrontation Calls violate the First and Fifth Amendments of the United States Constitution and Arizona Constitution Article 2 §§ 6 and 10.

The First Amendment of the U.S. Constitution and Arizona Constitution, Article 2 § 6, protect citizens' right to freedom of speech, which is the fundamental right of every citizen in the country stating that, ". . . every person may freely speak, write and publish on all subjects." Using a citizen's private phone conversation (non-mirandized statements) against a citizen in a criminal case abridges his fundamental rights and his freedom of speech. It amounts to compelled self-incrimination, unless the citizen freely gives up his rights.

For instance, in Mr. Deng's case, if he knew he was talking to a state agent at the

time and decided to surrender his right, post-Miranda, then all statements could be admissible and used against him. This however, was not the case. Instead, the police used a deceptive, tactical, and unconstitutional technique to intercept and record his private phone conversation, on the phone lines Mr. Deng subscribed to and paid for.

Mr. Deng's statements were simply responses of confusion and misunderstanding, not statements of fact. These responses cannot be considered *as confessions* because Mr. Deng was not properly Mirandized. This unconstitutional governmental conduct is completely contradictory to the fundamental principles that this country was founded on. Mr. Deng's very basic human rights, which are hallowed through the United States Constitution, have been violated. Any and all statements made by Mr. Deng during the confrontation call are protected by the right of privacy.

Because Mr. Deng was never advised of his rights, never voluntarily gave up those rights, he never knew he was speaking with an agent of the State, and was not Mirandized; his conversation must be regarded as free speech which is protected by the First Amendment. The State has unlawfully criminalized free speech through the use of confrontation calls.

The use of Mr. Deng's non-Mirandized statements against him is the equivalent as using his free speech admissible against him for the purpose of compelling him to self-incriminate and to testify against himself in the court of law. This is not only a violation of the First Amendment, but also a violation of the Fifth Amendment of the United States Constitution. The State is using Mr. Deng's non-Mirandized statements, his free speech, against him for the purpose of compelling Mr. Deng to incriminate himself.

Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel." *Id.* at 180.  Under the Sixth Amendment, the prosecutor and the police have an affirmative obligation to not act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel. *Id.*

In this case, the police clearly violated Mr. Deng's Sixth Amendment right when they arranged a confrontation call between him and Marissa by knowingly and intentionally concealing the fact that Marissa was working as an agent with the State. Marissa was acting as an agent of the State because she was to elicit statements at the police's direction.  The police knew that Mr. Deng would make statements to their agent without the right to consult his attorney.  "Proof that the State 'must have known or should have known' that its agent was likely to obtain incriminating statements from the accused in the absence of counsel suffices to establish a Sixth Amendment violation." *See United States v. Henry, supra* 447 U.S. at 271, 100 S. Ct. at 2187.  The police knew by concealing the fact that Mr. Deng was a suspect and the fact that he was subjected to a deceptive interrogation tactic, in the absence of counsel, that its acting agent was more likely to elicit statements which is a Sixth Amendment violation.

## B. THE CONFRONTATION CALL IS INADMISSIBLE BECAUSE IT VIOLATES BOTH STATE AND FEDERAL LAW.

### 1.  The Confrontation Call/Interception Violates 18 U.S.C. § 2511(2)(d).

18 U.S.C. § 2511(2)(d) states:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication   or   where   one   of   the   parties   to   the

communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

The Law is very clear that actors under the color of law **cannot** lawfully conduct an interception, unless they have a warrant or § 13-3012 exemptions. In this case, the police committed three violations. First, the police were actors under the color of law who conducted the interception and recording with the assistance of a minor and her mother. Second, the police violated the law when they recorded a private phone conversation, which they were not a part of. Third, the police failed to provide proof of consent, failed to prove prior consent, and failed to show whether the prior consent was given voluntarily, and did not have a warrant or §13-3012 exemption.

Marissa and her mother were working in concert with the police in conducting this deceptive, unconstitutional interrogation. The fact that Marissa initiated a systematic questioning at the behest of the police and under the direction of the police, with an expectation of eliciting statements on the part of the police made her a state agent and the whole operation is a State action. The mother's consent was given after her and her daughter had already become agents. But, the consent was still invalid because Marissa's mother was not a participant of the conversation.

Distinguishing case law indicate how the contents of an interception can be admissible under the "vicarious consent exception." *State v. Morrison*, 203 Ariz. 489 (2003); *Thompson v. Dulaney*, 838 F. Supp. 1535 (1993); *United States v. King*, 536 F. Supp. 253 (CD. Cal 1982); and *Griggs-Ryan v. Smith*, 904 F.2d 112 (1990). In *Morrison,*

the 14-year-old victim's mother read passages in her daughter's diary containing sexual references which lead the mother to install a tape recorder in her own home (not acting under the color of law), that would automatically record all telephone calls to determine what was being said between the victim and the defendant. In turn, the mother recorded a sexually explicit conversation. *Id.* The court in that case held that the recording was admissible because the victim's mother had a good faith, objectively reasonable basis for believing it was necessary and in the best interest of her daughter to vicariously consent, to record the phone conversation, and the recording was done within the mother's own home. *Id.* This case involves **no** state action. However, in Mr. Deng's case, the police actually initiated, set up, conducted the interception, and recorded a conversation they were not ~~an~~ ~~actor~~ part of. This state action is in violation of this statute and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution because they did not have a warrant nor an exemption under A.R.S, § 13-3012.

## 2. The Confrontation Call/Interception Violates A.R.S. § 13-3005.

A.R.S. § 13-3005 states: a person is guilty of a felony who "intentionally intercepts a wire or electronic communication to which he is not a party, or aids, authorizes, employs, procures or permits another to so do, without the consent of either a sender or receiver thereof. . . ." This statute clearly states that interception without the consent of either "sender or receiver," or a person who intentionally intercepts electronic communication to which he is not a party of commits a felony. In this case, the police violated these requirements. The police intentionally intercepted and recorded a private conversation which they were not part of, with a purpose of eliciting incriminating

statements. The police did not have valid consent for this interception because the caller, who was a minor at the time, lacked legal capacity to consent. The State can argue the caller's mother gave consent, but the consent is invalid because the mother was not a participant to the phone call. Therefore, this interception is in violation of this statute.

### 3. The Confrontation Call and Interception Violates A.R.S. § 13-3012.

The interception in this case was a tactical operation orchestrated and conducted by police with the help of a minor state agent. In relevant part, A.R.S. § 13-3012 states: The following are exempt from the provisions of this chapter:

> The interception of wire, electronic or oral communications, the installation and operation of a pen register or trap and trace device, the providing of information, facilities or technical assistance to an investigative or law enforcement officer pursuant to a subpoena or an ex-parte order pursuant to A.R.S. §§ 13-3010, 13-3015, 13-3016, 13-3017 and 13-3018. . . ."

The law is very clear; law enforcement officers need a warrant or subpoena to conduct such interception. In this case, the police conducted the interception without a warrant or subpoena which is in violation of this chapter.

### 4. The Confrontation Call and Interception Violates 18 U.S.C. § 2515.

18 U.S.C. § 2515 states:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

The interception in this case was a state action without warrant or ex-parte order, and without the valid consent of the sender of receiver, which is in violation of 18 U.S.C. § 2511(2)(d).  Therefore the use of contents from this interception as evidence is prohibited by this statute.

### 5.  The Confrontation Call/Interception Violates 18 U.S.C. § 2510(5)(a)(i).

18 U.S.C. § 2510(5)(a)(i) provides:

> (5) electronic, mechanical, or other device means any device or apparatus which can be used to intercept a wire or oral communication other than (a) any telephone or telegraph instrument, equipment or facility, or any component thereof . . . (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of business and being used by the subscriber or user in the ordinary course of its business . . .

The Seventh, Tenth and Second Circuits have held that parental interception of their minor child's phone conversation does not violate Title 3 if the recording is done from an extension within the home.  *Schieb v. Grant*, 22 F.3d 149 (7th Cir. 1994).  It is clear that § 2510(5)(a)(i) of the Electronic Communication Privacy Act only applies to extension phones, interception and recording only furnished to the subscribers or users of the phone lines and conducted on their own equipment.  But in this case, the interceptors of the phone call were the police, they were not the subscribers of the phone line, and the line was wireless and therefore could not be an extension coming from the home.  No one had the legal capacity to consent and conduct such interception on Mr. Deng's private cellphone lines but Mr. Deng himself, because he was the sole subscriber of both lines (sender's and receiver's).  The Phoenix Police Department violated the Electronic

Communication Privacy Act by surreptitiously intercepting Mr. Deng's private cellphone lines.

### C. THE CONFRONTATION CALL IS INADMISSIBLE BECAUSE THE POLICE DEPARTMENT'S LACK OF PROTOCOLS AND PROCEDURES.

The State acts as if one party's consent gives a green light for police to conduct recording, however, unlike other forms of electronic recording and surveillance, confrontation calls are not regulated by any lawful procedures and guidelines. There are no known protocols or procedures to regulate this type of evidence. Therefore, the State should not be able to use the confrontation calls because the authenticity and reliability cannot be ensured.

The admissibility of all evidence is determined and governed by 17(a) A.R.S. Rule of Evidence. There are procedural requirements for obtaining evidence or testimonies. These particular requirements are meant to protect people not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. The procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. *Marchant v. Pennsylvania R.R.,* 153 U.S. 380, 386 (1894).

Prime examples of Arizona Statutes providing procedures and guidelines in accordance with Due Process are: A.R.S. § 13-4252 which provides procedures and guidelines for conducting electronic recording of a minor's out-of-court testimonies; A.R.S. § 13-4243 provides procedures and guidelines for the use of televised recorded videos and tapes; and search and seizure law within the Fourth Amendment provides

guidelines and procedures. All of these statutory requirements must be satisfied in order for evidence to be admissible at trial.

The State lacks any guidelines or procedures with regard to confrontation calls. If the purpose of the confrontation call is to collect and obtain evidence against a person, then certain guidelines and procedures need to be implemented to ensure that the person is receiving Due Process protection. The overall setup of the confrontation call is designed to entice and persuade an individual to confess to an alleged crime. This is a major loophole in Due Process protection. Officers are free to go to any measure on the call to make sure they get what they need, which makes this process an uneven handed affair in favor of the authorities; stripping the protection of the individual. Here, the measures taken by the authorities to obtain information are unorthodox. Moreover, the questions made by authorities are metaphorical bullets, piercing the overall demeanor of the receiver's side of the call. These questions take stabs at a person's emotional and mental state of mind. Therefore, the person on the receiving end is not in the right frame of mind when responding to the sender.

According to the principles of Constitutional Due Process, "reliability is the linchpin in determining the admissibility of evidence. The United States Constitution guarantees every criminal defendant the critical right to be prosecuted only by reliable evidence." *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157 (1990). Fairness certainly requires that the proponents of the evidence meet a threshold of at least minimum reliability. *People v. Blackman*, 488 N.Y. 2d 395 (1st Dict. 1985). Without any codified guidelines and statutory procedural requirements to regulate the making of confrontation

calls, reliability and veracity are not met.

The State bears the burden to prove corpus delicti before resting its case. *State v. Hernandez*, 83 Ariz. 279, 283, 320 P.2d 467, 469 (1958). An accused may not be convicted on his own uncorroborated statements. Before any evidence is admissible of a crime, the State must establish the corpus delicti by proving that a certain result has been produced and that someone is criminally responsible for that result. Only a reasonable inference of the corpus delicti must exist before a statement may be considered for evidence. *See State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982). If the State fails to make this showing, the trial court should grant a motion for directed verdict of acquittal. *State v. Lloyd*, 118 Ariz. 106, 574 P.2d 1325 (App. 1978).

In Mr. Deng's case, the State has failed to present sufficient evidence to establish the corpus delicti of multiple years of sexual conducts and sexual assault. The State did not have a properly obtained admissible statements by Mr. Deng to corroborate these allegations. Additionally, the State has absolutely **no** physical evidence of any sexual abuse, and it cannot prove that Mr. Deng is responsible for any physical evidence. Therefore, the State in this case has not sufficiently established corpus delicti.

## D. MR. DENG'S STATEMENTS WERE INVOLUNTARY AND WERE EXTRACTED BY COERCIVE MEANS AND THERFORE INADMISSIBLE.

### 1. Mr. Deng was Forced and Coerced, Psychologically and Emotionally, to Answer Questions Posed by the Caller (State Agent).

A statement is involuntary if it is not "the product of a rational intellect and a free will." *Mincey v. Arizona* (1978) 437 U.S. 385, 395. In addition to the violation of Mr.

Deng's right to be free from self-incrimination, Mr. Deng's statements to Marissa were also not voluntary. An involuntary statement is one that is obtained by impermissible conduct, coercive pressures, or is derived directly from a prior involuntary statement. *State v. Amaya-Ruiz*, 166 Ariz. 152, 178, 800 P.2d 1260, 1286 (1990) (*citing State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987)). Voluntary statements are ones that that cannot be induced by a direct or implied promise, however slight. *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976); *Amaya-Ruiz*, 166 Ariz. at 179, 800 P.2d 1261 (*citing State v. Ferguson*, 149 Ariz. 200, 207, 717 P.2d 879, 886 (1986)).

The State has the burden of proof, by a preponderance of the evidence, to show that all statements are voluntary and not the product of physical or psychological coercion. *Amaya-Ruiz*, 800 P.2d at 1286 (1990). In order to determine whether an individual's statements were voluntary, the court **must** look at the **totality of the circumstances** surrounding the statement from an objective viewpoint. *Id.* at 178. (Emphasis added).

In prior history, the courts have attempted to figure out whether a particular admission was truly voluntary or whether it was the product of overbearing police behavior (whether the police *simply went too far*). Primary examples involving the psychological coercion of the defendant include, but not limited to: 1) the police threatened the suspect with a harsher sentence or the death penalty; 2) detectives threatened to arrest or jail the suspect's family members, or make threats regarding the welfare of the suspect's children; 3) police isolated the suspect and/or wear the suspect

down through deprivation of sleep, water, food and/or toilet facilities; 4) the interrogation is unrelenting and unduly lengthy;  and 5) detectives exploit a particular weakness of the suspect, such as his/her young age, low IQ and/or precarious mental and emotional state. *Arizona v. Fulminante*, 499 U.S. 279 (1991); *People v. McClary*, 20 Cal.3d 218, 229 (1977); *In re Shawn D.*, 20 Cal.App.4th 200, 213 (1993); *see also People v. McClary*, 20 Cal.3d 218, *supra. People v. Neal*, 31 Cal.4th 63, *supra. People v. Esqueda*, 17 Cal.App.4th 1450, 1485 (1993).

Here, the Phoenix Police Department utilized psychological, coercive tactics, vicariously through a minor, Marissa, by exploiting a particular weakness and targeting Mr. Deng's emotional state of mind. The officers directed, choreographed, encouraged and recorded Marissa through the entire confrontation call. Mr. Deng was psychologically forced to speak to Marissa and answer her questions due to Marissa's erratic behavior and Mr. Deng's fatherly instinct.  When Mr. Deng showed resistance or hesitancy in answering questions, the officers had Marissa tell Mr. Deng she was very upset and that he was the *only* person that she could talk to.  Mr. Deng initially told Marissa he would call her back in 15 to 20 minutes.  The officers did not have Marissa wait for a call back from Mr. Deng. Instead, the officers had Marissa call Mr. Deng back about five minutes later begging and coercing him to have a conversation with her. During the conversation, Mr. Deng clearly does not want to talk to Marissa and is clearly distracted with his work, but the officers had Marissa beg him to stay on the phone with her.  The officers have Marissa say five or six times to "please talk to me, stay on the phone."  When Mr. Deng tells Marissa he cannot talk because he is at work, the officers

have Marissa tell him to step outside so they can talk.  The officers have Marissa isolate Mr. Deng and prey on his mental and emotional state by pretending she desperately needs Mr. Deng.  The officers had Marissa state, "I need you now, just talk to me now."  The officers had Marissa cry and tell Mr. Deng that she cannot eat or let her mom see her like this.  The officers even go as far as having Marissa pretend she is having self-esteem issues about her private parts.

Collectively, Marissa's relentless desperation, coupled with her acclaimed deprivation of food and threatening to tell Mr. Deng's ex-wife, amounted to psychological coercion, deception, and duress.  Additionally, Mr. Deng was busy at work, his statements were constrained by outside interference.  Examining the totality of the circumstances, Mr. Deng's statements were not part of his true freewill.  In all cases where the officers ask said questions of Defendants, the officers are required read individuals their *Miranda* warnings.

### 2. Mr. Deng's Statements Were the Result of Interrogation and are Not Admissible Under A.R.S § 13-3988.

Mr. Deng's statements were not made voluntary; therefore, Mr. Deng's statements are inadmissible under A.R.S § 13-3988.  The admissibility of statements under A.R.S. § 13-3988 (A) requires all statements to be voluntary in order to be admissible at trial. In addition, subsection B sets forth certain factors for the Court to consider in determining voluntariness.  A.R.S. § 13-3988 (C) states:

> Nothing contained in this section shall bar the admission in evidence of any confession made or given **voluntarily** by any person to any other person **without interrogation** by anyone . . . or at any time at which the person who made or gave such confession was not under arrest or other detention.

As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

(Emphasis Added).

Statements are presumed involuntary and it is the duty of the State to prove by a preponderance of the evidence that a defendant's statements were voluntarily made. *State v. Smith*, 193 Ariz. 452, 457-60, 974 P.2d 431, 436-39 (1999). Mr. Deng was never advised he did not need to answer the questions posed during the call. Mr. Deng was never advised of his right to counsel and he did not consult or have any attorney present during the call when he was responding to questions. Every response Mr. Deng made was to questions posed by Marissa at the direction of law enforcement while he was busy and distracted.

The controlling definition of interrogation was established in *Rhode Island v. Innis*, in which the Supreme Court concluded interrogation may take the form of express questioning or the functional equivalent. *Id.* at 446 U.S. 291 (1980). *Innis* further held that any statements or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect" constitute an interrogation. *Id.* at 301. The only exceptions to this rule are when exigent circumstances exist or when questions are routine, non-investigatory, and are completely unrelated to the crime. *United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981).

The entire confrontation call was choreographed and coached by law enforcement. The officers used Marissa to interrogate Mr. Deng. Although subsection C does not require the interrogator to be a police officer, it does require that the statements be made

by the defendant *without* being in response to questioning (interrogation). All of Mr. Deng's statements were made as a result of the continuous questioning by Marissa at the direction of the police and the police knew using this express questioning tactic was reasonably likely to elicit an incriminating response from Mr. Deng which constitutes an interrogation; therefore, his statements are not admissible under this statute.

### 3. The Statements Made by Mr. Deng Were Obtained by Deceptive Coercive Pressures through Trickery.

Statements are involuntary if there exists impermissible conduct by police officers or coercive pressures not dispelled. *State v. Tapia*, 159 Ariz. 284, 767 P.2d 5, (1988); U.S.C.A Const. Amend. 5. Marissa, through the guidance of the police, tricked Mr. Deng into making statements that sound incriminating on the confrontational call because the statements are taken out of context, while Mr. Deng was distracted with work. As the call initiated, Marissa referred to Mr. Deng as "Baba". In the Chinese culture, the word "baba" is the Mandarin Chinese dictionary entry for "Dad". By using this initial greeting, Mr. Deng's fatherly instincts were heightened, which created an emotional obligation to speak with Marissa.

Marissa mentioned three times she "really needs to talk to him." Marissa specifically mentioned to Mr. Deng that she has not been eating and she has no one else to talk to. As her only father figure at the time, Mr. Deng eventually gave into Marissa's manipulative begging, because she had taken advantage of Mr. Deng's fatherly instincts. The Phoenix Police Department designed these emotional tricks so Mr. Deng would eventually incriminate himself when the statements were read out of context later. This

police conduct should be deemed impermissible because it is contrary to the fundamental protections of the Constitution.  Mr. Deng's statements on the confrontation call were involuntary and should be suppressed.

### E. TRICKERY IS FUNCTIONALLY EQUIVALENT TO PSYCHOLOGICAL COERCION.

The judge stated, during a previous oral argument, that the "victim engaged in trickery at the behest of the state apparently, but that does not amount to coercion . . . Trickery does amount to psychological coercion. The words "trickery" and "coercion" have different meanings, however, the nature of these words put into actual use is essentially the same for both. Coercion deals with physical force or threat of physical force used to compel another person to submit to the wish of one who wields it. Trickery, on the same note, is a deceptive conduct that aims at a person's mental state which is likely to deceive the subject acting reasonably causing an individual to feel obligated or morally responsible to do or say something rather than voluntarily. According to Black's Law Dictionary, voluntary is defined as free, without compulsion or solicitation. In Mr. Deng's case, the statements made were obtained by external factors causing duress and worry due to the agent's behaviors.  Mr. Deng's statements were influenced by duress and worry through the use of trickery. "The human mind, under the pressure of calamity is easily seduced . . ." *Bram v. U.S.*, 168 U.S. 532, 547 (1897). "In order to be admissible . . . statements must not be extracted by any sort of threats or violence . . . nor by exertion of any improper influence." 3 Russ. Crimes (6th Ed.) 478. The law is clear, any influenced statements, however slight the impression maybe implanted is not admissible.

In fact, without the initial thought process of intending to deceive or pressure someone then a physical act of coercion wouldn't occur. With that said, trickery and coercion both involve a method, scheme or a stratagem that is designed to persuade or compel a person to commit an act. Applying the method of trickery to improperly influence and persuade someone to make certain statements is functionally equivalent to coercing someone to confess. The act of using trickery to extract something from a person takes away the true voluntariness of the giver's action. Therefore, all statements elicited by trickery are involuntary and must be suppressed.

## 1. Trickery is a form of inducement and persuasion.

The United States Supreme Court has held that "coercive police activity is a necessary predicate to the finding that statements are not 'voluntary' within the meaning of the Due Process clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 522 (1986). The court must examine the totality of the circumstances to determine whether the statements are voluntary.

Marissa pretended she was having major problems with her boyfriend and said statements like: "I'm having emotional break downs all the time . . . I can't eat . . . what if mom takes away my phone . . . I have no one to talk to . . . I need to talk to you now . . . please just step outside. . . Come on, can you take a break for me," are unusual and begging schemes inducing Mr. Deng to believe that she was in serious emotional trouble, made him ~~even~~ ill to ~~her~~ his stomach, which affected Mr. Deng's mental state. Mr. Deng was scared and extremely worried about her well-being. Mr. Deng felt truly obligated to stay on the phone and comfort his step-daughter because of his fatherly love and care for her. All of

Mr. Deng's statements were improperly influenced by the caller's behaviors, statements, and the persuasive nature of this tactic-trickery.

In addition, throughout the entire conversation, Mr. Deng was confused and misconceived by what Marissa was saying. He thought Marissa was talking about her boyfriend. "Incriminating statements elicited in reliance upon misapprehension as to the nature of inquiry, his obligation to respond, and the possible consequences of doing so must be regarded as equally [violating] of Constitutional protections as a custodial confession extracted without proper warnings. *Cf. Gould v. U.S.*, 225 U.S. 298, 305-306, 41 S.Ct. 261; *U.S. v. Guerrina*, 112 F.Supp. 126 (E.D. PA. 1953), *modified*, 126 F.Supp. 609 (E.D. PA. 1955). The law is very clear that the nature of this deceptive interrogation tactic as a way of inquiry made these statements involuntary. Therefore, Mr. Deng's statements are not admissible and need to be suppressed.

## III.  **CONCLUSION**

The confrontation call in this case is a deceptive tactical police interrogation technique. This tactic took away Mr. Deng's right to be aware that he was talking to the police; that he was a suspect of a criminal investigation; that he was facing a phase of the adversary system; and that he was talking to an agent of the State. These tactics are designed to rob and circumvent Mr. Deng's Constitutional privileges without his knowledge. The police interjected itself into a position of interdependence with a "private party" for the purpose of eliciting statements in a way that the police normally could not have done alone.

Furthermore, the police became involved by providing a facility, equipment,

32

technical support, strategy and production of the recording device. This conduct and involvement make the whole operation a state action and the caller a state agent. This unjust and unconstitutional tactic is in violation of 18 U.S.C §§ 2511(2)(d); 2510(5)(a)(i); 2515; A.R.S. §§ 13-3005; 13-3012, and is in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution; and Ariz. Const. Art. II § 8.

Likewise, confrontation calls are a method of pretense and deception. It is designed to trick or cajole the suspect out of exercising his constitutional rights without his knowledge. This tactic is designed to circumvent, especially the suspect's right to counsel by intentionally not placing him under arrest on the pending charges, so that he is unaware he is a suspect of a criminal investigation. This tactic is designed to take advantage of the suspect's mental weakness. It is a method of persuasion which is designed to undermine the suspect's ability to think and make rational and intellectual choices. The deceptive, persuasive, and influential nature of this tactics and methods are not only unconstitutional, but it also circumvents the voluntariness of the suspect's action. This is equivalent to psychological coercion. Such coercion, combined with Mr. Deng's confusion and misapprehensions, makes Mr. Deng's statements involuntary.

Wherefore, Mr. Deng respectfully requests the Court suppress all statements made by defendant during the confrontation call because they are the product of an unwarranted interception from a private cellphone line; and preclude the statements from the State's case-in-chief at trial for any purpose, including impeachment.

RESPECTFULLY SUBMITTED this 12th day of December, 2014.

/s/Kamille Dean
Kamille Dean
Attorney for Defendant

Exhibit   Five

Natalee Segal, SBN 016775
Ballecer & Segal, LLP
1095 E. Indian School
Phoenix, AZ 85014
602-883-3653
nataleesegal@gmail.com

# Maricopa County Superior Court, State of Arizona

| | | |
|---|---|---|
| State of Arizona,<br>　　　Plaintiff, | ) <br> ) <br> ) | CR2011-153034-001 |
| v. | ) <br> ) <br> ) | Petition for Post-Conviction Relief |
| Tony Deng,<br>　　　Defendant. | ) <br> ) <br> ) <br> ) | Judge Gerlach, Rule 32 management unit |

Deng asks this court to grant his petition for post-conviction relief, vacate his conviction and remand his case for a new trial. The following memorandum of points and authorities supports this petition.

## Memorandum of Points and Authorities

Issue I: Deng's trial counsel was ineffective for failing to disclose the photo which resulted in its preclusion.

Issue II: Deng's appellate counsel was ineffective for failing to raise the issue of the suppression of the photo.

Issue III: Deng's trial counsel was ineffective in failing to request an evidentiary hearing to establish that MM was a state agent in the confrontation call whereby the court would have had to suppress evidence of the call.

Facts and Procedural History:

A jury found Deng guilty of ten counts of sexual conduct with a minor, class two felonies and one count of sexual abuse a class three felony. Both were found to be dangerous crime against children. Deng was sentenced to a de facto life sentence.[1]

The testimony relevant to this petition is as follows. MM, the victim, testified that she had a sexual relationship with her stepfather, Deng, from fifth or sixth grade to her sophomore year in high-school.[2] MM said that she and Deng had regular vaginal sex over this period of time.[3] Specifically, MM was examined by a forensic nurse at Childhelp when she was fifteen-years old.[4] The examiner took pictures of the interior of MM's vagina, one of which was admitted into evidence at trial.[5] The pictures showed no sign of sexual abuse to MM's vagina. Therefore, there was no physical corroboration to MM's claim. According to the

---

[1] RT 9/18/15, See also *State v. Deng*, 1 CA-CR 15-0638, 3  (Deng was sentenced to consecutive prison terms of life with the possibility of release after 35 years on two counts of sexual conduct with a minor, 20 years in prison each on the eight remaining counts of sexual conduct with a minor, and five years on the sexual abuse count.)
[2] RT 7/2/15, 16, 32
[3] RT 7/2/15, 16, 32
[4] RT 7/2/15, 40
[5] RT 7/6/15, 59

2

state's expert, the lack of injury to MM's vagina despite regular sex with an adult over several years was not "not uncommon."[6]

Deng called Dr. Hariton, an expert in obstetrics and gynecology. Hariton disagreed with the state's expert. Heriton opined that given the frequency of penetration described by MM, he would expect to see "transactions" and "deep notches" to the vagina.[7] Hariton could demonstrate his opinion with two photos of children MM's age; one that had never been penetrated and another who had experienced multiple episodes of penetrative sex. The photos showed the expected injuries and non-injuries in each scenario.[8]

The state objected to the admission of the photos and their publication to the jury as demonstrative evidence because the defense attorney did not disclose them.[9] The court suppressed the photo as a sanction for defense attorney's failure to disclose it.[10] The expert was allowed to testify about the photos, but the jury was not allowed to see them.

Prior to trial Deng sought to suppress a confrontation call in which MM and the police called Deng to obtain a confession.[11] Deng argued that MM was acting

---

[6] RT 6/30/15, 113
[7] RT 7/6/15, 43 45
[8] RT 7/6/15, 58
[9] RT 7/6/15, 49
[10] RT 7/6/15, 51
[11] Electronic Clerk of the Court (ECR) Defendant's Motion to Suppress the Confrontation Call filed on 9/3/13

as a state agent.  The court first denied the motion summarily,[12] then when the

issue was re-urged, the trial court deferred ruling on the motion to the trial judge.[13]

Deng's trial attorney never requested a hearing from the trial judge.  Deng was

convicted and timely appealed.  Deng's conviction was affirmed[14] and he timely

filed a notice of post-conviction relief.[15]

Law

Issue I:        Deng's trial counsel was ineffective for failing to disclose the
photo which resulted in its preclusion,

The Sixth Amendment to the Constitution and its Arizona counterpart

guarantees a defendant the right to effective assistance of counsel at all stages of a

criminal proceeding.[16]  Counsel is ineffective if his representation fell below an

objective standard of reasonableness, and that there is a reasonable probability that

but for counsel's errors, the result of the proceedings would be different.[17]  A trial

court is within its discretion to preclude evidence at trial that corroborates a

defense if the preclusion is based on a disclosure violation by the defense counsel.

The Arizona Supreme Court has held that a defense counsel's failure to perform a

---

[12] RT 10/18/13, 66
[13] ME 3/4/15
[14] CR Court of Appeals Order filed 1/4/18
[15] ECR Notice of Post-Conviction Relief 3/15/17
[16] U.S. Const. amend. VI, A.R.S. Const. art. 2 §24
[17] *Strickland v. Washington*, 466 U.S. 698, 104 S.Ct. 2052 (1984)

known legal obligation (such as timely disclosure of evidence that corroborates his defense) has committed willful misconduct.[18]

Due process requires that a defendant is afforded the opportunity to present a meaningful defense.[19] An accused must be able to present evidence and witnesses to support his defense. Preclusion of a defendant's evidence may deprive him of a fair trial.[20] It follows that if evidence that corroborates a defense is precluded due to a defense attorney's failure to timely disclose it, the defense attorney is ineffective.[21] The question becomes one of prejudice. If the preclusion of the photos prejudiced Deng, his ineffective assistance of counsel claim prevails.[22]

Here, Deng's step daughter testified that Deng had regular intercourse with her sometimes with sex toys over an approximate four-year period. There was no physical evidence corroborating these claims and according to the State's expert the lack of physical evidence was normal. Deng's defense was that this never happened. Deng's expert disagreed with the State's expert. Deng sought to provide evidence to the jury, through his expert, corroborating his defense by the expert illustrating his disagreement by showing a photo of the inside of a "normal"

---

[18] *State v. Killean*, 185 Ariz 270, 271, 915 P.2d 1225, 1226 (1996)
[19] *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2534 (1984)
[20] See *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1059 (1973)
[21] See *Chambers* supra.
[22] *Strickland*, supra. (ineffective assistance of counsel is a two pronged test, whether counsel fell below the prevailing standard and whether the defendant was prejudiced)

non-sexually active 16-year old girl's vagina as contrasted with a photo of the inside of a 16-year old girl's vagina that had been regularly penetrated through frequent sexual activity.[23] The expert opined that based on his experience, shown through the photos Deng's defense was credible and MM's allegations were not.

Because there was no physical evidence to corroborate MM's allegations that Deng molested her, the expert's testimony that MM's forensic exam would have shown trauma to her vagina was critical to his defense. If the jury had a visual example of what a sixteen-year old's vagina would look like if she had repeated sex with an adult versus what the inside of MM's vagina looked like, the jury would likely have believed Deng over MM, resulting in a different outcome.

Deng's attorney was ineffective by failing to disclose photos that she sought to admit into evidence. If the photos were admitted, it is possible that the jury would have believed Deng over MM, finding Deng not guilty of the charges relating to sexual intercourse. Therefore, the preclusion of the photos prejudiced Deng.

Issue II:    Deng's appellate counsel was ineffective for failing to raise the issue of the suppression of the photo.

---

[23] RT 7/6/15, 58

6

The Sixth Amendment of the Constitution and its Arizona counterpart gives a criminal defendant the right to effective representation in a criminal case.[24] Due process requires that effective assistance of counsel extends to a defendant exercising his right of appeal.[25] To raise a colorable claim of ineffective assistance of appellate counsel, a defendant has to show that the failure to raise additional issues fell below the *Strickland*[26] standard of care and would have changed the outcome on the appeal.[27]

The defense objected to the preclusion of the photos, preserving the issue on appeal. The photos were precluded as a sanction for the defense attorney's failure to disclose them prior to trial as required.[28] Deng's attorney offered no explanation as to why she failed to do what the rule required.[29] However, the preclusion was discretionary. The trial court had other options.[30]

Preclusion of evidence is just one sanction that may be imposed when a party fails to timely disclose evidence it seeks to use at trial.[31] However, courts disfavor preclusion as a sanction unless the surrounding circumstances give rise to

---

[24] U.S. Const. amend. VI, A.R.S. Const. art. 2 §24
[25] *State v. Herrera*, 183 Ariz. 642, 645, 905 P.2d 1377, 1380 (1995)
[26] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)
[27] *Herrera* at 647
[28] Rule 15.2 (c), 15.7(c), Ariz. R. Crim. P.
[29] RT 7/6/15, 49
[30] Rule 15.7 (3), 15.7 (4), Ariz. R. Crim. P.
[31] Rule 15.7, Ariz. R. Crim. P.

the following factors: 1) how vital the evidence is to the case; 2) whether the opposing party will be surprised; 3) whether the discovery violation was motivated by bad faith; and 4) any other relevant circumstances.[32]

Here, the evidence was extremely important to undermine the credibility of both MM and the State's expert—especially because it underscored that there was no physical evidence to corroborate MM's claims, and had the claims been true, there should have been physical evidence to support them. The State knew Deng's defense was that the crime didn't happen and knew that the defense expert, a gynecologist, was going to testify to the same. Deng's expert was timely disclosed, and it is unclear whether he was interviewed by the State.

Although Deng's attorney objected to the preclusion of the photos, Deng's appellate attorney did not raise the issue on appeal. The trial court did not consider the factors necessary to determine whether a less serious sanction should have been imposed. Failure to do so, constitutes error.[33] Therefore, had Deng's appellate attorney raised this issue on appeal, he would have prevailed.

> Issue III: Deng's trial counsel was ineffective in failing to request an evidentiary hearing to establish that MM was a state agent in the confrontation call whereby the court would have had to suppress evidence of the call.

---

[32] *State v. Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (1984)
[33] *State v. Medina*, 244 Ariz. 361, 364 418 P.3d 1134, 1137 (App. 2018)

At the direction of and in the presence of the police, Deng's step-daughter made multiple phone calls to him.  The purpose of the phone calls was to obtain Deng's confession.  Deng filed a motion to suppress the phone calls on the basis of violations to his Fourth, Fifth and Sixth Amendment rights and based on the voluntariness of his confession.[34]  The trial court summarily denied his motions without a hearing.  Deng raised the issues on appeal.  The Court of Appeals noted that because no evidentiary hearing was held, the Court was confined to factual assertions made in the written motions and the transcript of the confrontation call.[35]  A hearing would have allowed Deng to develop two of his claims: 1) that his step-daughter was acting as an agent of the state and engaging in trickery at the State's behest and 2) that his confession was involuntary and coerced.

A defendant has a constitutional right to an evidentiary hearing on the issue of whether his confession was voluntarily made before the State can use his confession at trial.[36]  Failure to request a voluntariness hearing waives this right.[37]  Deng's trial attorney was ineffective by failing to request a hearing on the voluntariness of Deng's statements elicited during the confrontation call.  Because there was not a hearing, the record on appeal was confusing and underdeveloped.

---

[34] *State v. Deng*, 1 CA-CR 15-0638
[35] Id., 2 (footnote 2)
[36] *Jackson v. Denno*, 378 U.S. 368, 376-77, 84 S.Ct. 1774 (1964)
[37] *State v. McGriff*, 7 Ariz.App. 498, 503 441 P.2d 264, 269 (1968)

Also, the Court of Appeals disregarded the underlying facts presented by both sides in the appellate briefs as they were facts developed at trial and not during an evidentiary hearing.[38]

By waiving his right to a voluntariness hearing, Deng's trial attorney was ineffective. This ineffectiveness caused Deng to forego a voluntariness hearing to suppress his statements made during a confrontation call based on testimony rather than the police reports. It also made for a poor record on appeal. The resulting prejudice was the admission of Deng's involuntary, inculpatory statements and the Court of Appeals affirming his conviction.

Conclusion:

Deng's trial attorney was ineffective for 1) failing to timely disclose material and demonstrative evidence (photos) and 2) failing to request an evidentiary hearing on the voluntariness of his inculpatory statements. If Deng's attorney was effective, there is a probability that the jury result would have been different. Further, Deng's appellate counsel was ineffective for failing to raise the suppression of the photos on appeal. Because the trial court did not consider the Smith factors in precluding the photos, had the issue been raised on appeal, the result would have been different.

---

[38] *State v. Deng*, supra.

Therefore, Deng asks this court to grant his petition and reverse his conviction.

Submitted this 23rd day of July, 2018, by:


_____/s/_____
Natalee Segal

E-filed this 23rd day of July, 2018, to:

Clerk of the Court, Maricopa County Superior Court

Rule 32 Management Unit, Maricopa County Superior Court

Maricopa County Attorney's Office—Appeals/PCR Unit.

Exhibit  Six

Tony Deng #304373
Petitioner/Defendant
ASPC-Eyman, SMU-I
P. O. Box 4000
Florence, Az. 85132

## Supreme Court of Arizona

| | |
|---|---|
| State of Arizona<br>　　　　Respondent, | Arizona Supreme Court<br>NO. CR-19-0313-PR<br>Court of Appeals, Division one |
| V. | NO. 1 CA-CR 18-0893 PRPC<br>Maricopa County Superior Court |
| Tony Deng<br>　　　petitioner. | NO. CR2011-153034-001 |
| | Petition For Review |

Pursuant to rule 31.19(a) and 32.9(g) of the Ariz. R. Crim. Proc., Petitioner, Tony Deng, acting under pro se, requests this court review the decision of the court of appeals, entered on 8/6/2019, granting review but denying relief, and its order denying petitioner's Motion for Reconsideration entered on 9/23/2019. Review should be granted because the court of appeals committed an error by making a decision without presenting factual findings on which its decision was based in violation of federal civil procedure rule 52(a) and local rule 3.7(c) and the due process of law. Furthermore, since the COA did not conduct a meaningful review by making factual findings on each issue raised in the petition, Deng also requests this court review the decision of the PCR reviewing court, entered on

11/13/2018, denying petitioner's Post-Conviction relief, pursuant to A.R.S. § 13-4231 et seq.. These issues are of great statewide importance because they have never been addressed by published opinions in Arizona.

## I. Issues Presented for Review.

A. The appellate court, in its memorandum decision, without making any factual findings, without addressing and analyzing the issues, contentions and reasonings raised in the petition, denied relief simply stating that "We find that petitioner has not established an abuse of discretion." Did the appellate court's ruling violate the requirements of federal civil procedure rule 52(a) and local rule 3.7(c) — findings of fact and conclusion of law?

B. The appellate court did not make a factual determination in this case and its decision provided no information for petitioner to understand the rationale of its ruling and no information for him to effectively prepare his defense in challenging the ruling. Did the appellate court's conclusion violate petitioner's due process right?

## II. List of additional issues presented to, but not decided by, Court of appeals and which may need to be decided if review is granted.

C. Did the PCR reviewing Court err by ruling that trial counsel was not ineffective for failing to timely disclose the photos and by stating, based entirely on assumption that there is no reasonable probability that the results would have been different even if the photographs had been admitted?

2 of 17

D. Did the PCR reviewing court abuse its discretion by ruling that photographs for demonstrative purpose of other young girls were unnecessary because the defense expert was allowed to testify regarding to what the photos showed?

E. Did the PCR reviewing court abuse its discretion by ruling that appellate counsel was not ineffective for failing to raise the photo issue on appeal and by stating based on assumption, that it would not have changed the outcome by any stretch of any imagination?

F. Did the PCR reviewing court abused its discretion by ruling that trial counsel was not ineffective for failing to request an evidentiary hearing and by stating that there is no legitimate basis to preclude defendant's statement's made in the telephone call and the recording of that call?

## III. Statement of Material facts.

A jury found petitioner guilty of ten counts of sexual conduct with a minor, class two felonies and one count of sexual abuse a class three felony. Both were found to be dangerous crime against children. Petitioner was sentenced to life in prison. The facts relevant to the issues presented are as follows. MM, the victim, told the police that she had been raped for multiple years and she testified the same in trial. (see trial transcript 7/2/2015 pg. 78, line 6-11) After the police interview MM, she was examined by a forensic nurse at child-help center, when she was 16-year-old. (RT 7/2/2015, 40) The examiner took pictures of the interior of MM's vagina, one of which was admitted into evidence at trial (RT 7/6/2015, 59) The pictures showed no sign of any penetrating trauma to MM's vagina. In other words, there was no physical corroboration to MM's claim. According to the

state's expert, the lack of injury to MM's vagina despite regular sex with an adult over several years was not uncommon. (RT 6/30/2015, 117)

Petitioner called Dr. Hariton, an expert in obstetrics and gynecology. Dr. Hariton disagreed with the state's expert. Hariton opined that given the frequency of penetration described by MM, he would expect to see "transections" and "deep notches" to the vagina (RT 7/6/2015, 43, 45) Hariton could demonstrate the correctness of his opinion with two photos of young girls MM's age - one that had never been penetrated and another who had experienced multiple episodes of penetrative sex. The photo comparison showed the expected injuries and non-injuries in each scenario, (RT 7/6/2015, 58) which corroborated the defense expert's opinion. The state objected to the admission of the photos and their publication to the jury as demonstrative evidence because the defense attorney did not disclose them timely. (RT 7/6/2015, 49) The court suppressed the photos as a sanction for defense attorney's failure to disclose them. (RT 7/6/15, 51)

Prior to trial, petitioner filed a motion to suppress a confrontation call in which MM was acting as state's agent for the purpose of obtaining a confession from petitioner for the police. (motion was filed on 9/13/2013) Petitioner argued that his statements were involuntary because they were induced by a state agent through impermissible trickery and deception. The trial court denied the motion stating that "... the victim engaged in trickery at the behest of the state apparently, but that does not amount to coercion (see state v. Deng NO. 1 CA-CR 15-0638, 2/9/2017. pg. 5) Petitioner's trial counsel never requested a voluntariness or evidentiary hearing to prove that the victim was state's agent and she tricked defendant into believe that he could speak freely without consequences. Subsequen represented by a new counsel, petitioner filed a second motion to suppress the confrontation call based on new identified violations arguing that the state violated the 4th Amendment by using the victim/caller as an agent or instrument during the confrontation call to search for incriminating testimonial evidence and by intercepting petitioner's private

Cellphone line using an electronic device without a warrant which invoked 4th Amendment and federal law protections. (see motion filed on 6/2/2014) The oral argument and evidentiary hearing for this motion were summarily denied by the trial court. (see minute entry 3/16/2015) As a result, petitioner never had an evidentiary hearing to produce the facts and evidence to establish his claim.

petitioner was convicted and he timely appealed. On appeal, the appellate court rejected the facts asserted by petitioner because they were not evidence produced by an evidentiary hearing and the Court emphasized on the fact that no evidentiary hearing was requested or held on the motion to Suppress, the source for the observation that any "trickery" in the Call was "at the behest of the State" is unclear on appeal. (see State v. Deng, pg. 2, 5) Nonetheless, the appellate court did not address or decide the "trickery" issue nor whether state violated the 4th Amendment by using the victim as an agent or instrument for the purpose of searching and seizing incriminating testimonial evidence. petitioner's conviction was affirmed on 2/9/2017 and he timely filed for post-conviction relief which was denied on 11/13/2018. Petitioner then asked court of appeals to review trial court's PCR ruling, arguing that trial counsel was ineffective for failing to timely disclose the photo that corroborated her defense resulted in preclusion of the photos, and that PCR reviewing court abused its discretion making a ruling based on assumption that the photo comparison would not have changed the outcome even if they were admitted. petitioner also argued that the PCR reviewing court abused its discretion by ruling that trial counsel was not ineffective for failing to request a voluntariness or an evidentiary hearing and by stating that there is no legitimate basis to preclude defendant's statements and the recording of the confrontation Call. Petitioner reasoned that counsel's failure to request a hearing not only deprived him an opportunity to develop evidence, but also deprived him of his entitlement to procedural right under Ariz. R. Crim. P 32.8 (a). The COA granted review but denied relief simply stated that "we find that petitioner has not established an abuse of discretion," without presenting any findings of fact on which its ruling relied. (see COA's decision, 8/6/19) Petitioner's motion for reconsideration was also denied without reasons on 9/23/2019.

## IV. Reasons Why This Court Should Grant Review.

This case involves several novel issues of great statewide importance. First, it presents an issue that the appellate court committed an error by making a ruling that does not conform to the requirements of civil and criminal procedures and due process of law, which severely impaired petitioner's ability to challenge the ruling in this court because the appellate ruling provided no factual findings regarding to the rationale of its decision. Second, since the COA did not make any findings of fact by thoroughly examining or analyzing the reasoning of each issue in the petition, it failed to recognize many constitutional violations presented in this case. As a result, the issues raised in the petition and motion for reconsideration have not been addressed or decided by COA while review was granted. Thus this court should consider and decide the issues raised in the petition. See Ariz. R. Crim. Proc. 31.17(i)(3). As a matter of first impression, and for the purpose of determining whether an evidentiary hearing was necessary in this case, this court should address and decide whether or not petitioner's statements, made to a state agent during an intercepted phone call, were voluntarily given by consider the fact that his statements were induced by state's agent through trickery, deception and false promise of privacy. Third, this case presented another issue of first impression, which has been overlooked or ignored by all lower courts, whether state's action violated the 4th Amendment by using a private person (caller/victim) as an agent or instrument to conduct search for testimonial evidence and to assist the police on intercepting a private cellphone line using an electronic device for the purpose of circumventing the 4th Amendment warrant requirement. To disguise this warrantless governmental search and seizure, the state conveniently called it a "Confrontation Call." There is no Arizona decision controls this point of law because the facts of State v. Allgood and State v. Stanley are distinguishable from this case. The appellate court, in its previous opinion, misapplied Allgood and Stanley to this case because Allgood and Stanley did not even raise an issue involving governmental interception of private cellphone line using an electronic device provide

by the state and no governmental search and seizure were mentioned in those cases. (see
state v. Deng, and supplemental brief filed 5/1/2017) Petitioner has never been given an opportunity
to produce evidence, Via an evidentiary hearing, to prove these claims due to trial counsel's failure
to request the hearing and due to trial court's error in denying the need for this hearing. Finally,
this case also presented an issue regarding the PCR reviewing court abused its discretion by
making a ruling based entirely on assumption and speculations and failure to recognize obvious
constitutional violations. Pursuant to Ariz. R. Crim. Proc. 31.21 (d)(1)(c), it is imperative that
this court grant review.

A. The court of appeals abused its discretion because it granted review but did not
conduct a meaningful review and gave an opinion that does not meet the requirements
of federal civil procedure rule 52 (a) and local rule 3.7 (c).

Federal civil procedure rule 52 (a): findings and conclusions, provides, in pertient part, that
"... the court must find the facts specially and state its conclusion of law separately. The
findings and conclusion may be stated on the record ... or may appear in an opinion or a
memorandum of decision filed by the court ..." Local rule 3.7 (c) also requires that the
losing party to be informed of the judge's proposed findings and conclusions after the
court has announced its decision. In this case, the appellate court did not address
or discuss any of the contentions and reasonings in the petition. No factual findings were
made regarding to the rationale of appellate court's ruling. In fact, the court didn't even
mention the two supplemental citations of legal authority submitted by petitioner. Moreover
if a petitioner has the burden to show that his claims are supported by facts and
authorities, which he did in this case, then the court should bear the responsibility
and duty to conduct a meaningful review by addressing and analyzing all facts,
reasonings and authorities presented, and make findings of fact to support the rationale

of its conclusion. In this case, the appellate court simply concluded that "We find that petitioner has not established an abuse of discretion," without indicating any facts specially about the rationale of its decision in violation of rule 52(a) and rule 3.7(c).

**B.** The appellate court's without-factual-findings decision violated petitioner's due process right because it provided no information about the basis of its ruling and it substantially undermined petitioner's ability to challenge its decision in this court.

The basic requirement of due process is the right to notice and opportunity to be heard "at a meaningful time and in a meaningful manner." U.S. Const. Amendment 14. An appellate review proceeding is a meaningful time for a petitioner to be heard about his issues and contentions. If review is granted, the court should, in a meaningful manner, inform the petitioner that why his claims have or not have merits supported by findings of fact. "due process generally requires the decision maker to state the reasons for his determination and indicate the evidence he relied on ..." See Goldberg v. Kelly, 397 U.S. 254, 268-69 90 S. Ct. 1011, 25 L. Ed 2d 287 (1970). In this case, the court of appeals stated the reason for its determination but did not indicate the evidence it relied on. Although the COA cited two case laws in support of its decision; State v. Gutierrez, 229 Ariz. 573 (2012) in which the COA summarily denied review thus it does not apply to the situation of this case. The other case was State v. Poblete, 227 Ariz. 537 (2011). Poblete's situation was similar to this case The appellate court granted review but denied relief. However, in Poblete, the COA gave the petitioner an opinion that is four pages long and it addressed and analyzed every issue raised in the petition. In this case, contrary to Poblete, the COA's opinion was only two short paragraphs which included one simple statement of reason: "we find that petitioner has not established an abuse of discretion," without presenting any findings of fact. That's vague and substantively inadequate. Petitioner in this case has not been given

the same adequate and meaningful review that Poblete had been given thus the COA also erred by citing Poblete to support its reasoning in this case. As a result of this inadequate ruling, the COA failed to offer evidence to show that petitioner has failed to establish his claim and failed to provide clear notice to petitioner as to the basis of its statement of reason. By not providing factual findings and adequate explanations for its statement of reason, the COA deprived petitioner an opportunity to understand its reasoning and made challenging the appellate decision in this case unreasonably difficult in violation of petitioner's due process right. Since the COA did not conduct a constitationally adequate and meaningful review, petitioner requests this court to address and decide the following issues, especially the trickery issue.

C. The PCR reviewing court abused its discretion by ruling that trial counsel was not ineffective for failing to timely disclose the photos and by stating, based entirely on assumption, that there is no reasonable probability that the results would have been different even if the photographs had been admitted.

According to record, the trial court precluded the photographs solely because defense counsel did not disclose them timely. (see trial transcript, 7/6/2015, Pg. 49, 51, 52) Arizona supreme court has held that a defense counsel's failure to perform a known legal obligation (such as timely disclosur of evidence that corroborates his defense) has committed willful misconduct. See State v. Killean 185 Ariz. 270, 271, 915 P.2d 1225, 1226 (1996); If evidence that corroborates a defense is precluded due to defense attorney's failure to timely disclose it, the defense attorney is ineffective. See Chambers v. Mississippi, 410 U.S. 284, 302 93 S.ct. 1038, 1059 (1973). In this case, there is no dispute that defense counsel has committed an error because it was supported by record and acknowledged by the  trial   court. This error is below professional standard which renders the trial counsel ineffective under Chambers v. Mississipi. However, the PCR reviewing court ruled that there is no legal prejudice against defendant

based solely on the assumption that counsel's error would not have changed the outcome of the trial. The PCR reviewing court abused its discretion by assuming. To prevail an ineffective assistance of counsel claim, first begin by determining whether prejudice exists. See Strickland v. Washington, 466 U.S. (1984); State v. Nash, 143 Ariz. 392, 397, 694 P. 2d 222, 227 (1985). Prejudice is shown if the defendant establishes with reasonable probability that the verdict might have been affected by alleged error of counsel. See State v. Walton, 157 Ariz. 581, 592, 269 P. 2d 1017, 1038 (1989); Affd, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990). In this case, the purpose of the photos was to corroborate the defense's strategy and to offer a visual comparison for the jury to better understand the physical differences between a sexually active vagina and a non-sexually active vagina. The photo comparison combined with the expert's testimonies would have provided a clear visual image and a logical explanation which could have substantially undermind the state's expert and the victim's critical testimonies and could probably have raised reasonable doubt in the minds of the jury, resulting in a different outcome by beating at least some of the charges. It was erroneous and prejudicial for the court to deny this reasonable probability. Any reasonable or logical person would agree that a picture is much more persuasive and convincing than plain words. Without the aid of the photo comparison, defense expert's presentation was impaired and did not reach its full intended persuasiveness. The PCR court abused its discretion by assuming that the photo comparison would not have affected the verdict. The question is how could the PCR court have known or predicted how the jury would have reacted had they seen the photo comparison? The logical answer is no. There is no way the PCR court could make this kind of prediction. Ultimately, the trial counsel in this case was ineffective under Killean and Chambers because she failed to perform a legal obligation — disclose evidence that corroborated her defense timely. The PCR court abused its discretion by denying the reasonable probability that the photo comparison could have created reasonable doubt, and by making its ruling based on assumptions that the photo comparison would not have changed the outcome of the trial.

**D.** The PCR reviewing court abused its discretion by ruling that photographs for demonstrative purpose of other young girls were unnecessary because the defense medical expert was allowed to testify regarding to what the photos showed.

The PCR court is not a medical expert and it should not decide what is necessary or what is not for defense expert to conduct his presentation as long as the material used meets the criteria of rule of evidence. In state v. Lindsey, 149 Ariz. 472. 720p. 2d 73 (1986), the court held that admissibility of expert testimony in sexual abuse cases is governed by the same rules of evidence applicable to all expert opinion testimony. Id at 475, 720p. 2d at 76. Under rules 702, 703 and 403, Expert testimony must (1) come from a qualified expert, (2) be reliable, (3) aid the triers of fact in evaluating and understanding matters not within their common experience, and (4) have probative value that outweighs its prejudicial effect. See state v. Chapple, 135 Ariz. 281. 291. 660p. 2d 1208. 1218 (1983). In this case, the photos defense expert attempted to offer met each and everyone of the four criteria above and they were part of his presentation intended to aid the jury, with a clear visual image, in evaluating and understanding the physical difference between a sexually active vagina and a non-sexually active vagina, which is not within their common experience. The reliability and probative value of the photo comparison outweighed its potential prejudicial effects if any. Without thoroughly examining these factor under rules 702, 703 and 403, the PCR court abused its discretion by ruling that the photos were unnecessary for the defense expert's presentation.

**E.** The PCR reviewing court abused its discretion by ruling that appellate counsel was not ineffective for failing to raise the photo issue on appeal and by stating that it would not have changed the outcome by any stretch of any imagination.

Petitioner objected to the preclusion of the photos during trial, preserving the issue on appeal. Appellate counsel was ineffective because he failed to recognize and raise this obvious issue on appeal. See

*Mason v. Hanks,* 97 F. 3d 887, 894 (7th cir 1996); also *State v. Medina,* 244 Ariz. 361, 364. 418 p. 3d 1134, 1137 (App 2018). Appellate counsel should have raised the photo preclusion issue instead of the excuse of the non-English speaking jurors issue on appeal. (See State v. Deng, opening brief, pg. 26-40) "in order for appellate counsel to be considered ineffective, it must be shown that counsel neglected issues that were clearly stronger than the arguments which were raised on appeal." See *Blake v. United states,* 723 F 3d 870. 888 (7th cir 2013) In this case, the defense counsel didn't even object to excusing the non-English speaking jurors and this issue was not preserved for appeal. Even if the appellate counsel could prove it was an error, it would have been difficult to prove prejudice against defendant because there was no information to base on to determine whether those jurors were bias or unbias. This was not a meritorious claim. To the contrary, the preclusion of the photo issue was properly preserved for appeal and there is a reasonable probability that the photos could have affected the outcome of the trial because they corroborated the defense theory and the photos were part of the defense expert's presentation intended to aid the jury in evaluating and understanding a matter that is not within their common experience. Clearly, the photo issue was much stronger than the juror issue. Petitioner's appeal would have had, with reasonable probability, a different outcome if the appellate counsel adequately raised and argued the photo issue instead of the juror issue. See *United states v. Dovalina,* 262 F. 3d 472, 474-75 (5th cir 2001) For these reasons, appellate counsel was ineffective for failing to recognize and raise an obvious and stronger issue on appeal and PCR court abused its discretion by ruling that the photos would not have changed the outcome based only on assumptions.

**F.** The PCR reviewing court abused its discretion by ruling that trial counsel was not ineffective for failing to request an evidentiary hearing and by stating that there is no legitimate basis to preclude defendant's statements made in the telephone call and the recording of that call.

The PCR court assumed that there is no legitimate basis to preclude defendant's statements made in the phone call and the recording of that call because it has not examined all the factors surrounding the statements and the recording in this case. As a result, it failed to recognize the following **issues**:

(1) The PCR court failed to recognize that there is an issue involving the government inducing the defendant to confess... through impermissible trickery and false promise of privacy. Prior to trial, petitioner filed a motion to suppress the confrontation call arguing that his confession was involuntary because it was induced by a state agent through trickery and deception. The trial court denied the motion stating that "the victim engaged in trickery at the behest of the state apparently, but that does not amount to coercion." (see Material facts, 4) Clearly, in this case, there is no factual dispute that the victim was state's agent and she engaged in trickery at the behest of the state because even the trial court acknowledged it. However, the trial court summarily ruled, without holding an evidentiary fact finding hearing, that trickery does not amount to coercion and defendant's will was not overborn. The first question is does trickery amount to coercion. The answer is yes. In state of Illinois v. Lloyd Perkins, December 13, 1989, the U.S. supreme court explained that "... the court's definition of when a suspect has been coerced to confess, which has been evolved over time, encompasses more than mere physical force, it includes acts of psychological deception and trickery committed by the government in obtaining incriminating statements..." See also U.S. v. Mitchell, 763 F. supp. 1262 (1991) "in which the court held that "even if we had found that the interrogation was not custodial and that Miranda warning were not required, we would nevertheless be required to suppress the statements made by ... if the statements were procured through impermissible trickery and deception..." Under these principles, it is abundantly clear that trickery does amount to coercion and the trial court was wrong. The second question is whether defendant's will was overborn by trickery? The evidence of psychological deception and trickery committed by the police in obtaining a confession in this case is overwhelming. In U.S. v. Sacco, 884 F supp 734 (1995), the court has established that "whether a claim of voluntariness based on trickery and deception can be sustained required a showing that government agents affirmatively misled the defendant as to the nature of the investigation and that their misrepresentation "materially induced the defendant[s] to make incriminating statements." See also U.S. v. Mitchell, supra, at 100 ; U.S. v. Mast, supra, at 750. The facts of this case indicated that the state agent MM affirmatively and deliberately misled the defendant as to the nature of the phone conversation (a secret interrogation for obtaining a confession) by creating a false impression that she was

13 of 17

having relationship problem with her boyfriend, (see call transcript, pg. 3, line 5-23) and by pretending that she was having emotional breakdowns, that she needed to talk and confide in defendant over the phone right then and there. (see Call transcript, pg. 3-6) Far worse, state agent MM misled defendant to believe that the conversation was private by assuring defendant that she was at home alone with the doors locked, implying (false promising) that no third party could overhear the conversation. (see Call transcript, pg. 1, 5, 6 and 10) All the while during the phone call, MM was sitting right next to the police detective who was coaching her and monitoring and recording defendant's free speech with an intent to use it as a confession. (see trial transcript 6/30/ 2015, pg. 49, line 2-5) Thus the answer to the second question is also yes. Petitioner's will was overborn by state agent MM's trickery and false promise of privacy because MM's misrepresentation led petitioner to believe that he was offering MM emotional support, that his conversation was private which could not be overheard by any third party, and that he could speak freely without consequences. Petitioner's will was overborn because his decision to speak was not the product of free will, rather it was manipulated and coerced by state agent MM's trickery and false promise of privacy. The appellate court could not decide on this issue because no evidentiary hearing was held to establish these facts. The court stated that "...the source for the observation that any 'trickery' in the call was 'at the behest of the state' is unclear on appeal." (see state v. Deng NO. 1 CA-CR 15-0638, 2/9/2017, 5) "When a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." See Lego v. Twomey, 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972). In this case, no reliable and clear-cut determination was made on the voluntariness of petitioner's confession because no voluntariness hearing or evidentiary hearing was ever held. All the facts and authorities mentioned above, especially defendant's state of mind during the phone call, have not been brought up to be considered and analyzed by the court due to trial counsel's failure to request the hearing and due the trial court's error in denying the the need for the hearing. For these reasons, the PCR court abused its discretion by ruling that trial counse was not ineffective and by stating that there was no legitimate basis to preclude defendant's statements.

14 of 17

(2) The PCR reviewing court failed to recognize there was a 4th Amendment Violation in this case because it failed to recognize the police knowingly used a private person as an agent or instrument to conduct search by intercepting a private cellphone line using an electronic device for purpose of Seizing incriminating testimonial evidence.

The PCR court assumed that there is no legitimate basis to preclude the recording of the confrontation Call because it did not examine all factors surrounding the interception in this case. As a result, it failed to recognize the interception of "confrontation Call" was but a warrantless governmental electronic search and seizure in disguise. The U.S. supreme court has held that both wiretapping and electronic surveillance through a "bug" or other device are now covered by the 4th Amendment purpose. See Katz v. United states, 389 U.S. (1967); and Berger v. New York, 388 U.S. 41 875. Ct. 1873. 18L. Ed. 2d 1040. In this case, the interception was done by the state Using an electronic device provided by the state. (see trial transcript, 6/30/2015, pg. 28, line 14-20) The Caller MM was simply an instrument used by the police as a bridge into defendant's Cell-phone line. Thus the "confrontation Call" was but a warrantless governmental electronic search and Seizure. By not examining all the facts surrounding the interception in this case, the PCR court also failed to recognize that the very act of the police, using a private person as an agent or as an instrument for the purpose of searching and seizing incriminating evidence, is a 4th Amendment violation. See state v. Estrada, 209 Ariz. 100 P. 3d 452 (2004) (holding that "even a wrongful search and seizure by a private citizen does not violate the 4th Amendment unless the citizen is acting as an agent of the state."); also See U.S. v. Walther, 652 F. 2d 788, 792-93 (9th cir 1981) (held that "police Cannot acquiesce to or indirectly encourage a private person's search for incriminating evidence without implicating the 4th Amendment."); Coolidge v. New Hampshire, 403 U.S. 443, 487. 91 S. ct. 2022, 2049 (1971) (when private citizen conducts search or seizure acting as instrument or agent of the state Fourth Amendment concerns are implicated); and U.S. v. Davis, 482 F. 2d 893. 904 (9th cir 1973) ("the government may not encourage conduct by private person that the government itself may not do."). Government's actions are bound by these principles. In this case, it is abundantly clear that the police violated the 4th Amendment by using a private person as an agent or an instrument to do what the police themselves cannot do - tapping a private cellphone or cellphone line for the purpose of seizing incriminating testimonial evidence

without a warrant. Had trial counsel requested an evidentiary hearing, these facts would have been developed into usable evidence to prove that petitioner's statements were involuntary as mentioned earlier and the "confrontation call" in this case was an illegal warrantless governmental search and seizure in violation of the 4th Amendment warrant requirement. For these reasons, the PCR Court committed an error by ruling that trial counsel was not ineffective for failing to request an evidentiary hearing and by stating that there is no legitimate basis to preclude the recording.

(3) The PCR Court also failed to recognize state's action in this case violated the private affairs clause of the Arizona Constitution art II § 8.

Petitioner raised and argued that the state violated the Ariz. Const. art II § 8 on his direct appeal supplemental brief. (filed on 5/1/2017) This issue was denied without being addressed and analyzed. Although PCR counsel did not raise this issue on post-conviction relief, but since the PCR Court stated that there is no legitimate basis to preclude the recording, petitioner is entitled to an opportunity to bring this issue up before this court for review. The PCR Court assumed that there is no legitimate basis to preclude the recording of the confrontation call because it failed to recognize its true nature, failed to recognize the whole police operation, Confrontation Call or Consent interception, however it is labeled, does not change the fact that it was a government action because the caller MM was acting as state's agent during the call for the purpose of searching and seizing evidence for the police. Thus, state violated the "private affairs" clause of Ariz. Const. art II § 8 when it intercepted petitioner's private cellphone line, where he conducted his private conversation — private affair — without authority of warrant. See State v. Mixton, 2019 WL 3406661 (Ariz. App. July 29, 2019) This violation could have been easily proved had trial counsel requested an evidentiary hearing to develop these facts. For these reasons, the PCR Court abused its discretion by ruling that trial counsel was not ineffective for failing request an hearing and by stating that there is no legitimate basis to preclude the recording without examining all facts surrounding the recording

## V. Conclusion

16 of 17

For the foregoing reasons, this court should grant review and decide the the issues of first impression and of great statewide importance presented in this case.

Respectfully submitted this 3rd day of January, 2019

Tony Deng
Petitioner in pro se

17 of 17

Exhibit  Seven

NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Respondent,*

*v.*

TONY DENG, *Petitioner.*

No. 1 CA-CR 18-0893 PRPC
FILED 8-6-2019

---

Petition for Review from the Superior Court in Maricopa County
No. CR2011-153034-001
The Honorable Stephen M. Hopkins, Judge

**REVIEW GRANTED; RELIEF DENIED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Daniel Strange
*Counsel for Respondent*

Tony Deng, Florence
*Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop, Judge Kent E. Cattani, and Judge
Diane M. Johnsen delivered the decision of the Court.

---

STATE v. DENG
Decision of the Court

**PER CURIAM:**

¶1            Petitioner Tony Deng seeks review of the superior court's order denying his petition for post-conviction relief, filed pursuant to Arizona Rule of Criminal Procedure 32.1.  This is petitioner's first petition.

¶2            Absent an abuse of discretion or error of law, this court will not disturb a superior court's ruling on a petition for post-conviction relief.  *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012).  It is petitioner's burden to show that the superior court abused its discretion by denying the petition for post-conviction relief.  *See State v. Poblete*, 227 Ariz. 537, 538, ¶ 1 (App. 2011) (petitioner has burden of establishing abuse of discretion on review).

¶3            We have reviewed the record in this matter, the superior court's order denying the petition for post-conviction relief, and the petition for review.  We find that petitioner has not established an abuse of discretion.

¶4            We grant review but deny relief.

Exhibit Eight

Appellant, Tony Deng #304373
Aspc-Eyman, Smu I
P.O. Box 4000
Florence, Az. 85132

<u>Arizona Court of Appeals</u>
<u>Division   One</u>

State of Arizona
     Appellee,
     V.
TONY DENG
     Appellant,

Court of Appeals
NO. <u>I CA - CR 15-0638</u>
Maricopa County Superior Court
NO. <u>CR 2011 - 153034 - 001 DT</u>

<u>Motion for Reconsideration</u>
<u>and supplemental brief</u>

   Comes now, the appellant Tony Deng, acting under pro per, respectfully submitting this motion requesting the court to reconsider its decision regarding appellant's opening brief and his claims, filed on 2/9/2017, due to many contentions raised by appellant in support of his claims have not been clearly addressed and discussed. Also, appellant is submitting a supplemental brief which included additional facts to support his Constitutional claims along with this motion. This motion and supplemental brief are supported by the memorandum points and authorities presented in this pleading.

   Respectfully submitted this <u>1st</u> day of <u>May</u>, 2017.

1

TONY DENG
Appellant in pro per

I. <u>Issues have not been addressed and decided by the Court</u>

(1) Whether or not the Caller in this case was functioning as state's agent for the purpose of searching for incriminating evidence?

(2) Whether or not the Estrada two-part test was satisfied?

(3) Whether or not the Caller's consent for the interception was valid and constitutional based on the fact that she was functioning as state's agent for the purpose of state?

(4) Does the electronic interception in this case, conducted by the state using a private citizen as an instrument for the purpose of discovering incriminating evidence, fall within the meaning of Search and Seizure under the 4th Amendment?

(5) Whether or not the electronic interception in this case, based on the fact that the state was involved in a significant degree by providing facility, equipement for the interception and the fact that the detective was the one who actually installed and activated the tapping device during the interception, constitute a government action or governmental interception?

(6) Whether or not the intercepted call, conducted by the police and their agents, for the purpose of eliciting a confession to secure prosecution, constitute a police interrogation?

(7) Whether or not a police interrogation constitute an adversarial proceeding?

(8) Does the subscriber of a Cellphone line has the right to expect and to know that his private Cellphone line will remain free from warrantless governmental intrusion?

(9) Whether or not the fact that appellant exhibited an expectation of privacy and took steps to protect that privacy during the call justified his right to privacy?

(10) Does a phone call, occurred on a Cellphone line paid for by the appellant, fall within the definition of "private affair" under the <u>Ariz. const. art II § 8</u>?

2

⑪ Whether or not governmental interceptions without a warrant violate Title III and the 4th Amendment ?

⑫ Whether or not appellant's Constitutional right to privacy in this case could be vicariously waived by anyone without his consent ?

## II. Reasons for Reconsideration

The list above summarized the assertions raised by appellant in supporting of his constitutional claims through out his opening brief and his previous " motion to reconsider based on new identified violations of law." These issues, however, have not been directly addressed and discussed, much less decided. Appellate believes that every criminal case needs to be analyzed and decided on a case-by-case basis, especially this case due to its ~~case~~ unique circumstances pointed out by appellant. The call and the interception are two separate matters in this case and appellant's assertions must be addressed and discussed before deciding whether or not constitutional claims meet their requirements. The Court should not generally apply the per se rule of Allgood and Stanley in this case because none of these contentions were raised in Allgood and Stanley in ~~so~~ support of their claims.

Labeling the intercepted call as a " Confrontation Call " in this case is inaccurate and misleading because it created a misconception that the call was a confrontation between two private citizens, which under normal circumstances, acting on their own initiative, citizens making a confrontational phone call and recording that call with their own equipment, on a phone line they paid for does not violate any federal law, state law and U.S. Constitution. See 18 U.S.C. § 2510 (5)(a)(i) ; A.R.S. § 13-3012(9) ; and U.S. Const. 4th Amend.

But unfortunately, that's not the case here. In this case, unlike Allgood and Stanley, the victim acted as state's agent and instrument, deliberately creating emotional stress, interrogated the appellant and persuaded him to

3

making incriminating responses. To go one step further, she assisted the police to install a tapping device secretly onto a cellphone line that was paid for by the appellant. (even the victim's cellphone to which the tapping device was attached was also paid for by appellant under the same service plan. The electronic tapping device was provided by the state).

The state's action coupled with the caller's conduct as state agent had completely changed the nature of this call and the nature of this interception. At this point, we are no longer dealing with a "general conversation" or a "confrontation" between two private citizens, rather we are dealing with a police interrogation performed by a state agent. The interception was no longer a private interception that is within the limits of 18 U.S.C. § 2510(5)(a)(i), rather it was a governmental secret interception which is governed by Title III, 4th Amendment and Kate v. United States, 389 U.S. 347. 88 S. ct. (1967).

Because the consenting party in this case was a state agent, which was an equivalent of the state giving itself consent to conduct an secret electronic interception without a warrant. For this reason Allgood and Stanley no longer applicable in this case. Furthermore, there is one more crucial factor which distinguishes this case from Allgood and Stanley in terms of expectation of privacy and this court must take into consideration when making its decision. Allgood and Stanley did not expect privacy or take steps to protect their privacy during the intercepted call. In contrast, appellate in this case, not only exhibited an expectation for privacy, he also took steps to ensure that the caller was in a place where his conversation could not be overheard by a third party (see opening brief pg. 18-19). This factor alone set this case apart from the rest and this factor alone should have been sufficient enough to invoke the protection of Title III; 4th Amendment and Ariz. Const. art. II § 8. This court should not have applied the general per se rule of Allgood and Stanley. This court should have taken into consideration

4

the unique circumstances surrounding the Call and the interception in this Case. The per se rule of Allgood and Stanley basically suggests that the non-Consenting party to an intercepted Communication is not entitled to Constitutional right to privacy whatsoever, and the government and its agents Can just take away or Vicariously Waive the non-Consenting party's Constitutional right without his or her Consent and knowledge or Warrant. The governmental interception in this Case has produced a same end result as a Warrantless Wiretap — the privacy of the non-Consenting party to an intercepted Communication was Violated. These governmental practices completely Contradict the principle and Value of the 4th Amendment. Worse of all, this Can happen to anyone at anytime. This Court should not allow the government to Violate any Citizen's Constitutional right to privacy in this fashion.

## III. Supplemental brief

A. The interception in this Case Created a 4th Amendment Violation because the Caller was functioning as state's agent performing the search for evidence.

Applying the two-part test of State v. Estrada, 209 Ariz.100p.3d.452(2004) to determine whether or not a private person is acting as state's agent 1). the degree of government participation in the seizure and 2). whether the private party Performing the seizure intended to assist law enforcement as opposed to furthering her own ends. In this Case, the government's significant degree of participation was obvious. The state provided all necessary means for the interception. In fact, detective Contreras was the one actually installed and activated the tapping device in the Caller's Cellphone. The Caller's intent was also obvious. She could have confronted the appellant at any time but she chose to work with and assist the police in performing the search and seizure through electronic

5

monitoring and recording for the purpose of seizing incriminating evidence for prosecution. For this reason the two-part test is satisfied in this case and the Caller was unquestionable a state agent." "If the private actor is functioning as the government that private actor becomes the state for purpose of state action." <u>Terry v. Adams</u>, 354 U.S. 461 73 S. Ct. 809. 9L.Ed. (1953).

B. <u>This case meets all requirements of the 4th Amendment claim.</u>

"invocation of 4th Amendment protection required both finding of governmental conduct and unreasonable intrusion into privacy." <u>U.S. v. Miller</u>, 688 F. 2d 652 (9th Cir. 1982). Electronic interceptions for the purpose of discovering incriminating evidence constitute search and seizure under the 4th Amend. See <u>Kate v. United States</u>, 389 U.S. 347. 360. 88 S. Ct. 507. 19 L. Ed. 2d 576 (1967). In this case, there is overwhelming finding of governmental conduct and invasion of privacy by the government and its agents.

① <u>Government's conduct in this case Violated 4th Amendment.</u>

"even a wrongful search and seizure by a private citizen does not violate the 4th Amendment Unless the citizen is acting as an agent of the state." <u>State v. Estrada</u>, 209 Ariz. 100 P. 3d. 452 (2004); "police cannot acquiesce to or indirectly encourage a private person's search for incriminating evidence without implicating the 4th Amendment." <u>U.S. v. Walther</u>, 652 F. 2d 788. 792-93 (9th cir 1981); also See <u>U.S. v. Thurman Reed Jr.</u>, 15 F 3d 928 (1993). Applying these principles, in this case, it is very clear that the state violated the 4th Amendment by the very act of encouraging and using a private citizen as an agent and as an instrument to search and seize incriminating evidence through electronic tapping into a private cellphone line paid for by the appellant.

② <u>Unreasonable intrusion into appellant's private Cellphone line by the state</u>

State argued that the interception in this case was effected with the Caller's consent. But the state failed to mention that the Caller was state's agent at the time of interception. She was no longer a private Citizen and the interception was no longer a private interception because she had consented to assist the police in search for testimonial evidence as opposed to furthering her own ends. In fact, She was an extension of the state and her conduct should have been held to the same standard and requirement of a government agent. The only way in this case, the government and its agents could have Consent to conduct this type of electronic interception is through a warrant. See 18 U.S.C. § 2511 (1) (a, d) and § 2515, 2516 -18. But the government failed to do so. The Caller's consent in this case was but a deceptive tactic used by the state for the purpose of avoiding the 4th Amendment obligations and limitations to which the state is bound. "tactic for eliciting inculpatory statements must fall within the broad Constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness." Rogers v. Richmond, 365 U.S. 534. 541. 81 s. ct. 735. 739 (1961).

Because the so-Called "consenting party" was the government in this case, thus the "governmental consent" was over-reaching, unjust and unfair to the non-consenting party (appellant) and it should have been deemed invalid and unconstitutional. In Kate, the supreme Court held that an electronic device, used without trespass onto any given enclosure (there a telephone booth), was a search for which a 4th Amendment warrant was needed. And the court went on to say that 'wherever a man may be, he is entitled to know that he will remain free from unreasonable search and seizure' Id, at 359. 88 s. ct at 515. Applying the principle of Katz, in this case, the government violated appellant's expectation of privacy by over-stepping its bound, giving itself consent through an agent, without a warrant and tapped into appellant's private Cellphone line with an electronic device and intercepted his private

7

Communication for the purpose of discovering and seizing testimonial evidence. For this reason the governmental interception in this case was an invasion of appellant's 4th Amendment right to privacy and therefore falls under the ban of Katz.

(3) <u>Appellant had a reasonable expectation of privacy and took steps to protect it.</u>
If a speaker exhibits an expectation that he does not want his speech to be over-heard by a third party during a communication, then his expectation is protected by title III. See <u>18 U.S.C. § 2510(2)</u> and the 4th Amendment, as long as his expectation is reasonable. In this case, appellant not only had a legitimate expectation of privacy because he was talking on a Cellphone line that he subscribed to and paid for, he also made attempts to protect his privacy by making sure the caller was in a place where no one could hear his conversation. This factor justified his expectation which was one that Society willing to recognize as reasonable.

(4) <u>Appellant's constitutional right to privacy cannot be waived by anyone.</u>
"even where one party to a conversation consents, so long as the one speaking has not consent to have his speech transmitted to an 'uninvited ear' any arrangement which bring this about, falls under the ban of Katz and is an invasion of his 4th Amendment right, which cannot be waived by any other party to the conversation." <u>United States v. White</u>, 405 F. 2d 838 (7th cir) Cert granted, 394 U.S. 957. 89 S. Ct. 1305. 22 L. Ed. 2d 559 (1969). This fact pattern and rationale is applicable in this case. Unless appellant willingly, knowingly and intelligently give up his right, his constitutional right to privacy cannot be vicariously waived by anyone. Recording appellant's end of the conversation without his consent completely contradicts the principle of the 4th Amendment right to privacy. What good is Constitutional protection if it can be taken away from a citizen by the

8

government without the citizen's consent or warrant? The only reason White's decision ('1969) was over-turned in 1971 was because the court said Katz ('1967) was not retroactive. But that does not effect this case because as of oct 13, 2011, Katz was still a good law controlling warrantless governmental interception, which is what we are dealing with here in this case due to the fact that the "consenting party" was an extension of the state. Therefore the warrantless governmental interception in this case falls under the ban of Katz.

C. <u>The "Confrontation Call" in this case created a 6th Amendment Violation because the caller was acting as state's agent for purpose of eliciting a confession.</u>

The fact that the caller acted at the behest of the state for the purpose of eliciting a confession for prosecution had completely changed the nature of this phone call. It was no longer a "Confrontation" or "Casual Conversation" between two private citizens, rather it was an interrogation performed by a state agent.

①  <u>the phone call was a police interrogation.</u>

The controlling definition of interrogation was established in <u>Rhode Island v. Innis</u>, in which the supreme court concluded interrogation may take the form of express questioning or the functional equivalent. Id. at 446 U.S. 291 (1980). Innis further held that any statements or actions "that the police should know are reasonable likely to elicit an incriminating response from the suspect" constitute an interrogation. Id at 301. In this case, it was obvious that the caller was acting as state's agent for one purpose — elicit a confession for prosecution. She was not merely a listening post. She did much more. She deliberately manufactured false stories to stimulate a conversation. She created confusion and emotional stress to persuade appellant to make specific responses that were needed by the police. The questions were not routine or non-investigatory, instead they

9

were directly related to the crime under investigation and most importantly, the police knew having the Caller conduct herself in this fashion was likely to induce the appellant to make incriminating responses. For this reason the "Confrontation Call" in this case was no longer a private Confrontation but was unquestionable a police interrogation performed by an agent.

(2) <u>Police interrogation is an adversarial proceeding which enacts the right to counsel and it could begin even before an indictment.</u>

State argued through out its response that "the sixth Amendment does not attach during pre-indictment questioning." but state failed to mention the fact that the pre-arranged Call was not a routine or non-investigatory questioning, and that the Caller was an extension of state for the purpose of eliciting a confession for prosecution. This is a game changing factor which distinguishes this case from Allgood and Stanley. "When the process is focus on the accused and its purpose is to elicit a confession, our adversary system begins to operate — the right to counsel attaches." <u>Escobedo v. Illinois</u>, 378 U.S. 478. 84 S. Ct. 1758. 12L (1964) The supreme court, in Escobedo, made it very clear that the right to counsel attaches when the police are in their quest for Confession. In this case, at the time of the Call, the whole process had shifted its focus on the appellant and its purpose was to interrogate him and elicit a confession. In other words, the telephonic police interrogation in this case initiated an adversarial proceeding and appellant was entitled to the right to Counsel. In addition, adversarial proceedings can begin even before an indictment. See <u>Moore v. Illinois</u>, 434 U.S. 220, 228-29 (1977), in which the court held that a defendant has a right to counsel during any indentification procedure, including one-on-one identifications, once adversarial proceedings have begun even before an indictment. Also, the supreme court, in Escobedo, discussing the holding in <u>Messiah v. United States</u>, 377 U.S. 2d, 206 (1964) and built upon its protection by attaching the 6th Amendment right to a defendant before

he was formally indicted. It is clear that the right to counsel can attach before indictment once adversarial proceedings have begun. Further, "[A]pplication of 6th Amendment is limited to government action which occurs after the initiation of adverse criminal proceedings" *United states v. Marshank,* ~~(N. District)~~ 777 F. Supp. 1507, 1518 (N.D. Cal 1991). It is indisputable that the police telephonic interrogation including the interception in this case was a government action and the phone call was the initiation of adverse criminal proceeding because again, the government and its agents were in their quest for a confession. For this reason the Marshank test is satisfied and appellant was entitled to the right to counsel.

③ <u>The state "deliberately elicit" inculpatory statements from appellant and concealing the adversarial proceeding also created a 6th Amendment violation.</u>

In Henry, the supreme court, using Massiah's situation as reference, discussed the requirements for 6th Amendment claim said "this is not to read a 'custody' requirement, which is a prerequisite to the attachment of Miranda rights, into this branch of the sixth Amendment. Massiah was in no sense in custody at the time of his conversation with his codefendant, rather, we believe the fact of custody bears on whether the government "deliberately elicit" the incriminating statements from Henry." The court also further explained that "the government knowingly circumvents the defendant's right to counsel where it "deliberately elicit" inculpatory admissions, that is intentionally created a situation likely to induce the accused to make incriminating statements without the assistance of counsel." *U.S. V. Henry,* 447 U.S. 264 100 S.Ct. 2183 65L. Ed. 2d 115 (1980); also see *Kuhlman v. Wilson,* 477 U.S. 436 (1986). Applying this principle, in this case, the state intentionally created a situation, using a private person as an agent, pretending that she was having an emotional breakdown and that she couldn't eat, sleep and needed emotional support from appellant "right now" while appellant was busy at work. The state knew having

the caller to conduct herself in this fashion would create immense psychological stress upon the appellant. The state also knew that the pressure applied by the Caller was likely to induce the appellant to make incriminating responses. For this reason the court should find, in this case, the state circumvented appellant's 6th Amendment right by intentionally created a situation to apply psychological stress, which the state knew was likely to induce the appellant to make inculpatory statements, in addition to deliberately and knowingly concealing the fact that appellant was facing an adversarial proceeding during which he had a right to the assistance of counsel.

D. State violated the Ariz. Const. art II § 8 by disturbing appellant's private affair without authority of law — a warrant.

In State v. Allgood, 171 Ariz. 522 (1992), the court held that "Confrontation Call... did not violate the state constitution." This ruling was based on the interpretation that art II § 8 generally not applied beyond the home search context. To support this rationale, the court relied on mainly the opinion of Malmin v. State, 30 Ariz. 258. 261 p. 548. 549 (1926). However, this interpretation is completely inaccurate and contrary to the express terms of art II § 8, which speaks, not only in terms of home invasion, but also in terms of disturbance of private affairs. The plain words of this provision clearly command that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." No words or phrases in this provision even come close to implying "not applied beyond the home search context." The Arizona Supreme Court has viewed this provision to be more protective of a home than is the 4th Amendment. The court did not say "not applied beyond the home search context." See Allgood. According to art II §32., which states "The provisions of this constitution are mandatory, unless by express words they are declared to be otherwise." Like all other provisions of this constitution, the meaning and intent of art II § 8 are declared by

12

express words. The express words of art II § 8 firmly declared that "No person shall be disturbed in his private affairs ... without authority of law." Anything contrary to this, unless declared by express words, is a misinterpretation. In this case, a phone call, occurred on a private cellphone line, paid for by appellant, falls squarely under the definition of "private affair" which is protected by art II § 8. For this reason the state violated the express terms of Arizona Constitution art II § 8 by the very act of disturbing (intercepting and recording) appellant's private phone call on his private cellphone line without a warrant.

E.  Recording appellant's speech and using it as confession without his consent is an act of compulsion prohibited by the 5th Amendment and Ariz. Const. art II § 10.

The 5th Amendment and Ariz. Const. art II § 10 command that no person shall be compelled in any criminal case to give evidence against himself. In this case, the fact that appellant expected and sought privacy during the call was evident. (See call transcript pg. 4-10). He did not wish his private speech to be over-heard by anyone, much less to be recorded by a third party who intended to use it as a confession. This crucial factor justified his right to keep his speech private. Thus, the very act of the state making a recording of appellant's (meant to be private) speech and using it as evidence of guilt in trial was an act of compulsion, an act of using the power of the government to compel appellant to give evidence against himself. Also, the act of recording was completely against appellant's wish and against his expectation of privacy. State argued that the making of the recording was effected with caller's consent, but the state failed to mention that the caller was the state because she was functioning as the state and for the state. Her consent was an equivalent of the state giving itself consent without a warrant which was invalid and unconstitutional. Besides, the caller's consent did not change the fact that the making of this recording was completely against appellant's wish and against his expectation of privacy and it

13

was an act of compulsion on the part of the state. The Caller's consent cannot waive appellant's 5th Amendment right against compulsion. Most importantly, appellant did not give state the permission to record his end of the conversation, nor to use it as a confession. He was the unwilling source of this recording — the key evidence of this case. For this reason the court should find that the very act of the state making a recording of appellant's speech and using it as confession without his consent was an act of compulsion, an act against his wish and an act against his expectation of privacy and an act of using the power of the government to compel appellant to give evidence against himself, which was a violation of his 5th Amendment right and Ariz. Const. art II § 10.

F.  The interception in this case violated 18 U.S.C. § 2510 (5)(a)(i).

   18 U.S.C. § 2510 (5)(a)(i) provides : (5) electronic, mechanical, or other device means any device or apparatus which can be used to intercept a wire or oral communication other than (a) any telephone or telegraph instrument, equipment or facility, or any component thereof ... (i) furnished to the subscriber or user by a communication common carrier in the ordinary course of business and being used by the subscriber or user in the ordinary course of its business ...

   The circuit courts have held that parental interception of their minor child's phone conversation does not violate Title III if the recording is done from an extension within the home. Janecka v. Franklin, 843 F. 3d 110 (2d cir 1988); Schieb v. Grant, 22 F. 3d 149 (7th cir 1994); Newcomb v. Ingle, 944 F. 2d 1534 (10th cir 1991); also see State v. Morrison, 203 Ariz. 489 (2003). It is clear that § 2510 (5)(a)(i) of ECPA limits private consent interception to extensions within the home and furnished only to the subscribers or users of the phone lines, conducted on their own equipment for the ordinary course of their business. But in this case, the interception went far beyond the limits of private interception regulated by this status. First, the actual interceptor of the call, the person who installed and activated the tapping device (detective Contreras) was the

14

Police and she was not the subscriber or user of the intercepted phone lines. Second, the intercepted line was a wireless cellphone line and not an extension within the home. Third, the interception was not conducted with the subscriber's equipment, but with state's equipment at a state facility. Finally, the interception was not the ordinary course of business of the subscriber, instead, it was conducted by the government and its agents for the purpose of searching for evidence. In addition, the "consenting party" was also part of the government because she was functioning as the state for the purpose of the state at the time of interception. Therefore the interception in this case was no longer within the limits of a private interception permitted by § 2510 (5)(a)(i), rather it was a governmental interception governed by Title III, which requires a judicial authorization.

G. <u>Appellant's expectation of privacy was protected by federal law — Title III</u>.

The privacy of all parties to an intercepted communication is protected by Title III 18 U.S.C.A. § 2511 (1)(a,d). See <u>U.S. v. Jones</u>, 542. F. 2d (1976). If a person had exhibited a subjective expectation of privacy during an oral communication, his privacy is protected by federal law. Title III, the statute defines an "oral" conversation, in pertinent part, as 'any oral communication' uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." <u>18 U.S.C. § 2510 (2)</u>. Thus, to be an oral communication that is protected by Title III, the speaker must have had a subjective expectation that the communication was not subject to interception, and this expectation must have been objectively reasonable. See <u>United States v. Harrelson</u>, 754 F. 2d at 1169-70 ; <u>United States v. Pui Kan Lam</u>, 483 F. 2d 1202. 1206 (2d cir 1973). In this case, appellant not only had exhibited an expectation that he did not want his speech to be over-heard, he also made attempts to seek privacy by asking the caller to be alone during the call so that his conversation could not over-heard. For this reason his expectation was protected,

15

His expectation had been objectively reasonable, justified and met the requirements of Title III protection.

## H. A.R.S. § 13-3012(9) is unconstitutional.

In Arizona, private consent interceptions are lawful pursuant to § 13-3012 (9), which allows the interception of a communication "if the interception is effected with the consent of a party to the communication or a person who is present during the communication." Appellant contends that this statute is unconstitutional because it produces a same end result as a warrantless governmental wiretap – the privacy of the non-consenting party was violated. This statute allows the consenting party alone to vicariously waive the privacy of the non-consenting party without his or her consent and knowledge, and the non-consenting party has no say in the matter whatsoever. Furthermore, it is much worse when this statute is being utilized or exploited by the government as a back door to conduct secret electronic interception, using the consenting party as an instrument to breach into a private cellphone line or a land line for the purpose of searching for evidence without a warrant. In other words, it has become a common practice that the government is using this statute as the means to avoid constitutional obligations. Unfortunately, appellant was a victim of this unconstitutional practice. In this case, the government and its agents exercised arbitrary power through this statute, using the consenting party as an instrument or as a tapping device to breach into appellant's private cellphone line and intercepted his private communication. As a result, appellant's right to privacy was vicariously waived or robbed by the government and its agents without his consent and knowledge. Appellant's constitutional rights, unless he willingly, knowingly and intelligently choose to give up, cannot be vicariously waived by anyone. These have remained the standard for waiver of constitutional rights. See Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). For this reason, the court should deem A.R.S. § 13-3012(9) unconstitutional, especially when it's being used by the government as a back door to bypass constitutional

16

obligations, using the consenting private person as an instrument. These governmental conduct, if permitted by this statute, would create a lopsided and unevenhanded adversarial proceeding that deprives the non-consenting party the right to privacy and the right to due process, as what had happened in this case.

## Conclusion

Based on the foregoing reasons, mentioned in the motion and the supplemental brief, Appellant, Tony DENG, respectfully requests this Court to reconsider and grant his Constitutional claims, and to 1). vacate appellant's convictions, 2). remand this case back to trial with instructions to enter an order to suppress the recording of the phone call and all statements made by appellant after his arrest relating to the phone call as the fruit of the poisonous tree. 3). deem A.R.S. §13-3012(9) unconstitutional.

Respectfully submitted this __1st__ day of __May__, 2017.

TONY DENG
Appellant in pro per

Original mailed:
To: Court of Appeals of Arizona
1501 W. Washington st.
Phoenix, Az. 85007

Copy mailed:
To: Joseph T. Maziarz, Office of the attorney General
1275 W Washington st.
Phoenix, Az. 85007

17

# Table of Authorities                    pages

## Cases

State v. Estrada, 209 Ariz. 1oop. 3d 452(2004) . . . . . . . . . . 2, 5, 6,

State v. Allgood, 171 Ariz. 522. 831p. 2d 1290(App 1992) . . . . 3, 4, 12

State v. Stanley, 123 Ariz. 95. 102. 597p. 2d 988. 1005 (App 1979) . . . . 3, 4

Katz v. United states, 389 U.S. 347. 88 s. ct (1967) . . . . . . . . . 4, 6, 7, 8, 9

Terry v. Adams, 354 u.s. 461 73 s. ct 809 97L Ed 1152 (1953) . . . . . . . 6

U.S. v. Miller, 688F. 2d. 652 (9th cir 1982) . . . . . . . . . . . . . 6

U.S. v. Walther, 652F. 2d 788. 792-93 (9th cir 1981) . . . . . . . . 6

U.S v. Thurman Reed Jr., 15F. 3d. 928 (1993) . . . . . . . . . . 6

Rogers v. Richmond, 365 u.s. 534, 541. 81 s. ct. 735. 739. 5L. Ed. 2d. 760 (1961) . . . . 7

United states v. White, 405F. 2d 838 (7th cir), cert granted, 394 u.s. 957. 89 s. ct. 1305.
22l Ed. 2d 559 (1969) . . . . . . . . . . . . . . . . . . 8, 9

Rhode Island v. Innis, Id at 446 u.s. 291 (1980) . . . . . . . . . 9

Escobedo v. Illinois, 378 u.s. 478. 84 s. ct. 1758. 12L. Ed 977 (1964) . . . . 10

Moore v. Illinois, 434 u.s. 220, 228-29 (1977) . . . . . . . . . . 10

Messiah v. United states, 377 u.s. 201. 206 (1964) . . . . . . . . . . 10

United states v. Marshank, 777F. supp. 1507. 1518 (N.D. Cal 1991) . . . . 11

U.S. v. Henry, 447 u.s. 264. 100 s. ct. 2183. 65L. Ed. 2d 115 (1980) . . . . 11

Kuhlman v. Wilson, 477 u.s. 436 (1986) . . . . . . . . . . . . . 11

Malmin v. State, 30 Ariz. 258. 261. 246 p. 548. 549 (1926) . . . . . . 12

Janecka v. Franklin, 843F. 3d 110 (2d cir 1988) . . . . . . . . . 14

Schieb v. Grant, 22F. 3d. 149 (7th cir 1994) . . . . . . . . . 14

Newcomb v. Ingle, 944F. 2d 1534 (10th cir 1991) . . . . . . . . . 14

State v. Morrison, 203 Ariz. 489 (2003) . . . . . . . . . . . . 14

U.S. v. Jones, 542 F. 2d (1976) . . . . . . . . . . . . . . 15

United states v. Harrelson, 754F. 2d at 1169-70 . . . . . . . . . 15

United states v. Pui Kan Lam, 483F. 3d 1202. 1206 (2d cir 1973) . . . . 15

Fay v. Noia, 372 u.s. 391. 83 s. ct. 822. 9L. Ed. 2d 837 (1963) . . . . . . 16

I

*Arizona statutes*

A.R.S. § 13-3012(9) . . . . . . . . . . . . . . . . . . . . 3, 16, 17

*Arizona Constitution*

art II § 8 . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 12, 13

art II § 10 . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

art II § 32 . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States Constitution*

Fourth Amendment . . . . . . . . . . . . . . . . . . 2, 3, 4, 6

Fifth Amendment . . . . . . . . . . . . . . . . . . . 13, 14

Sixth Amendment . . . . . . . . . . . . . . . . . 9, 10, 11, 12

*Federal statutes*

Title III, 18 U.S.C. § 2511 (1)(a,d) . . . . . . . . 4, 7, 8, 14, 15

18 U.S.C. § 2510 (5)(a)(i) . . . . . . . . . . . . 3, 4, 14, 15

18 U.S.C. § 2515, 16, 18 . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2510 (2) . . . . . . . . . . . . . . . . . . 8, 15

Electronic Communication Privacy Act (ECPA) . . . . . . . . 14